**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ELIZABETH A. CRAFT; and JANE DOE,<br>a minor, by her next friend and parent,<br>ELIZABETH A. CRAFT;<br>BRYAN L. PAUTSCH;<br>MARY DOE, a minor, by her next friend<br>and parent, BRYAN L. PAUTSCH;<br>LANDIS SEGER; and<br>JOHN DOE, a minor, by his next friend and<br>parent LANDIS SEGER;<br>on their own behalves and on behalf of all others<br>similarly situated, | Case No. 14-CV-5853<br><br>Judge Virginia Kendall |
| Plaintiffs, | |
| vs. | **REDACTED** |
| HEALTH CARE SERVICE CORPORATION, | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Helen E. Witt, P.C.
Brian P. Kavanaugh
Devon M. Largio
Catherine Cottle
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
hwitt@kirkland.com
bkavanaugh@kirkland.com
dlargio@kirkland.com
catie.cottle@kirkland.com

*Attorneys for Defendant*
*Health Care Service Corporation,*
Dated: June 12, 2015                    *an Illinois Mutual Legal Reserve Company*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... iii

BACKGROUND ...................................................................................................................... 1

I.     THE PARITY ACT AND IMPLEMENTING REGULATIONS ..................................... 1

II.    THE BENEFIT PLANS AT ISSUE .............................................................................. 3

III.   THE PLAINTIFFS' CLAIMS ....................................................................................... 4

ARGUMENT ............................................................................................................................ 5

I.     Counts I and II Fail Because the RTC Exclusions in Plaintiffs' 2014 Plans Did
Not Violate the Parity Act or the IFRs................................................................................ 6

      A.    The Applicability of *Chevron* Deference............................................................ 8

      B.    The RTC Exclusion Does Not Violate the Plain Language of the
Parity Act. ...................................................................................................... 9

      C.    The Departments' Reasonable Interpretation in the IFRs Is Entitled
to Deference. ................................................................................................. 13

II.    Count II ALSO Fails Because Plaintiffs' Claims under § 1132(a)(3) Are
Duplicative of Their § 1132(a)(1) Claims. ...................................................................... 13

III.   The Claim Count II for an Equitable Surcharge Fails. .................................................... 15

IV.   Counts III and IV Fail to State a Claim Under § 1132(a)(2) and § 1132(a)(3). ............... 16

V.    Count IV Fails Because Plaintiffs Do Not Allege Facts Supporting a Plausible
Parity Act Violation. ...................................................................................................... 19

VI.   Count V Fails as a Matter of Law Because Plaintiffs' Plans Do Not Violate the
Non-Discrimination Provision. ....................................................................................... 20

VII.  Additional Plaintiff-Specific Pleading Failures Compel Dismissal of
Certain Claims. ............................................................................................................... 21

      A.    The Segers Lack Standing to Bring Claims under Counts I and II...................... 22

      B.    The Crafts and Pautschs Plaintiffs Lack Standing to Assert Counts III–V. ......... 22

      C.    The Crafts' Claims in Counts I and II Are Moot. ............................................... 23

**Page**

CONCLUSION .......................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alam v. Miller Brewing Co.*,
709 F.3d 662 (7th Cir. 2013) ....................................................................... 4, 5

*Andujar v. Sun Life Assur. Co. of Canada*,
2014 WL 4099800 (N.D. Ill. Aug. 20, 2014) .................................................. 14

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
572 F.3d 440 (7th Cir. 2009) .......................................................................... 6

*Ball v. Nationscredit Fin. Servs. Corp.*,
207 B.R. 869 (N.D. Ill. 1997) ....................................................................... 22

*Barnhart v. Sigmon Coal Co.*,
534 U.S. 438 (2002) ........................................................................................ 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................. 4, 5, 19

*Bell v. Keating*,
697 F.3d 445 (7th Cir. 2012) ........................................................................ 23

*Bogie v. Rosenberg*,
705 F.3d 603 (7th Cir. 2013) .......................................................................... 6

*Boyle v. Int'l Bhd. of Teamsters Local 863 Welfare Fund*,
579 F. App'x 72 (3d Cir. 2014) ..................................................................... 24

*Brooks v. Ross*,
578 F.3d 574 (7th Cir. 2009) .......................................................................... 6

*Brownmark Films, LLC v. Comedy Partners*,
682 F.3d 687 (7th Cir. 2012) .......................................................................... 3

*Chafin v. Chafin*,
133 S. Ct. 1017 (2013) .................................................................................. 23

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
467 U.S. 837 (1984) ......................................................................... 8, 10, 13

*CIGNA Corporation v. Amara*,
131 S. Ct. 1866 (2011) .................................................................................. 16

**Page(s)**

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) ........................................................................ 12

*Commodity Futures Trading Comm'n v. Worth Bullion Grp., Inc.*,
717 F.3d 545 (7th Cir. 2013) ........................................................... 11

*Ctr. for Individual Freedom v. Madigan*,
697 F.3d 464 (7th Cir. 2012) ........................................................... 11

*Ehrman v. Standard Ins. Co.*,
No. C06-05454MJJ, 2007 WL 1288465 (N.D. Cal. May 2, 2007) .................................. 18

*Engelhardt v. Paul Revere Life Ins. Co.*,
77 F. Supp. 2d 1226 (M.D. Ala. 1999) ............................................. 24

*Ezekiel v. Michel*,
66 F.3d 894 (7th Cir. 1995) ............................................................. 25

*Franco v. Connecticut Gen. Life Ins. Co.*,
No. CIV.A. 07-6039 SRC, 2014 WL 2861428 (D.N.J. June 24, 2014) ........................... 24

*Hardin v. Harshbarger*,
814 F. Supp. 703 (N.D. Ill. 1993) .................................................... 24

*Horan v. Kaiser Steel Ret. Plan*,
947 F.2d 1412 (9th Cir. 1991) ......................................................... 17

*Impress Commc'ns v. Unumprovident Corp.*,
335 F. Supp. 2d 1053 (C.D. Cal. 2003) ............................................ 23

*J.T. ex rel. J.T. v. Newark Bd. of Educ.*,
564 F. App'x 677 (3d Cir. 2014) ...................................................... 24

*James v. United States*,
550 U.S. 192 (2007) ........................................................................ 12

*Killian v. Concert Health Plan*,
742 F.3d 651 (7th Cir. 2013) ........................................................... 23

*Krase v. Life Ins. Co. of North Am.*,
2012 WL 4483506 (N.D. Ill. Sept. 27, 2012) ............................. 14, 15

*Loren v. Blue Cross & Blue Shield of Mich.*,
505 F.3d 598 (6th Cir. 2007) ........................................................... 18

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .................................................................. 21, 22

**Page(s)**

*Mass. Mutual Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985) ............................................................................................. 17

*Michigan Citizens for an Independent Press v. Thornburgh*,
  868 F.2d 1285 (D.C. Cir. 1989) ......................................................................... 10

*Mondry v. Am. Family Mut. Ins. Co.,*
  557 F.3d 781 (7th Cir. 2009) .............................................................................. 14

*Nemitz v. Metro. Life Ins. Co.*,
  2013 WL 3944292 (N.D. Ill. July 31, 2013) ................................................. 14, 15

*Pakovich v. Verizon LTD Plan*,
  653 F.3d 488 (7th Cir. 2011) ............................................................ 6, 23, 24, 25

*Penn. Chiropractic Assoc. v. Blue Cross Blue Shield Assoc.*,
  2014 WL 4087221 (N.D. Ill. Aug. 19, 2014) .................................................... 16

*Perez v. Mortgage Bankers Ass'n*,
  135 S. Ct. 1199 (2015) .......................................................................................... 8

*Retired Chicago Police Ass'n v. City of Chicago*,
  76 F.3d 856 (7th Cir. 1996) ............................................................................ 6, 22

*Roque v. Roofers' Union Welfare Trust Fund*,
  2013 WL 2242455 (N.D. Ill. May 21, 2013) .................................................... 16

*S.S. v. Microsoft Corporation Welfare Plan*,
  2:14-cv-00351 (Feb. 11, 2015, W.D. Washington) ..................................... 13, 19

*Schultz v. Prudential Ins. Co. of Am.*,
  678 F. Supp. 2d 771 (N.D. Ill. 2010) ................................................................. 15

*Shamburger v. Rosario*,
  17 F.3d 396 (9th Cir. 1994) ................................................................................ 24

*Sierra Club v. EPA*,
  551 F.3d 1019 (D.C. Cir. 2008) ...................................................................... 9, 10

*United States v. Johnson*,
  655 F.3d 594 (7th Cir. 2011) .............................................................................. 12

*United States v. Miscellaneous Firearms, Explosives, Destructive Devices & Ammunition*,
  376 F.3d 709 (7th Cir. 2004) .............................................................................. 12

*Varity v. Howe*,
  516 U.S. 489 (1996) ...................................................................................... 14, 16

<u>Page(s)</u>

*Welsh v. Boy Scouts of America,*
    993 F.2d 1267 (7th Cir. 1993) ....................................................................... 12

*Zivkovic v. Holder,*
    724 F.3d 894 (7th Cir. 2013) ..................................................................... 9, 10

**Statutes**

26 U.S.C. § 9812(a)(3) ................................................................................... 19

29 C.F.R. § 2590.712(c)(4)(ii)(H) ................................................................... 2

29 U.S.C. § 1109 ............................................................................................ 17

29 U.S.C. § 1132(a)(1) ............................................................................ passim

29 U.S.C. § 1132(a)(2) ....................................................................... 16, 17, 18

29 U.S.C. § 1132(a)(3) ............................................................................ passim

29 U.S.C. § 1185a(a)(3) .......................................................................... passim

42 U.S.C. § 300gg-26(a)(3) ........................................................................... 19

**Rules**

Fed. R. Civ. P. 12(b)(1) ......................................................................... 6, 23, 25

Fed. R. Civ. P. 12(b)(6) ................................................................................ 5, 6

**Regulations**

75 Fed. Reg. 5416 (Feb. 2, 2010) ................................................................... 2

78 Fed. Reg. 68240 ......................................................................................... 2

78 Fed. Reg. 68247 (Nov. 13, 2013) ............................................................... 2

**Constitutional Provisions**

U.S. Const. art. III ........................................................................................ 21

Plaintiffs' Amended Complaint challenges HCSC's enforcement of blanket exclusions of residential treatment benefits for mental illnesses, and the application of the Milliman Guidelines to medical necessity determinations for residential treatment benefits for mental illnesses. Each of these claims contains numerous deficiencies.[1] Plaintiffs cannot successfully plead Counts I and II because residential treatment exclusions do not violate the Parity Act or the IFRs. Count II also fails because Plaintiffs' claims under § 1132(a)(3) are barred by the Supreme Court's decision in *Varity*, and they do not sufficiently plead their claims for an equitable surcharge. Count IV fails because Plaintiffs' claim, alleging a lack of parity between medical necessity guidelines used for mental health and medical/surgical benefits, does not identify any analog guidelines that are comparable to, but more beneficial than, the Milliman Guidelines. Plaintiffs also fail to sufficiently plead Count V because their claims do not allege a plausible violation of ERISA's provider Non-Discrimination provision.

In addition to these general pleading deficiencies, each individual Plaintiff lacks standing to bring one or more of these claims. The Segers lack standing to bring claims under Counts I and II, and the Crafts and Pautschs lack standing to bring claims under Counts III–V. The Crafts' claims under Count I and II are also moot.

## BACKGROUND

## I.     THE PARITY ACT AND IMPLEMENTING REGULATIONS

Signed into law at the end of 2008, the Parity Act expanded the requirement for "parity" between mental health and medical benefits to other "financial requirements" and "treatment limitations." 29 U.S.C. § 1185a(a)(3)(A)(i)-(ii). The Parity Act requires that whatever mental

---

[1]    Plaintiffs' decision to group-plead all Counts on behalf of all Plaintiffs in their Amended Complaint unnecessarily complicates briefing of HCSC's motion to dismiss. HCSC has attempted to address each pleading deficiency as to each Plaintiff in this memorandum.

health and substance abuse coverage a plan chooses to provide be subject to no more restrictive "financial requirements" and "treatment limitations" than medical/surgical benefits, defining "treatment limitations" as "limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment." *Id.* at § (a)(3)(B)(iii).

Congress authorized the Departments of Labor, Health and Human Services, and Treasury to implement the Parity Act and define its key terms. In February 2010, the Departments issued the IFRs, applicable to plan years beginning on or after July 1, 2010. The Departments were clear that the IFRs "do not address the scope of services issue"—*i.e.*, whether a plan may choose to cover or exclude coverage for "any particular treatment or treatment setting (such as counseling *or non-hospital residential treatment*), if benefits for the treatment or treatment setting are not provided for medical/surgical conditions." 75 Fed. Reg. 5416 (Feb. 2, 2010) (emphasis added). Three and a half years later, the Departments issued their Final Rules, and introduced new regulations that (1) add "facility type" to the list of "treatment limitations"; (2) contain new language that expressly classifies RTC services as "intermediate services" that must be treated in parity with medical/surgical "intermediate services" offered through skilled nursing facilities; and (3) point to disparities in coverage between RTCs and skilled nursing facilities as an illustration of how the "treatment limitation" should not be applied. 78 Fed. Reg. 68247, 68282-83 (Nov. 13, 2013); 29 C.F.R. § 2590.712(c)(4)(ii)(H). Recognizing that the Final Rules include new requirements for plans and insurers, the Departments specified that compliance with the Final Rules *would not be required until the beginning of a plan's next plan-year* following the effective date of the Final Rules. 78 Fed. Reg. 68240 (Final Rules effective "for plan years . . . beginning on or after July 1, 2014.").

2

## II.     THE BENEFIT PLANS AT ISSUE

Elizabeth Craft and her daughter, Jane Doe (collectively, the "Crafts") and are participants in The Trustwave Holdings, Inc. Health Care Benefit Plan, a PPO family plan insured and administered by Blue Cross and Blue Shield of Illinois ("BCBSIL"), a division of defendant Health Care Service Corporation ("HCSC").  (Am. Compl. ¶ 13)  The current plan is a calendar-year plan with a start date of January 1, 2015.  *See* Ex. A to Flores Decl. (Ex. 1), 2015 Trustwave Holdings, Inc. Health Care Benefit Plan ("2015 Trustwave Plan"), Certificate Rider.[2]

Bryan Pautsch and his 16-year old daughter, Mary Doe (collectively, the "Pautschs"), are participants in the Sikich, LLP Health Care Benefit Program, a self-funded plan administered by BCBSIL.  (Am. Compl. ¶¶ 9-10)  The plan is also a calendar-year plan with a start date of January 1.  *See* Ex. 2, 2014 Sikich LLP Health Care Benefit Plan ("2014 Sikich Plan"), Certificate Rider.

Landis Seger and her 15-year old son, John Doe (collectively, the "Segers") are participants in the HealthSouth Corporation Group Life, AD&D, Disability and Medical Plan, a self-funded plan administered by Blue Cross and Blue Shield of Texas ("BCBSTX"), also a division of HCSC.  (*Id.* ¶¶ 11-12)

Plaintiffs do not allege that any of their 2015 plans exclude RTCs from coverage; nor do they allege that any of them has had a claim for RTC benefits in 2015 denied.  The 2014 calendar year versions of the Trustwave Plan and the Sikich Plan, however, excluded RTC benefits from coverage.  *See* Ex. 2, 2014 Sikich Plan, at 75, 78; Ex. 2, Ex. B of Pls.' Mot. Prelim. Inj. (Dkt. No. 5) ("2014 Trustwave Plan") at 90, 93.

---

[2]     The Court may properly consider Plaintiffs' benefits plans on a motion to dismiss.  *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

## III.    THE PLAINTIFFS' CLAIMS

Plaintiff Jane Doe suffers from certain mental illnesses.  (Am. Compl. ¶ 30)[3]  According to Plaintiffs' allegations, Jane Doe has taken advantage of numerous treatment options available under the Trustwave Plan, and has consistently received treatment in in-patient, partial hospitalization, and intensive outpatient programs.  (*Id.* ¶ 31)  The Crafts' claims stem from a request for preauthorization of RTC services for Jane Doe that Craft made on July 11, 2014— shortly after the Final Rules became effective for other plans—which BCBSIL denied based on the RTC exclusion contained in the then-current version of the Trustwave Health Care Benefit Plan.  (*Id.* ¶ 37)[4]  The Crafts do not allege that Jane Doe was denied RTC benefits based on application of improper medical necessity criteria.

Plaintiff Mary Doe suffers from certain mental illnesses, and in October 2014 was treated in a residential treatment facility.  (*Id.* ¶¶ 46, 49)  This residential treatment facility sought to verify Mary Doe's benefits for residential treatment, but was informed that residential treatment was excluded from coverage.  (*Id.* ¶ 51)  The Pautschs do not allege that Mary Doe was denied RTC benefits based on application of improper medical necessity criteria.

Plaintiff John Doe suffers from certain mental illnesses, and in March 2014 was admitted to a residential treatment center licensed to provide treatment for sub-acute mental illnesses.  (*Id.* ¶¶ 56, 59)  John Doe was initially authorized ten days of residential treatment, but BCBSTX denied approval for an additional seven days after applying medical necessity criteria from the 16th Edition Milliman Care Guidelines' Medical Necessity Criteria for Posttraumatic Stress

---

[3]    The well-pleaded allegations of the complaint are taken as true for purposes of the motion to dismiss only.  *See Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013).

[4]    The Craft Plaintiffs complain of other unspecified denials, but none is alleged or identified with any detail in the Amended Complaint.  Therefore, the Crafts cannot state a claim under ERISA § 1132(a)(1)(B) for such unspecified denials.

Disorder–Residential Care ("Milliman"), which contain criteria for "Admission to Residential Acute Level of Care." (*Id.* ¶¶ 61-62)  The Segers do not allege that John Doe was denied RTC benefits based on an exclusion of coverage; to the contrary, at all times relevant to the Amended Complaint, the Segers' plan included such coverage. (*Id.* ¶ 58)

On July 30, 2014, the Crafts filed this action for benefits due pursuant to ERISA § 502(a)(1)(B) based on the exclusion from coverage of residential treatment for mental illness, and sought a permanent injunction pursuant to ERISA § 502(a)(3) prohibiting HCSC from applying the residential treatment exclusion and requiring the re-processing of all previously denied claims for residential treatment.  After denial of HCSC's motion to dismiss, Plaintiffs filed an Amended Class Action Complaint, joining four new plaintiffs and alleging five causes of action based on three main theories of recovery. (Dkt. No. 59)  First, the Amended Complaint continues to allege that blanket RTC exclusions violate the Parity Act, and asserts a claim for benefits under ERISA § 502(a)(1)(B) in Count I and equitable relief under ERISA § 502(a)(3) in Count II stemming from HCSC's enforcement of the exclusion.  Second, the Amended Complaint asserts that HCSC's use of Milliman violates ERISA, in Count III, and the Parity Act, in Count IV.  Third, in Count V, Plaintiffs claim that use of Milliman violates the Affordable Care Act/ERISA's provider non-discrimination provision.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Alam*, 709 F.3d at 665-66 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  While all well-pled facts are taken as true and viewed in a light most favorable to the plaintiff, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

(quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). Detailed factual allegations are not necessarily required, but Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). The factual allegations set forth in the complaint, if accepted as true, must cross the line "between possibility and plausibility of 'entitlement to relief.'" *Id.* If they do not, dismissal for failure to state a claim under Rule 12(b)(6) is appropriate. Moreover, where a claim fails as a matter of law, dismissal with prejudice is required. *See Bogie v. Rosenberg*, 705 F.3d 603, 616 (7th Cir. 2013).

Additionally, courts lack subject matter jurisdiction when a plaintiff lacks standing to bring a claim. *See Apex Dig., Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 444 (7th Cir. 2009). Moot claims must be dismissed under Federal Rule of Civil Procedure 12(b)(1). *Retired Chi. Police Ass'n v. City of Chi.*, 76 F.3d 856, 862 (7th Cir. 1996). Federal courts also lack subject matter jurisdiction when a claim becomes moot; moot claims should be dismissed under Rule 12(b)(1), as well. *See Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011).

## I. COUNTS I AND II FAIL BECAUSE THE RTC EXCLUSIONS IN PLAINTIFFS' 2014 PLANS DID NOT VIOLATE THE PARITY ACT OR THE IFRS.

The Crafts alleged in the original Complaint that the RTC exclusion in the 2014 Trustwave Plan violated the plain language of the Parity Act itself; they did not explicitly allege that the exclusion violated either the IFRs or the Final Rules, and did not cite language from those regulations to support an argument that the RTC exclusion was illegal under the Departments' interpretations. (Dkt. No. 1) HCSC moved to dismiss the Crafts' complaint on the grounds that Plaintiffs' claims failed as a matter of law. (Dkt. No. 32) HCSC first argued that the plain language of the Parity Act, and its definition of "treatment limitations" in particular, did not prohibit an RTC exclusion, because "treatment limitations" was defined to include

6

quantitative treatment limitations only.  (*Id.* at 6-10)  HCSC separately argued that the IFRs, through their deliberate decision not to include scope of services within the definition of "treatment limitations," likewise did not prohibit blanket RTC exclusions.  (*Id.* at 10-13)

The Crafts opposed HCSC's dismissal motion, arguing that the plain language of the statute was unambiguous and prohibited RTC exclusions; that if the language was ambiguous, the IFRs prohibited RTC exclusions; and that if HCSC's interpretation of the IFRs was correct, the IFRs were not entitled to deference because the Departments would have exceeded the scope of their authority in promulgating such a regulation.  (Pls.' Resp., Dkt. No. 36, at 16-17)  In its reply brief, HCSC responded to Plaintiffs' arguments regarding agency deference, raised for the first time by Plaintiffs in their opposition, and explained that, if the Court determined the statute was ambiguous, the IFRs were entitled to deference, and thus so was the Departments' determination not to address the scope of services issue.  (Def.'s Reply, Dkt. No. 40, at 5-7)

In its Order, issued March 25, 2015, this Court denied HCSC's motion to dismiss. (Dkt. No. 46)  Noting that HCSC had not specifically addressed the issue of agency deference in its opening memorandum, the Court held that it was unable to construe the statute using traditional canons of statutory interpretation based on the state of the parties' briefing and therefore "decline[d] at [the] time to limit the statute and regulations to quantitative limitations, only."  (Order 8-9)  The Court further found that HCSC's interpretation was "not the only reasonable interpretation of the phrase 'other similar limits.'"  (*Id.* at 9)  The Court noted that it could not determine whether the IFRs were entitled to deference, given that they did not resolve the scope of services issue.  (*Id.*)  Finally, "[a]ssuming that the term 'treatment limitations' is not limited to quantitative limitations" the Court declined to dismiss Plaintiffs' claims under the Parity Act.  (*Id.* at 9 n.6, 10)

Addressing the issues that the Court did not reach in its Order, Plaintiffs' claims in Counts I and II fail as a matter of law. The language of the Parity Act itself unambiguously limits "treatment limitations" to quantitative limitations. But even if the Court determines that the phrase "treatment limitations" is ambiguous, and could therefore encompass non-quantitative treatment limitations, the Departments' interpretation of the phrase in the IFRs not to include scope of services among the prohibited class of treatment limitations is entitled to deference.

### A.  The Applicability of *Chevron* Deference.

In its March 25, 2015 Order, the Court noted that HCSC had not addressed the issue of *Chevron* deference with respect to the IFRs. (Order 8) Because the statute, and its term "treatment limitations" in particular, is unambiguous when read with the aid of traditional canons of statutory interpretation, the Court need not reach the question of agency deference. *See Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1208 (2015) (noting that in prior cases the Supreme Court refused "to give deference to an agency's interpretation of an unambiguous regulation, observing that to defer in such a case would allow the agency to create *de facto* a new regulation") (internal quotation omitted); *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 462 (2002) ("In the context of an unambiguous statute, we need not contemplate deferring to the agency's interpretation.") In any event, the *Chevron* deference analysis leads to the same result.

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) outlines a two-step analysis for analyzing an agency's interpretation:

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

"[T]he first step of the *Chevron* process . . . is, the assessment whether there is any ambiguity to be addressed after applying the ordinary tools of statutory construction. If those tools of statutory construction point clearly to [an interpretation of the statute] that is the end of it: the agency's views never come into play." *Zivkovic v. Holder*, 724 F.3d 894, 899 (7th Cir. 2013); *see also Sierra Club v. EPA*, 551 F.3d 1019, 1027 (D.C. Cir. 2008) (courts first "must examine the meaning of certain words or phrases in context and . . . 'exhaust the traditional tools of statutory construction, including examining the statute's legislative history to shed new light on congressional intent'" before concluding that a statute is ambiguous and deferring to a reasonable agency interpretation). Thus, *only* if the Court determines that the statute is ambiguous with respect to the question presented should the Court move to determining whether the agency's interpretation is reasonable or not.

Here, under *Chevron* step one (statutory interpretation) or *Chevron* step two (reasonableness of agency interpretation), the outcome is the same: RTC exclusions are not prohibited by the terms of the Parity Act or the IFRs, which governed at the time the Crafts and Pautschs sought mental health treatment at RTCs.

### B. The RTC Exclusion Does Not Violate the Plain Language of the Parity Act.

The plain language of the Parity Act does not bar RTC exclusions. The Act's definition of "treatment limitations" does not expressly include "facility type" or "location of services." And, the term "other similar limits" in the definition is ambiguous. In this case, however, applying the traditional doctrines of *noscitur a sociis* and *ejusdem generis* resolves the ambiguity. Once applied, those doctrines show, unambiguously, that the definition of "treatment limitations" in the Parity Act includes only quantitative limitations. The Parity Act on its face, therefore, does not prohibit a "scope of services," or RTC, exclusion.

9

The Court, in its prior Order, stated that without considering whether the Departments were entitled to deference, an interpretative problem was created, including a question about whether the canons of construction trumped a reasonable agency interpretation.  (Order 8)  The Court cited *Michigan Citizens for an Independent Press v. Thornburgh*, 868 F.2d 1285 (D.C. Cir. 1989), for the proposition that a court cannot trump a reasonable agency interpretation of an ambiguous statute by picking and choosing among canons of construction.  (*Id.* at 8 n.5)  But more recent authority from this Circuit and the D.C. Circuit makes clear that only once the Court has first determined that the statute is, in fact, ambiguous on the question presented must it defer to a reasonable agency interpretation.  *See Zivkovic*, 724 F.3d at 899; *see also Sierra Club*, 551 F.3d at 1027.  Likewise, *Chevron* itself expected courts to apply the traditional tools of statutory construction ***before*** deciding whether to defer to an agency interpretation to resolve an ambiguity.  467 U.S. at 843 n.9 ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. . . .  If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.").  These cases stand for the rule that a statute can only be found ambiguous ***after*** a Court applies the canons of statutory construction.  *Michigan Citizens* acknowledged as much.  868 F.2d at 1292-93 ("We do not mean to say that canons of construction are completely irrelevant in the post-*Chevron* era.  If employment of an accepted canon of construction illustrates that Congress had a *specific* intent on the issue in question, then the case can be disposed of under the first prong of *Chevron*.") (emphasis in original).

Here, the Court can ascertain the plain meaning of "treatment limitations" through application of accepted tools of statutory construction.  In the Parity Act, Congress narrowly

defined "treatment limitations" as "limits on the frequency of treatment, number of visits, days of coverage, or ***other similar limits*** on the scope or duration of treatment." 29 U.S.C. § 1185a(a)(3)(B)(iii) (emphasis added). According to the plain language of the Act, the phrase "treatment limitations" does not encompass treatment settings or facility types. Rather, Congress defined "treatment limitation" in purely quantitative terms: ***frequency*** of treatment, ***number*** of visits, and ***days*** of coverage. And while the definition of "treatment limitations" is not exhaustive, the phrase "other similar limits on the scope or duration of treatment" is properly read to refer to other quantitative (as opposed to qualitative) limits.

The doctrines of *noscitur a sociis* and *ejusdem generis* command this result. Under the doctrine of *noscitur a sociis*, if "several items in a list share an attribute," courts are "in favor of interpreting the other items as possessing that attribute as well." *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 496 (7th Cir. 2012) (quotation omitted); *see also Commodity Futures Trading Comm'n v. Worth Bullion Grp., Inc.*, 717 F.3d 545, 549 (7th Cir. 2013) ("[T]he meaning of questionable words or phrases in a statute may be ascertained by reference to the meaning of words or phrases associated with it.") (quotations and citation omitted). Here, the specific limitations in the Parity Act's definition of "treatment limitations" share a numerical quality: each relates to the quantity of coverage available, in terms of days spent in the hospital or how often one may obtain a particular treatment or how many times a service is available. According to the doctrine of *noscitur a sociis*, "other similar limits on the scope or duration of treatment" must be interpreted to encompass like numerical limitations.

Similarly, the doctrine of *ejusdem generis* provides that "[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."

*United States v. Johnson*, 655 F.3d 594, 603 (7th Cir. 2011) (quotation omitted). In other words, "the enumerated [treatment limitations] are examples of what Congress had in mind under the residual provision, and the residual provision should be interpreted with those examples in mind." *James v. United States*, 550 U.S. 192, 218 (2007). Here, "treatment limitations" enumerates only quantitative limitations on treatment—"*frequency* of treatment, *number* of visits, [and] *days* of coverage"—followed by the residual provision, "other similar limits on the scope or duration of treatment." 29 U.S.C. § 1185a(a)(3)(B)(iii) (emphasis added). The doctrine of *ejusdem generis* dictates that in order for any other limitation to fall within the residual phrase "or other similar limits on the scope or duration of treatment," it must also be quantitative in nature. *See*, *e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114-115 (2001) (provision that "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" were excluded from the Federal Arbitration Act only applied to transportation workers because if exemption applied to all employees engaged in foreign or interstate commerce, "there would be no need for Congress to use the phrases 'seamen' and 'railroad employees'").[5]

Both doctrines dictate that the phrase "other similar limits on the scope or duration of treatment" is properly read to refer only to other quantitative (as opposed to qualitative) limits. As such, there is no "scope of services" limitation in the plain language of the Parity Act, and an RTC exclusion is not prohibited.

---

[5]  Indeed, reading the phrase "other similar limits" to include any and all types of treatment limitations would render Congress's use of the examples "frequency of treatment," "number of visits," and "days of coverage" superfluous. If "treatment limitation" truly meant any limitation on treatment, "there would be no need for Congress to use the phrases [frequency of treatment, number of visits, and days of coverage]." *See id.* at 114. The Seventh Circuit plainly instructs that courts cannot "construe a statute in a way that makes words or phrases meaningless, redundant, or superfluous." *See United States v. Miscellaneous Firearms, Explosives, Destructive Devices & Ammunition*, 376 F.3d 709, 712 (7th Cir. 2004); *Welsh v. Boy Scouts of America*, 993 F.2d 1267, 1272 (7th Cir. 1993).

### C. The Departments' Reasonable Interpretation in the IFRs Is Entitled to Deference.

If the Court finds that "treatment limitations" is ambiguous after applying the canons of statutory construction, however, the Court must then look to a reasonable agency interpretation to resolve the ambiguity. *See Chevron*, 467 U.S. at 843-44. If the Parity Act is ambiguous, then the IFRs are a reasonable agency interpretation entitled to deference under *Chevron*.[6] *See S.S. v. Microsoft Corp. Welfare Plan*, No. 2:14-cv-00351, Order at 14 (W.D. Wash. Feb. 11, 2015) ("Defendant is entitled to rely on the [IFRs] to define and interpret the statutory terms") (citing *Chevron*, 467 U.S. at 843-44). In *Microsoft*, the plaintiff argued that her benefit plan's denial of coverage of her residential treatment services violated the Parity Act. *Id.* at 7. The *Microsoft* court, like this Court, concluded that the IFRs "do not provide guidance with respect to types of treatment centers within the scope of coverage." *Id.* at 11. But the *Microsoft* court took this conclusion one step further, and explained that because the IFRs did not provide guidance on this issue, they "leave open the possibility that coverage plans may exclude certain types of facilities, particularly where there is no analog for medical/surgical benefits." *Id.* In other words, the IFRs do not bar an RTC exclusion. Thus, deference to the Departments' interpretation in the IFRs, like applying the canons of statutory construction, instructs that RTC exclusions did not violate the Parity Act while the IFRs supplied the applicable regulatory guidance.

## II. COUNT II ALSO FAILS BECAUSE PLAINTIFFS' CLAIMS UNDER § 1132(A)(3) ARE DUPLICATIVE OF THEIR § 1132(A)(1) CLAIMS.

Plaintiffs' various § 1132(a)(3) claims are foreclosed by clear Supreme Court precedent and countless decisions in this District. ERISA § 1132(a)(3) is a "'catchall' remedial section"

---

[6] Since the only agency interpretation in effect when Plaintiffs' plans contained a residential treatment exclusion were the IFRs, the only interpretation this Court can defer to in order to determine whether a residential treatment exclusion was barred is the IFRs. As the Court acknowledged in its order, "[t]he final rules are not retroactive by their own terms." (Order 9)

that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § [1132] does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). Thus, when the gravamen of the claim is of the enforcement of beneficiaries' rights under the plan, the claim is cognizable, if at all, under § 1132(a)(1), and equitable relief is not available under § 1132(a)(3). *See Mondry v. Am. Family Mut. Ins. Co.,* 557 F.3d 781, 805 (7th Cir. 2009) ("where relief is available to a plan participant under other provisions of the statute, relief may not be warranted under section 1132(a)(3)" and noting that the majority of circuits interpreting *Varity* "are of the view that if relief is available to a plan participant under subsection (a)(1)(B), then relief is *un* available under subsection (a)(3)"). "Cases in this district dismissing § 502(a)(3) claims brought concurrently with § 502(a)(1)(B) claims are legion, and they continue to accumulate." *Andujar v. Sun Life Assur. Co. of Canada*, No. 14 C 2792, 2014 WL 4099800, at *2 (N.D. Ill. Aug. 20, 2014) (citing cases); *see also Krase v. Life Ins. Co. of N. Am.*, No. 11 C 7659, 2012 WL 4483506, at *2 (N.D. Ill. Sept. 27, 2012) ("Consistent with the majority view, and *Mondry*'s dicta, judges in this District have consistently dismissed claims for 'equitable relief' under subsection (a)(3) where relief is available under subsection (a)(1)(B) for denial of benefits."). "Thus, where § 502(a)(1)(B) provides adequate relief, identical relief is not available under § 502(a)(3). This means an ERISA plaintiff is not permitted to 'repackage' a benefits claim as a § 502(a)(3) claim." *Nemitz v. Metro. Life Ins. Co.*, No. 12 C 8039, 2013 WL 3944292, at *4 (N.D. Ill. July 31, 2013).

Here, Plaintiffs' § 1132(a)(3) counts fit squarely into the prohibited class of claims under the foregoing authorities. In Count I, under § 1132(a)(1)(B), the Crafts and Pautschs seek benefits for past, allegedly unlawful, enforcement of RTC exclusions in their ERISA plans and

14

a declaration that RTC exclusions violate the Parity Act.[7]  (Am. Compl. ¶¶ 92-98)  Count II, under § 1132(a)(3), requests an affirmative injunction requiring HCSC to reprocess previously denied claims for benefits, ignoring the residential treatment center exclusion this time around. (*Id.* ¶¶ 99-105)  The heart of Counts I and II is the same:  Plaintiffs seek to have their entitlement to benefits determined without reference to the exclusionary language in their plans.  Whether in the form of a straight claim for benefits or an artfully pleaded demand for an injunction requiring reprocessing of claims, the relief sought in both instances is of the type available under § 1132(a)(1)(B).  (*Compare id.* ¶ 98 (seeking "payment of benefits owed by Defendant for the coverage of residential treatment for mental illness" based on an exclusion) *with* ¶ 104 (seeking "an injunction requiring Defendant to re-process all claims for residential treatment of mental illness that it denied . . . on the basis of an exclusion of coverage")  Because the proper vehicle for a claim for benefits is provided by § 1132(a)(1)(B), Count II should be dismissed.[8]

## III.    THE CLAIM COUNT II FOR AN EQUITABLE SURCHARGE FAILS.

The Crafts and Pautschs also seek an unspecified "surcharge as compensation for HCSC's fiduciary violations" in Count II.  (Am. Compl. ¶ 104)  But this request must be dismissed because they allege no plausible basis for their claim.  Nowhere do Plaintiffs allege the basis for an equitable surcharge, the actions to be remedied through the surcharge, the specific relief they seek through the surcharge, or why the surcharge is necessary in light of the availability of other remedies.  In fact, the only reference to the surcharge is a single phrase in a

---

[7]    The remaining Plaintiffs do not have standing to assert Counts I and II.  *See* Section VII.A, *infra*.

[8]    Nor can the Crafts and Pautschs avoid this result by arguing their § 1132(a)(3) claims are pleaded as alternatives to their claims under § 1132(a)(1).  Courts consistently have held that § 1132(a)(1) is the exclusive avenue to pursue the recovery of benefits, and redress under § 1132(a)(3) is unavailable ***even when*** the § 1132(a)(1) claims are ultimately unsuccessful.  *See Schultz v. Prudential Ins. Co. of Am.*, 678 F. Supp. 2d 771, 780 (N.D. Ill. 2010) ("the relevant inquiry under *Varity* and its progeny is not whether she can actually recover, but rather whether an adequate remedy is available under Section 1132(a)(1)(B)"); *see also Nemitz*, 2013 WL 3944292, at *4; *Krase*, 2012 WL 4483506, at *3.

single paragraph in the Amended Complaint.  *Id.*  This generic and conclusory pleading cannot survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 678.

Further, the decision in *CIGNA Corporation v. Amara*, 131 S. Ct. 1866 (2011) did not overrule *Varity*'s holding that § 1132(a)(3) acts as safety net for claims not otherwise adequately remedied.  *Varity*, 516 U.S. at 512.  Unlike Plaintiffs' Amended Complaint, the complaint at issue in *Amara* did not involve a claim for denial of benefits.  As in *Varity*, the *Amara* plaintiffs were allowed to proceed with their claim under § 1132(a)(3) only because they had no claim for relief under § 1132(a)(1)(B).  Plaintiffs here assert a claim for (the same) benefits pursuant to § 1132(a)(1)(B) in Count I.  As such, their claims for equitable relief should be dismissed.  *See Penn. Chiropractic Assoc. v. Blue Cross Blue Shield Assoc.*, No. 09 C 5619, 2014 WL 4087221, at *3-5 (N.D. Ill. Aug. 19, 2014) (plaintiffs "were not seeking a surcharge beyond the benefits they sued to recover" and finding that where plaintiffs had a remedy under § 1132(a)(1)(B, they could not state a claim for an equitable surcharge under § 1132(a)(3)); *Roque v. Roofers' Union Welfare Trust Fund*, No. 12 C 3788, 2013 WL 2242455, at *7 (N.D. Ill. May 21, 2013) ("Even if the relief Roque seeks can be characterized as a form of monetary relief available under § 502(a)(3) pursuant to *Amara,* as discussed below, Roque has failed to demonstrate that relief is unavailable under § 502(a)(1)(B).  Because adequate relief is available under that subsection, relief is unavailable under § 502(a)(3).").

## IV. COUNTS III AND IV FAIL TO STATE A CLAIM UNDER § 1132(A)(2) AND § 1132(A)(3).

In Counts III and IV, the Segers[9] seek relief under "§ 1132(a)(1)(B), or, in the alternative, under 29 U.S.C. § 1132(a)(2) and/or  (3), to the extent that the Court finds that the relief sought

---

[9]     The remaining Plaintiffs do not have standing to assert Counts III, IV and V.  *See* Sections VII.B-C, *infra*.

is otherwise unavailable." (Am. Compl. ¶¶ 107, 115)  Plaintiffs have not alleged facts sufficient to give rise to a claim under either § 1132(a)(2) or (3).  As a matter of law, Plaintiffs cannot bring a claim for individual recovery under § 1132(a)(2).  And relief under § 1132(a)(3) is not available to Plaintiffs because the gravamen of their claim is one for benefits under § 1132(a)(1)(B).

First, Plaintiffs fail to state a claim as a matter of law for violation of fiduciary duties and improper benefit denials and violation of the Parity Act through the adoption and application of improper medical necessity criteria under § 1132(a)(2) in Counts III and IV because participants and beneficiaries are not permitted to bring a civil action under that section for individual recovery.  Under § 1132(a)(2), "a participant, beneficiary or fiduciary" may bring a claim "for appropriate relief under section 1109 of this title."  Section 1109 states:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable *to make good to such plan* any losses to the plan resulting from each such breach, and *to restore to such plan* any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a) (emphasis added).  As the plain language of this section illustrates, Plaintiffs may only seek recovery under § 1132(a)(2) on behalf of their benefit plan to remedy losses to the plan.  *See Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985) (holding that a participant's action brought pursuant to § 1132(a)(2) must seek remedies that provide a "benefit [to] the plan as a whole"); *Horan v. Kaiser Steel Ret. Plan*, 947 F.2d 1412, 1418 (9th Cir. 1991) ("Any recovery for a violation of sections 1109 and 1132(a)(2) must be on behalf of the plan as a whole, rather than inuring to individual beneficiaries.").  "ERISA does not permit recovery by an individual who claims a breach of fiduciary duty.  Instead, § 1109 contemplates that breaches of

17

fiduciary duty injure the plan, and, therefore, any recovery under such a theory must go to the plan." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 608 (6th Cir. 2007).

Count III seeks individual recovery of denied benefits for the Segers. (Am. Compl. ¶ 112 ("Plaintiffs . . . have been harmed by HCSC's breaches of fiduciary duty because their claims have been subjected to the improperly restrictive Milliman Guidelines and as a result, they have been deprived of insurance benefits they were owed.")) Count IV seeks similar relief. (*Id.* at ¶ 120 ("Plaintiffs . . . have been harmed by HCSC's breaches of fiduciary duties and violation of the Parity Act because their claims have been subjected to the improperly restrictive medical necessity criteria, making it less likely that HCSC will determine that their claims are covered.")) The Segers do not allege their benefit plan was harmed in any way, nor do they seek damages on behalf of the plan. A § 1132(a)(2) claim cannot rely solely on claims for individual recovery. *See Ehrman v. Standard Ins. Co.*, No. C06-05454 MJJ, 2007 WL 1288465, at *2 (N.D. Cal. May 2, 2007) (dismissing breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(2) premised on defendants' underpayment of benefits to individual participants in the Plan). As such, Plaintiffs claims for relief under 29 U.S.C. § 1132(a)(2) should be dismissed with prejudice.

Second, for the reasons explained in Section II above, the Segers cannot seek relief under § 1132(a)(3) when relief under § 1132(a)(1)(B) is available. *See* pp. 14-15, *supra*. Plaintiffs' requests for relief under § 1132(a)(3) in Counts III and IV—by their express allegations—simply repackage their request for relief under § 1132(a)(1)(B). In Count III, the Segers complain that they "have been harmed by HCSC's breaches of fiduciary duty because their claims have been subjected to the improperly restrictive Milliman Guidelines and as a result, they have been deprived of insurance benefits that they were owed." (Am. Compl. ¶ 112) Likewise, in Count IV, Plaintiffs contend that "their claims have been subjected to" HCSC's allegedly

"improperly restrictive medical necessity criteria." (*Id.* ¶ 120) These Counts, by their language, seek relief related to past benefits denials due to HCSC's purported overly restrictive medical necessity criteria. Thus, Plaintiffs' claims are cognizable, if at all, under § 1132(a)(1)(B), rendering their § 1132(a)(3) claims duplicative and unavailable under *Varity* and its progeny.

**V.    COUNT IV FAILS BECAUSE PLAINTIFFS DO NOT ALLEGE FACTS SUPPORTING A PLAUSIBLE PARITY ACT VIOLATION.**

The Parity Act requires "group health plans (or insurers) to ensure that the 'financial requirements' and 'treatment limitations' that are applicable to mental health or substance use disorder benefits are 'no more restrictive' than the predominant financial requirements or treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage)." *See Microsoft Corp. Welfare Plan*, No. 2:14-cv-00351, Order at 14 (citing 29 U.S.C. § 1185a(a)(3); 42 U.S.C. § 300gg-26(a)(3); 26 U.S.C. § 9812(a)(3)) (Ex. 3). To state a plausible violation of the Parity Act, a plaintiff must identify treatment limitations on medical/surgical benefits which, when compared to mental health benefits, demonstrate a disparity. In this case, Plaintiffs identify the treatment limitations applicable to mental health benefits that they challenge: the Milliman Guidelines applied by HCSC to gauge whether residential treatment is medically necessary. But the Amended Complaint does not identify any criteria used to determine medical necessity on the medical/surgical side that are less restrictive than those used to evaluate these mental health benefits. Rather, Plaintiffs plead only the conclusion: that Milliman Guidelines are more restrictive. (Am. Compl. ¶ 83) But conclusory allegations are not sufficient. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Without alleging specific disparate standards used in connection with evaluating medical necessity for medical/surgical procedures, Plaintiffs cannot state a plausible claim that the use of Milliman

19

Guidelines violates the Parity Act.  Plaintiffs' Count IV, therefore, fails to state a claim and should be dismissed.

## VI.    COUNT V FAILS AS A MATTER OF LAW BECAUSE PLAINTIFFS' PLANS DO NOT VIOLATE THE NON-DISCRIMINATION PROVISION.

The Amended Complaint does not sufficiently allege a violation of ERISA's Non-Discrimination provision.  That provision, PHS Act § 2706(a), provides that a "group health plan and a health insurance issuer offering group or individual health insurance coverage shall not discriminate with respect to participation under the plan or coverage against any health care provider who is acting within the scope of that provider's license or certification under applicable state law."  Plaintiffs assert that this provision requires HCSC to offer coverage for licensed sub-acute residential treatment facilities because the state of Missouri grants licenses to such facilities.  (Am. Compl. ¶ 23 ("insurers must not adopt policies or apply plan provisions that preclude coverage for services offered by providers that fall within the scope of the provider's license under state law"))  But by its plain language, all the Non-Discrimination provision requires is that—for treatments that are **both** covered and medically necessary—beneficiaries have the option to receive those treatments from any provider licensed to provide them.  Contrary to the Segers' allegations, it does not require health insurance plans to cover or approve treatments simply because a facility is licensed to provide them.

The Non-Discrimination provision, like the Parity Act, merely provides that **if a plan provides a specific benefit**, the insurer cannot dictate the use of one type of licensed provider of the service over another.  *See* Ctrs. for Medicare and Medicaid Srvs., The Ctr. for Consumer Info. & Ins. Oversight, Affordable Care Act Implementation FAQs - Set 15, available at http://www.cms.gov/CCIIO/Resources/Fact-Sheets-and-FAQs/aca_implementation_faqs15.html ("**to the extent an item or services is a covered benefit under the plan** or coverage . . . a plan or

20

issuer shall not discriminate based on a provider's license or certification") (emphasis added). In other words, once a treatment is determined to be covered and medically necessary, a plan may not require the beneficiary to obtain the treatment exclusively from one type of licensed provider when other types of providers are also licensed to perform it.

In the case of the Segers, Count V does not state a claim because Plaintiffs do not—and cannot—allege that John Doe's treatment was denied because of the type of provider he chose to seek treatment from. Rather, as he alleges, his claim for continued benefits was denied because he did not meet medical necessity criteria. (Am. Compl. ¶¶ 61-62) The result would have been no different (based on the same clinical history and symptoms) if he had sought treatment from a licensed acute RTC or hospital rather than a licensed sub-acute RTC. The Amended Complaint simply contains no allegation that HCSC preferred one provider type over another for the same covered benefits.

## VII. ADDITIONAL PLAINTIFF-SPECIFIC PLEADING FAILURES COMPEL DISMISSAL OF CERTAIN CLAIMS.

To the extent Counts I–V survive at all, these Counts fail for particular Plaintiffs based on on Plaintiffs' lack of standing to assert certain claims. Article III of the United States Constitution limits the jurisdiction of federal district courts to those cases involving "actual cases or controversies," and the constitutional standing requirement derives from this language. *See Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992). Thus, when a plaintiff asserts a claim for violation of a federal statute, she must satisfy both statutory and constitutional standing requirements. U.S. Const. art. III; *Lujan,* 504 U.S. at 560–61. The Supreme Court has announced that in order to satisfy Article III's standing requirements, a plaintiff must at minimum show that she suffered an injury in fact, defined by the *Lujan* Court as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent,

not 'conjectural' or 'hypothetical.'" *Id.* at 560 (quotations omitted). Because each of the Plaintiffs fails to allege an injury in fact in various counts, they lack standing to bring those particular claims and, as such, their claims should be dismissed under Rule 12(b)(1). *See Retired Chi. Police Ass'n*, 76 F.3d at 862.

### A. The Segers Lack Standing to Bring Claims under Counts I and II.

Because the Amended Complaint makes clear on its face that John Doe's benefit plan did not contain an exclusion for RTC benefits for mental illness, he cannot assert claims for past benefits denied, or an injunction requiring the reprocessing of denied benefits claims, as demanded in Counts I and II. (Am. Compl. ¶¶ 59, 61-62) Moreover, because the 2015 HealthSouth Benefit Plan does not contain an RTC exclusion for mental health, John Doe also cannot assert a claim for an injunction barring HCSC from enforcing any RTC exclusion. (*Id.* ¶ 58 (citing the 2014 HealthSouth Benefit Plan)) In short, John Doe has not suffered any injury based on an RTC exclusion, which is the basis for Plaintiffs' claims in Counts I and II. (*Id.* ¶¶ 96-98, 103-105) Thus, his claims under these counts should be dismissed. *Ball v. Nationscredit Fin. Servs. Corp.,* 207 B.R. 869, 872 (N.D. Ill. 1997) ("If [plaintiff] lacked standing at the time this action was filed, the suit must be dismissed even if she later acquired an interest sufficient to support standing.").

### B. The Crafts and Pautschs Plaintiffs Lack Standing to Assert Counts III–V.

Counts III, IV, and V seek relief under ERISA based on HCSC's allegedly improper application of medical necessity criteria. (Am. Compl. ¶¶ 110, 117-18, 126) Neither Plaintiff Jane Doe nor Mary Doe, however, alleges that HCSC denied any of her claims based on Milliman Guidelines. Rather, those Plaintiffs allege that they were denied benefits based on a categorical plan exclusion of RTC benefits. (*Id.* ¶¶ 33, 51-52) And while Plaintiff Jane Doe alleges that "Jane has reason to believe that HCSC will continue to deny her coverage because of

22

its application of the overly restrictive medical necessity criteria described below," (*id.* ¶ 44), this purported injury is too speculative and hypothetical to give her standing to assert the claim. *See Impress Commc'ns v. Unumprovident Corp.*, 335 F. Supp. 2d 1053, 1059 (C.D. Cal. 2003) ("An allegation that Defendants' administration of the plan might result in denial of future benefits is purely speculative and does not suffice to constitute a breach of contract."); *see also Bell v. Keating*, 697 F.3d 445, 451 (7th Cir. 2012) ("When the plaintiff applies for prospective relief against a harm not yet suffered—or one he believes he will suffer again—he must establish that he is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and that the injury or threat of injury is both real and immediate, not conjectural or hypothetical.") (internal quotations omitted). Thus, neither the Crafts nor the Pautschs have alleged an injury in fact sufficient to afford standing to assert § 1132(a)(1)(B) claims based on denials of benefits as a result of Milliman.

### C. The Crafts' Claims in Counts I and II Are Moot.

The Crafts' claims also suffer from mootness issues, and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). Mootness results when the issues are no longer "live" or when the parties have no "legally cognizable interest" in the outcome of the litigation. *Killian v. Concert Health Plan*, 742 F.3d 651, 660 (7th Cir. 2013) (quoting *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013)). Accordingly, "if an event occurs while a case is pending . . . that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the [case] must be dismissed" pursuant to Rule 12(b)(1). *Pakovich*, 653 F.3d at 492 (alteration in original).

The Crafts' claim for an injunction in Count I is moot because the Trustwave Plan no longer contains an RTC exclusion. Consistent with the requirements of the Final Rules, Jane Doe's calendar-year 2015 benefit plan now covers treatment in an RTC. *See* Ex. A to Flores Decl. (Ex. 1), 2015 Trustwave Plan, at 43, 77, 100. There is no RTC exclusion. Because the

Crafts' mental health benefits are now governed by that plan, there is nothing for this Court to enjoin. The Crafts' claims for injunctive relief, therefore, are moot. *See Hardin v. Harshbarger*, 814 F. Supp. 703, 707 (N.D. Ill. 1993) (plaintiff's claim for injunctive relief became moot after legislation was enacted prohibiting the action plaintiff sought to prevent); *see also J.T. ex rel. J.T. v. Newark Bd. of Educ.*, 564 F. App'x 677 (3d Cir. 2014) (special needs student's graduation from middle school rendered her claim for injunctive relief to provide in-class support services moot); *Shamburger v. Rosario*, 17 F.3d 396 (9th Cir. 1994) (plaintiff's request for an injunction ordering the return of confiscated material was moot after material was returned).



## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Amended Complaint should be dismissed in its entirety with prejudice.

Dated:  June 12, 2015

Respectfully submitted,

/s/ Devon M. Largio
Helen E. Witt, P.C.
Brian P. Kavanaugh
Devon M. Largio
Catherine Cottle
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
hwitt@kirkland.com
bkavanaugh@kirkland.com
dlargio@kirkland.com
catie.cottle@kirkland.com

*Attorneys for Defendant*
*Health Care Service Corporation,*
*an Illinois Mutual Legal Reserve Company*

---

[10]   The court may consider matters outside of the complaint in ruling on a motion to dismiss for lack of subject-matter jurisdiction.  *Ezekiel v. Michel,* 66 F.3d 894, 897 (7th Cir. 1995).

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that she caused the foregoing to be served upon the the persons authorized and registered to receive such service through the Court's Case Management/Electronic Case Files (CM/ECF).


Dated:  June 12, 2015                            /s/ Devon M. Largio_____
                                                 Devon M. Largio