UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH A. CRAFT; JANE DOE, a minor, by her next friend and parent, ELIZABETH A. CRAFT; BRYAN L. PAUTSCH; MARY DOE, a minor, by her next friend and parent, BRYAN L. PAUTSCH; LANDIS SEGER; and JOHN DOE, a minor, by his next friend and parent, LANDIS SEGER; on their own behalf and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 14-cv-5853 |
| | ) | |
| v. | ) | Hon. Virginia M. Kendall |
| | ) | |
| HEALTH CARE SERVICE CORPORATION, | ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. iii

BACKGROUND ................................................................................................................... 1

LEGAL STANDARD ........................................................................................................... 3

ARGUMENT ........................................................................................................................ 3

I.    Plaintiffs Plausibly Plead Claims Arising from HCSC's Enforcement of Categorical Exclusions of Coverage for RTC. ............................................................................................ 3

    A.    The Parity Act's Plain Language Prohibits the RTC Exclusion. ............................... 5

    B.    Even if the Parity Act were ambiguous, that ambiguity must be resolved in favor of including categorical exclusions of RTC within the statutory definition. ................................................................................................................ 6

        1.    Prohibiting categorical exclusions of RTC coverage is consistent with the Parity Act's purpose. ..................................................................... 7

        2.    Prohibiting categorical RTC exclusions avoids absurd results. ......................... 9

        3.    The Departments' interpretation that the Act applies to non-quantitative treatment limitations is entitled to *Chevron* deference. ................ 9

        4.    The Departments' decision not to address "scope of services" is not a statutory interpretation and therefore is not a basis for *Chevron* deference. ........................................................................................ 10

    C.    Plaintiffs' Demand For A Surcharge Remedy Is More Than Sufficient Under Rule 8(a)(3). .................................................................................................. 13

    D.    Plaintiffs' Claims For Equitable Relief Are Independent Of Their Claims For Improperly Denied Benefits. .............................................................................. 14

II.    Plaintiffs Plausibly Plead Claims Arising from HCSC's Use of Overly Restrictive Coverage Determination Guidelines To Severely Limit Coverage for RTC. .............................. 17

    A.    HCSC Concedes That Count III States a Plausible Claim Under 29 U.S.C. § 1132(a)(1)(B). .................................................................................................... 17

    B.    Count IV States a Plausible Claim That HCSC's Overly Restrictive Guidelines Violate the Parity Act. ............................................................................. 18

    C.    Count V States A Plausible Claim That HCSC's Overly Restrictive Guidelines Violate ERISA's Non-Discrimination Provision. ................................... 19

    D.    Plaintiffs Seek Relief That Benefits The Plans As A Whole. ................................... 20

III.    Plaintiffs' Claims are Justiciable. ................................................................................... 21

    A.    Even Under HCSC's Reading, Each Count and Prayer for Relief in the Amended Complaint is Justiciable. .......................................................................... 22

    B.    The Crafts and Pautschs Have Standing to Assert Counts III–V ............................ 22

i

C.   The Crafts' Claims Under Counts I and II are Not Moot. .......................................24

CONCLUSION.......................................................................................................... 25

4984901.4

## TABLE OF AUTHORITIES

**Page**

**Cases**

*A.A., ex rel. J.A. v. Blue Cross & Blue Shield of Illinois,*
   2014 WL 910144 (W.D. Wash. Mar. 7, 2014) ........................................................ 15

*A.F. ex rel. Legaard v. Providence Health Plan,*
   35 F. Supp. 3d 1298 (D. Or. 2014) ...................................................................... 11

*Abbott v. Lockheed Martin Corp.,*
   725 F.3d 803 (7th Cir. 2013), *cert. denied,* 134 S. Ct. 826 (2013).......................... 22

*Abramski v. United States,*
   134 S. Ct. 2259 (2014)........................................................................................ 8

*Adkins v. Kelly-Springfield Tire Co.,*
   1998 WL 744052 (N.D. Ill. Oct. 14, 1998) ........................................................... 13

*Allbaugh v. Cal. Field Ironworkers Pension Trust,*
   2014 WL 2112934 (D. Nev. May 20, 2014)............................................................ 15

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)............................................................................................ 3

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)............................................................................................ 3

*Bell v. Keating,*
   697 F.3d 445 (7th Cir. 2012), ....................................................................... 23, 24

*Bell v. Xerox Corp.,*
   52 F. Supp. 3d 498 (W.D.N.Y. 2014) ................................................................... 23

*Black v. Long Term Disability Ins.,*
   373 F. Supp. 2d 897 (E.D. Wis. 2005)................................................................... 14

*Bontkowski v. Smith,*
   305 F.3d 757 (7th Cir. 2002) .............................................................................. 13

*Brazil v. Office of Personnel Mgmt.,*
   35 F. Supp. 3d 1101 (N.D. Cal. 2014) ................................................................... 12

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,*
   504 F.3d 229 (2d Cir. 2007) ................................................................................ 22

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*
   467 U.S. 837 (1984)................................................................................... 7, 9, 10

4984901.4

*CIGNA Corp. v. Amara*,
    131 S. Ct. 1866 (2011) ........................................................................... 14

*Commodity Futures Trading Comm'n v. Worth Bullion Grp., Inc.*,
    717 F.3d 545 (7th Cir. 2013) .................................................................... 7

*Dadian v. Vill. of Wilmette*,
    1999 WL 299887 (N.D. Ill. May 4, 1999) ............................................... 13

*DeVito v. Aetna, Inc.*,
    536 F. Supp. 2d 523 (D.N.J. 2008) .......................................................... 15

*Exbom v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*,
    900 F.2d 1138 (7th Cir. 1990) ................................................................. 23

*Fin. Institutions Ret. Fund v. Office of Thrift Supervision*,
    964 F.2d 142 (2d Cir. 1992) .................................................................... 23

*Garcia v. United States*,
    469 U.S. 70 (1984) ................................................................................... 6

*Gooch v. United States*,
    297 U.S. 124 (1936) .................................................................................. 7

*Horvath v. Keystone Health Plan E., Inc.*,
    333 F.3d 450 (3d Cir. 2003) .................................................................... 23

*Impress Commc'ns v. Unumprovident Corp.*,
    335 F. Supp. 2d 1053 (C.D. Cal. 2003) ................................................... 23

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
    2013 WL 4506000 (N.D. Ill. Aug. 23, 2013) ............................................ 4

*In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.*,
    2005 WL 1972565 (D. Or. Aug. 15, 2005) .............................................. 15

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) .................................................................... 7

*King v. Burwell*,
    __ S. Ct. __, 2015 WL 2473448 (2015) .................................................... 7

*Kling v. Fid. Mgmt. Trust Co.*,
    270 F. Supp. 2d 121 (D. Mass. 2003) ...................................................... 21

*Kuper v. Iovenko*,
    66 F.3d 1447 (6th Cir. 1995) ................................................................... 21

iv

*Larson v. Northrop Corp.*,
   21 F.3d 1164 (D.C. Cir. 1994) .................................................................................. 23

*Lehman v. Nelson*,
   2014 WL 4540160 (W.D. Wash. Sept. 11, 2014) ...................................................... 15

*Lowden v. T-Mobile USA, Inc.*,
   512 F.3d 1213 (9th Cir. 2008) .................................................................................. 22

*Martin v. Aetna Life Ins. Co.*,
   2014 WL 2009079 (E.D. Mo. May 16, 2014) .......................................................... 15

*Massachusetts Mut. Life Ins. Co. v. Russell*,
   473 U.S. 134 (1985) .................................................................................................. 21

*Michigan Citizens for an Independent Press v. Thornburgh*,
   868 F.2d 1285 (D.C. Cir. 1989) ................................................................................ 7

*Minch v. City of Chicago*,
   486 F.3d 294 (7th Cir. 2007) .................................................................................... 4

*Mondry v. Am. Family Mut. Ins. Co.*,
   557 F.3d 781 (7th Cir. 2009) .................................................................................... 15

*Prado-Steiman ex rel. Prado v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) ................................................................................ 22

*Rogers v. Baxter Int'l, Inc.*,
   417 F. Supp. 2d 974 (N.D. Ill. 2006), *aff'd*, 521 F.3d 702 (7th Cir. 2008) ............... 21

*Russell Motor Car Co. v. United States*,
   261 U.S. 514 (1923) .................................................................................................. 6

*Schenkel & Shultz, Inc. v. Homestead Ins. Co.*,
   119 F.3d 548 (7th Cir. 1997) .................................................................................... 6

*Sebelius v. Cloer*,
   133 S. Ct. 1886 (2013) .............................................................................................. 6

*Silva v. Metro. Life Ins. Co.*,
   762 F.3d 711 (8th Cir. 2014) .............................................................................. 14, 15

*Thulin v. Shopko Stores Operating Co., LLC*,
   771 F.3d 994 (7th Cir. 2014) .................................................................................... 3

*Toney v. L'Oreal USA, Inc.*,
   406 F.3d 905 (7th Cir. 2005) .................................................................................... 25

*Tourdot v. Rockford Health Plans, Inc.*,
439 F.3d 351 (7th Cir. 2006) .................................................................. 6

*Treadway v. Gateway Chevrolet Oldsmobile Inc.*,
362 F.3d 971 (7th Cir. 2004) .................................................................. 9

*U.S. ex rel. Batty v. Amerigroup Illinois, Inc.*,
528 F. Supp. 2d 861 (N.D. Ill. 2007) .................................................... 24

*U.S. v. Linder*,
2013 WL 505214 (N.D. Ill. Feb. 12, 2013) ............................................ 4

*United States v. AMC Entm't, Inc.*,
549 F.3d 760 (9th Cir. 2008) ................................................................ 12

*United States v. Powell*,
423 U.S. 87 (1975) ................................................................................ 7

*United States v. Story*,
137 F.3d 518 (7th Cir. 1998) ................................................................ 11

*Universal Surveillance Corp. v. Checkpoint Sys., Inc.*,
2013 WL 8336267 (N.D. Ohio Sept. 28, 2013) ...................................... 4

*Varity Corp. v. Howe*,
516 U.S. 489 (1996) ....................................................................... 14, 16

*Warth v. Seldin*,
422 U.S. 490 (1975) ............................................................................ 23

*Wilson v. Frito-Lay N. Am., Inc.*,
961 F. Supp. 2d 1134 (N.D. Cal. 2013) ............................................... 12

*Wit v. United Behavioral Health*,
2014 WL 6626894 (N.D. Cal. Nov. 20, 2014) ...................................... 18

*Zebrowski v. Evonik Degussa Corp. Admin. Comm.*,
2011 WL 767444 (E.D. Pa. Feb. 24, 2011) .......................................... 15

**Statutes**

29 U.S.C. § 1109(a) ................................................................... 20, 21

29 U.S.C. § 1132(a)(1)(B) ................................................................ passim

29 U.S.C. § 1132(a)(2) ................................................................. 20, 21

29 U.S.C. § 1132(a)(3) ........................................................ 14, 15, 16, 17

4984901.4

29 U.S.C. § 1132(a)(3)(B) ............................................................................ 16

29 U.S.C. § 1185a ................................................................................... 5, 12

29 U.S.C. § 1185d ...................................................................................... 19

42 U.S.C. § 300gg-5 ................................................................................... 19

**Other Authorities**

153 Cong. Rec. S1864 (daily ed. Feb. 12, 2007) ........................................ 8

154 Cong. Rec. H8619 (daily ed. Sept. 23, 2008) ...................................... 8

**Rules**

Fed. R. Civ. P. 54 ....................................................................................... 13

Fed. R. Civ. P. 8 .................................................................................... 13, 14

Fed. R. Civ. P. 9 ....................................................................................... 25

**Treatises**

Newberg on Class Actions § 2:5 (5th ed.) ................................................ 22

**Regulations**

29 C.F.R. § 2590.712(a) ........................................................................ 9, 10

75 Fed. Reg. 5416 .................................................................................. 9, 10

75 Fed. Reg. at 5419 ............................................................................ 11, 12

78 Fed. Reg. 68244 .................................................................................... 10

78 Fed. Reg. 68254 ...................................................................................... 8

4984901.4

This case is brought by three minors suffering from severe, even life-threatening, mental illnesses and their families—the Crafts, Pautsches and Segers—who must struggle to cope with these devastating illnesses, struggles that compounded immeasurably when Defendant HCSC callously denied coverage for the residential treatment their children desperately need. Despite responsibly obtaining broad-based health insurance coverage purporting to cover the mental healthcare their children need, these three families have been left with the impossible alternatives of personally shouldering the crushing expense of adequate treatment or watching helplessly as their children's conditions deteriorate from lack of appropriate care. This case concerns HCSC's decision to place profits ahead of its fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*—including the duty to comply with the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act, 29 U.S.C. § 1185a (the "Parity Act")—duties it owes to the Crafts, Pautsches and Segers, and to the thousands of other families like them. HCSC gravely injured these families by refusing to cover treatment in residential treatment centers ("RTC"), effectively eliminating an entire level of mental health coverage from Plaintiffs' welfare benefit plans. In its Motion to Dismiss Plaintiffs' Amended Complaint, HCSC tries once again to immunize these fiduciary breaches and leave the Crafts, Pautsches and Segers, and the class they represent, with no recourse.

## BACKGROUND

Plaintiff Elizabeth Craft and her daughter, Jane Doe (together, the "Crafts"), originally filed this suit to challenge HCSC's enforcement of their health plan's categorical exclusion of RTC coverage. ███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████[1]

HCSC then moved to dismiss the original complaint on the same legal basis that HCSC raises now with respect to Counts I and II of the Amended Complaint: whether a categorical exclusion of coverage for RTC is a "treatment limitation" within the meaning of the Parity Act. *See* ECF No. 32 at 6–10. HCSC did not, and does not now, dispute that if the exclusion is a "treatment limitation," its enforcement by HCSC violated the Parity Act. The Court rejected HCSC's statutory interpretation, and denied the first motion to dismiss. ECF No. 46.

Shortly thereafter, Plaintiffs amended the complaint to add four new plaintiffs—Mary Doe and her father, Bryan Pautsch (the "Pautsches"), and John Doe and his mother, Landis Seger (the "Segers")—and allege additional factual and legal bases for relief. Mary's plan, like Jane's, contained a categorical exclusion of coverage for RTC. Unlike the Crafts, however, the Pautsches were able to pay out-of-pocket for the RTC treatment that HCSC denied. Retrospectively, the Pautsches seek benefit payments for the RTC treatment Mary obtained, and the Crafts seek equitable relief to remedy HCSC's unjust profit from wrongfully denying Jane's claim and causing her condition to deteriorate. Prospectively, both the Crafts and Pautsches seek a declaration that HCSC may not categorically exclude RTC in the future. John's plan, on the other hand, did not contain a categorical RTC exclusion, so HCSC instead denied his RTC claims based on its internal guidelines for establishing the "medical necessity" of RTC care; guidelines so restrictive that they effectively exclude RTC care for all patients who do not meet the criteria for psychiatric *hospitalization*, a more intensive level of care.[2] This gross deviation from generally

---

[1] The Memorandum in Support of Defendant's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, ECF No. 72, will be cited herein as "Mot."

[2] The guidelines require the patient to be experiencing psychosis or mania and to be an imminent threat to himself or others, which, under generally-accepted medical principles, would require hospitalization.

accepted medical practice violates the terms of the health benefit plans HCSC administers.[3]
Accordingly, John seeks retrospective relief for his denied coverage. But HCSC uses these
guidelines to adjudicate **all** RTC claims it does not automatically deny pursuant to a plan exclu-
sion. *See*, *e.g.*, Compl. ¶¶ 43, 54, 72. Like John, Jane and Mary will likely require residential
treatment—which is no longer categorically excluded under their revised plans—in the future.
HCSC will adjudicate their claims using the same flawed guidelines it used to deny John cover-
age. For that reason, **all** Plaintiffs seek prospective relief declaring HCSC's guidelines improper,
and enjoining their use.

## LEGAL STANDARD

As the Court noted in denying HCSC's prior motion to dismiss:

> To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide
> enough factual information to 'state a claim to relief that is plausible on its face'
> and 'raise a right to relief above the speculative level.'" *Thulin v. Shopko Stores
> Operating Co., LLC*, 771 F.3d 994, 997 (7th Cir. 2014) (quoting *Bell Atl. Corp. v.
> Twombly*, 550 U.S. 544, 555, 570 (2007)). "Whether a complaint states a claim
> upon which relief may be granted depends upon the context of the case and 're-
> quires the reviewing court to draw on its judicial experience and common sense.'"
> *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The court accepts the
> complaint's well-pleaded allegations as true and construes them in the light most
> favorable to the plaintiffs. *Id.*

ECF No. 46 at 2. A claim is facially plausible when it "allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

I.   **Plaintiffs Plausibly Plead Claims Arising from HCSC's Enforcement of Categorical
     Exclusions of Coverage for RTC.**

Amended Complaint Counts I and II are substantively unchanged from the original Com-

---

[3] Each of the Plaintiffs' plans requires HCSC to determine the medical necessity of covered treatments
according to generally accepted standards of medical practice. Compl. ¶ 16; *see also, e.g.,* ECF No. 72,
Ex. A to Flores Decl. (Ex. 1) (Craft Certificate of Coverage) at 20–21; *id.*, Ex. B (Pautsch Benefit
Booklet) at 75.

plaint, *compare* ECF No. 1 (original complaint) at ¶¶ 34-49 *with* Compl. at ¶¶ 92–105, and HCSC already failed once to convince the Court that a categorical exclusion of RTC coverage is not a "treatment limitation" within the meaning of the Parity Act. *See* ECF No. 32 at 6–10; ECF No. 46 at 9–10 (finding HCSC's reading "is not the only reasonable interpretation" of the statutory language and, under Plaintiffs' and the Departments' interpretation, Plaintiffs "have stated a claim for relief under the Parity Act."). HCSC cannot disguise a motion for reconsideration as a motion to dismiss, and even if it could, "[a] motion to reconsider is not the appropriate vehicle to rehash previously rejected arguments or introduce new legal theories." *U.S. v. Linder*, 2013 WL 505214, at *2 (N.D. Ill. Feb. 12, 2013) (Kendall, J.). Moreover, the law of the case prevents HCSC's second bite at the apple. *See, e.g., Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007) ("law of the case doctrine embodies the notion that a court ought not to re-visit an earlier ruling in a case absent a compelling reason, such as manifest error or a change in the law"); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 4506000, at *3 n.5 (N.D. Ill. Aug. 23, 2013) (doctrine applies to court's earlier ruling denying motion to dismiss); *Universal Surveillance Corp. v. Checkpoint Sys., Inc.*, 2013 WL 8336267, at *5 (N.D. Ohio Sept. 28, 2013) (denying motion to dismiss amended complaint based on law of the case where court previously denied motion with regard to nearly identical original complaint) (collecting cases), *report and recommendation adopted*, 2014 WL 1493158 (N.D. Ohio Apr. 15, 2014).[4]

The Court has scant reason to retread old ground, given that HCSC's statutory interpretation arguments grow no more convincing through repetition. The Parity Act states that any group health plan "that provides both medical and surgical benefits and mental health or substance use

---

[4] The mere fact that the Amended Complaint adds a second Plaintiff who was subjected to the same RTC exclusion does not justify revisiting the Court's prior ruling. Mary's claim differs from Jane's only in that Mary's family was able to pay for the treatment out-of-pocket, which is immaterial to HCSC's motion.

disorder benefits" (as the plans at issue here undisputedly do) must ensure that:

> The *treatment limitations* applicable to such mental health or substance use disorder benefits are *no more restrictive* than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan . . . and there are *no separate treatment limitations* that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185a(a)(3)(A)(ii) (emphasis added). The Act defines "treatment limitation" via illustrative examples, explaining that it "includes," *e.g.*, "limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment." *Id.* at § 1185a(a)(3)(B)(iii). This plain language prohibits the RTC exclusion, which *reduced to zero* the "frequency of treatment, number of visits [or] days of coverage" available for residential treatment of mental health conditions. But even if an ambiguity existed, it would be resolved congruently with the Act's purpose and its interpretation by the Departments tasked with its enforcement. For these reasons, the Act prohibits an RTC exclusion.

### A. The Parity Act's Plain Language Prohibits the RTC Exclusion.

The Parity Act unambiguously "includes" in the definition of "'treatment limitation' . . . limits on the *scope or duration* of treatment." 29 U.S.C. § 1185a(a)(3)(B)(iii) (emphasis added). As the Court noted in denying HCSC's prior motion, "[t]he practical effect of the RTC exclusion is that [Plaintiffs] receive[] fewer hours (or days) of coverage for medically necessary nursing care than, for example, an elderly person would receive to rehabilitate a broken hip." ECF No. 46 at 9. HCSC's RTC exclusion was therefore plainly a "limit on the scope or duration of treatment" that was "similar" to the examples enumerated in the Parity Act.

Though the word "quantitative" appears nowhere in the statute, HCSC argues that the plain language of the Parity Act only applies to "quantitative" treatment limitations.[5] But HCSC

---

[5] Even if HCSC were correct, a categorical RTC exclusion would need to be understood as such a "quantitative" limit. HCSC's RTC exclusions meant that the "*frequency of* [RTC] *treatment*" under the

only arrives at this "[anything-but-]plain language" by improperly resorting to the canons *noscitur a sociis* and *ejusdem generis*. Mot. at 9. HCSC's "plain-language" analysis rings false, since HCSC blithely skips reading the statute, and goes straight to canons of construction that are only "to be used where statutory or other language is ***ambiguous***." *Tourdot v. Rockford Health Plans, Inc.*, 439 F.3d 351, 353 (7th Cir. 2006) (emphasis added); *Sebelius v. Cloer*, 133 S. Ct. 1886, 1895–96 (2013) ("[C]anons and policy arguments come into play only to the extent that the [statute] is ambiguous.") (quotations omitted). Either the language is plain, in which case neither *noscitur a sociis* nor *ejusdem generis* has a role,[6] or it is ambiguous. HCSC can't have it both ways by using canons of construction "both to create and to resolve the ambiguity allegedly at issue." *See Tourdot*, 439 F.3d at 354.[7] Categorically excluding RTC is unambiguously "similar" to reducing the frequency, number, or length of visits to RTC, and HCSC cannot manipulate canons of construction to change that fact. *See, e.g.*, *Tourdot*, 439 F.3d at 354.

**B.  Even if the Parity Act were ambiguous, that ambiguity must be resolved in favor of including categorical exclusions of RTC within the statutory definition.**

Even if the Parity Act were ambiguous with regard to the "numerical quality" of prohibited treatment limitations, Defendant's motion would still fail. Three fundamental principles of statutory interpretation (discussed in further detail below) require that result: (1) statutes must be

---

relevant Plans was *zero*, the "***number of visits***" to an RTC facility permitted under the relevant Plans was *zero*, and the "***days of coverage***" provided for RTC under the relevant Plans was *zero*. HCSC's assertion that a blanket RTC exclusion lacks a "numerical quality," *see* Mot. at 11, is akin to taking issue with the "Twelve Days of Christmas" for not specifying that there was "[one] partridge in [one] pear tree."

[6] *See, e.g.*, *Russell Motor Car Co. v. United States*, 261 U.S. 514, 519 (1923) (*noscitur a sociis*); *Schenkel & Shultz, Inc. v. Homestead Ins. Co.*, 119 F.3d 548, 551 (7th Cir. 1997) (same); *Garcia v. United States*, 469 U.S. 70, 74 (1984) (*ejusdem generis*); *Tourdot*, 439 F.3d at 353 (same).

[7] HCSC's argument breaks down when viewed in slow motion. Relying on *noscitur a sociis* and *ejusdem generis*, HCSC first posits that the examples listed in the Parity Act—"frequency of treatment, number of visits, days of coverage"—all "share a numerical quality." *See* Mot. at 11. HSCS then implies that this "share[d] numerical quality" creates an ambiguity as to whether "similar limits on the scope or duration of treatment" must also have a "numerical quality." *See id.* Then, HCSC relies on the same canons to resolve its manufactured ambiguity and conclude that a numerical quality is required. *See id.* at 11–12.

4984901.4

interpreted consistent with their legislative purpose; (2) statutes must be interpreted to avoid absurd results; and (3) the interpretation of a statute by the administrative agency tasked with its enforcement is entitled to *Chevron* deference. Each of these principles would outweigh canons like *noscitur a sociis* and *ejusdem generis*, even *if* those canons otherwise supported HCSC's position. *See, e.g., United States v. Powell*, 423 U.S. 87, 91 (1975) ("'The rule of *ejusdem generis*, while firmly established . . . may not be used to defeat the obvious purpose of legislation.'") (quoting *Gooch v. United States*, 297 U.S. 124, 128 (1936)); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 218 (5th Cir. 2007) (dismissing plaintiffs' *noscitur a sociis* and *ejusdem generis* arguments summarily after concluding that plaintiffs' proffered interpretation "is unworkable and would lead to absurd results"); ECF No. 46 at 8 n.5 ("'*Chevron* implicitly precludes courts picking and choosing among various canons of statutory construction to reject reasonable agency interpretations of ambiguous statutes.'") (quoting *Michigan Citizens for an Independent Press v. Thornburgh*, 868 F.2d 1285, 1292 (D.C. Cir. 1989)).[8]

### 1. Prohibiting categorical exclusions of RTC coverage is consistent with the Parity Act's purpose.

Statutes must be interpreted consistent with their purpose. *See*, *e.g.*, *King v. Burwell*, __ U.S. __, 2015 WL 2473448, at *12 (2015) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law."); *Commodity Futures Trading Comm'n v. Worth Bullion Grp., Inc.*, 717 F.3d 545, 550 (7th Cir. 2013) (courts must consider "the language of the whole law, and its object and policy") (citation

---

[8] HCSC's attempt to diminish the Court's reliance on *Thornburgh* is unconvincing. It argues that "more recent authority from this Circuit and the D.C. Circuit makes clear that only once the Court has first determined that the statute is, in fact, ambiguous on the question presented must it defer to a reasonable agency interpretation." *See* Mot. at 10. As explained above, the same must be true before the Court would turn to canons of construction.

omitted) (internal quotation marks omitted); *Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014) (courts must "interpret the relevant words not in a vacuum, but with reference to the statutory context, structure, history, and purpose, . . . not to mention common sense") (citation omitted) (internal quotation marks omitted).

Accepting HCSC's invitations to restrict the Parity Act to "quantitative" treatment limitations and to construe the blanket exclusion of RTC coverage as a permissible "non-quantitative" limitation would frustrate the Act's purpose. In enacting the 2008 Parity Act, Congress concluded that its 1996 predecessor's limited prohibition on discrete mental-health-specific financial restrictions was insufficient to remedy rampant discrimination by insurers. *See, e.g.,* 154 Cong. Rec. H8619 (daily ed. Sept. 23, 2008) (statement by Rep. James Ramstad that Parity Act seeks to "prohibit health insurers from placing discriminatory barriers on treatment."); 78 Fed. Reg. 68254 (explaining that plans complying with the 1996 law instead "turned to more restrictive financial requirements and treatment limitations").[9] With complete disregard for this purpose, HCSC seeks the Court's blessing to return to the loophole-filled days of 1996, when mental health parity was an empty promise. Even HCSC concedes that the Parity Act was intended to prevent HCSC from, for example, restricting the number of days patients may spend in RTC for mental illness. Mot. at 11. It vitiates that intent to allow HCSC to achieve the same discriminatory end by excluding that treatment setting entirely. As the Court delicately put it, HCSC's interpretation "is arguably at odds with the statute's purpose to achieve coverage parity whenever a plan offers both mental-health and medical/surgical benefits." ECF No. 46 at 9.

---

[9] *See also* 153 Cong. Rec. S1864 (daily ed. Feb. 12, 2007) (statement by Rep. Patrick Kennedy, the sponsor of the legislation, that "[a]ccess to mental health services is one of the most important and most neglected civil rights issues facing the Nation [and for] too long, persons living with mental disorders have suffered discriminatory treatment at all levels of society").

### 2. Prohibiting categorical RTC exclusions avoids absurd results.

By design, HCSC's interpretation creates absurd results, as HCSC seeks an end-run around the Parity Act's clear prohibition on discrimination against mental health coverage. Statutes must be "interpret[ed] . . . to avoid absurd results." *Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 976 (7th Cir. 2004). If a complete exclusion of mental health treatment rendered in a particular treatment setting were *not* a "treatment limitation" prohibited by the Parity Act, plans could purport to provide coverage for all mental health conditions, but then exclude coverage for mental health treatment provided in any "setting" more expensive than a therapist's office, leaving the sickest patients with no option for intensive care. Indeed, under HCSC's statutory interpretation, it appears HCSC could in fact eliminate coverage for *every* mental health treatment setting, while simultaneously purporting to cover mental health.

### 3. The Departments' interpretation that the Act applies to non-quantitative treatment limitations is entitled to *Chevron* deference.

Finally, if the Parity Act's definition of "treatment limitations" were somehow ambiguous, the Court would be obliged to defer to the Departments' interpretation in the Interim Final Regulations ("IFRs") that the term includes non-quantitative limitations. The interpretation of a statute by the administrative agencies tasked with its enforcement is entitled to *Chevron* deference. *See*, *e.g.*, *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). In the IFRs, issued on February 2, 2010, the Departments interpreted the term "treatment limitations" as used in the Parity Act to include **both** quantitative **and** non-quantitative limitations, directly contrary to HCSC's argument here. *See* 75 Fed. Reg. 5416; *see also* 29 C.F.R. § 2590.712(a) (2010). Discussing the regulations in the IFRs' preamble, the Departments explained:

> Plans impose a variety of limits affecting the scope or duration of benefits under the plan that are not expressed numerically. Nonetheless, **such nonquantitative**

9

> ***provisions are also treatment limitations*** affecting the scope or duration of bene-
> fits under the plan. . . . Paragraph (c)(4) of these regulations generally prohibits
> the imposition of any nonquantitative treatment limitation to mental health . . .
> benefits unless certain requirements are met.

75 Fed. Reg. 5416 (emphasis added). The Departments adhered to that interpretation when they

issued the Final Regulations on November 13, 2013. 78 Fed. Reg. 68244; *see also* 29 C.F.R.

§ 2590.712(a) (2014). Thus, the Departments charged with implementing the Parity Act have

consistently rejected HCSC's overly-narrow interpretation. When a statute's text is ambiguous,

and the agencies entrusted with its administration have interpreted that text, Courts must defer to

that interpretation unless it is unreasonable. *See, e.g.*, *Chevron*, 467 U.S. 837 at 842–43. Indeed,

even HCSC admits that "[i]f the Parity Act is ambiguous, then the IFRs are a reasonable agency

interpretation entitled to deference under *Chevron*." Mot. at 13.

> **4.    The Departments' decision not to address "scope of services" is not a
> statutory interpretation and therefore is not a basis for *Chevron*
> deference.**

After railing against *Chevron* deference to the Departments' unequivocal rejection of

HCSC's definition of "treatment limitations," HCSC does an about-face, construing the IFR's

election *not* to address the "scope of services" covered by the Parity Act as an interpretation of

the statutory language that should be accorded *Chevron* deference. *See* Mot. at 13. That makes

no sense: the Departments' ***refusal to interpret*** a particular aspect of the statutory language is by

definition not an ***interpretation*** of the statutory language. HCSC's argument is even less sup-

portable given that it flies in the face of the rest of the IFRs, which interpret the term "treatment

limitations" as including non-quantitative treatment limitations. In any event, the Court has

already held that "[t]he Parity Act is 'self-implementing' and it applied at all times relevant to

this case," and that the Departments' decision not to address the "scope of services" issue—far

from a pronouncement by the Departments "either in favor of, or against, coverage"—receives

4984901.4

no *Chevron* deference. ECF No. 46 at 9 (citing Preamble, IFRs Under the Parity Act, 75 Fed. Reg. at 5419 (Feb. 2, 2010)). HCSC's attempt to re-litigate the issue is improper.

HCSC seeks to rely on the recent decision in *S.S. v. Microsoft Corp. Welfare Plan*. *See* Order Granting Defs.' Mot. to Dismiss, No. 2:14-cv-00351-RSM (W.D. Wash. Feb. 11, 2015), ECF No. 49 (cited hereafter as "*S.S.*"). But an unpublished decision from outside this Circuit— and one which, but for that case's settlement, would certainly have been reversed on appeal—is hardly the kind of "change in law" that warrants asking the Court to change the law of the case. *See United States v. Story*, 137 F.3d 518, 520 (7th Cir. 1998) ("Although we have the discretion to reconsider an issue that we have already decided in prior stages of litigation, we usually decline to do so unless an intervening change in the law, or some other special circumstance, warrants reexamining the claim.") (quotations and citations omitted). *S.S.* was wrongly decided and provides no reason for the Court to revisit its earlier analysis. It is also directly contrary to the published, and much better reasoned, *A.F. ex rel. Legaard v. Providence Health Plan*, 35 F. Supp. 3d 1298, 1315 (D. Or. 2014), which Plaintiffs cited in their first opposition to HCSC's argument. *See* ECF No. 36 at 5 n.4.

First, the *S.S.* court put the *Chevron* cart before the textual horse. Instead of addressing the plaintiff's argument that the plain meaning of the Parity Act prohibited the exclusion at issue, the court improperly focused on the alleged lack of clarity in the IFRs:

> Plaintiff argues that the controlling language of the Federal Parity Act itself precludes the wholesale exclusion of room and board at residential treatment facilities because under the Act, a "treatment limitation" includes any provision that limits the scope of treatment, and the plain and ordinary meaning of that term would apply to an exclusion of a particular type of facility. However, the implementing regulations applicable here (the IFRs), which provide guidance to coverage plans subject to the Act about what the provisions of the Act means, are not as clear as Plaintiff asserts, as discussed above.

*S.S.* at 14. It is no answer to the fact that the ***statutory text*** clearly includes "limits on the scope

. . . of treatment" to state that the IFRs are not clear.

Second, this Court has already rejected *S.S.*'s reasoning. *S.S.* primarily relied on distinguishable Ninth Circuit precedent holding that "'[d]ue process requires that the government provide citizens and other actors with sufficient notice as to what behavior complies with the law.'" [10] *See S.S.* at 12 (quoting *United States v. AMC Entm't, Inc.*, 549 F.3d 760, 768 (9th Cir. 2008)).[11] This Court, however, has already held that Plaintiffs' interpretation of the Parity Act does not violate due process. ECF No. 46 at 13–14. The Court explained:

> **HCSC was not operating in a legal vacuum.** The Departments construed the statute to apply to nonquantitative treatment limitations, and merely deferred decision on the scope-of-services issue. The Departments later explained in the preamble to the final regulations that they "did not intend that plans and issuers could exclude intermediate levels of care covered under the plan from the [Parity Act's] parity requirements." 78 Fed. Reg. 68240–1, 68247. HCSC contends that this is a *post hoc* rationalization, . . . but it is arguably the most reasonable conclusion to draw from the Departments' decision not to address the issue in the IFRs. **It would be a stretch to conclude from the Departments' request for comments that it was authorizing issuers to enforce treatment-setting limitations.** They simply were not prepared to issue guidance at that time.

---

[10] *S.S.* also relied on dicta in *Brazil v. Office of Personnel Mgmt.*, 35 F. Supp. 3d 1101 (N.D. Cal. 2014), *see S.S.* at 13–14, that this Court already dismissed as irrelevant. *See* ECF No. 46 at 9 n.6.

[11] *S.S.* clearly misapplied this precedent. In *AMC Entertainment*, the Ninth Circuit considered whether movie theaters had adequate notice, prior to a government amicus brief, that a *regulation* providing wheelchair-bound patrons "lines of sight comparable to those for members of the general public," meant that the viewing angles must be the same. *See* 549 F.3d at 763–64. Moreover, finding such adequate notice would have been punitive, requiring already-built movie theaters to be rebuilt. *Id.* at 762. Similarly, *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134 (N.D. Cal. 2013), the other due process decision cited by *S.S.*, considered whether FDA warning letters relating to a *proposed amended regulation* that was *later abandoned* provided adequate notice that products containing ingredients that are sources of MSG when metabolized—rather than actually containing MSG as an ingredient—could not be labeled "no MSG." *Id.* at 1146–47. Just as in *AMC Entertainment*, finding adequate notice would have resulted in a punitive remedy, forcing the defendant to refund to customers years of food sales as well as pay punitive damages. *See* Second Amended Complaint, *Frito-Lay N. Am., Inc.*, 2013 WL 3734032 (N.D. Cal. May 1, 2013), No. 3:12-cv-1586-SC. By comparison, *S.S.* and this case involve a "*self-implementing*" statute, *see* 75 Fed. Reg. at 5419 (emphasis added), whose plain text includes "*limits on the scope* . . . *of treatment*," 29 U.S.C. § 1185a(a)(3)(B)(iii) (emphasis added), and which the Departments warned could "require plans to provide 'the full scope of medically appropriate services' for mental-health conditions . . . .'" ECF No. 46 at 6 (quoting "Preamble, IFRs Under the Parity Act, 75 Fed. Reg. at 5419 (Feb. 2, 2010)). As the Court previously concluded, HCSC was hardly "unfair[ly] surprise[d]" by the illegality of RTC exclusions. *See* ECF No. 46 at 13. HCSC will also be no worse off if forced to comply now than if it had done so in 2008.

*Id.* (emphasis added). *S.S.* is hardly a "change in law" with respect to due process jurisprudence sufficient to make this Court reexamine its holding. Indeed, HCSC does not even ask the Court to revisit that issue, utterly abandoning its due process argument in its second motion to dismiss.

### C. Plaintiffs' Demand For A Surcharge Remedy Is More Than Sufficient Under Rule 8(a)(3).

Apparently confusing a prayer for relief with a substantive claim,[12] HCSC asks this Court to "dismiss" Plaintiffs' request for a surcharge because Plaintiffs supposedly failed to plead their entitlement to it with sufficient particularity. Mot. at 15–16.[13] HCSC cites no authority for its novel position that a demand must be pled with specificity. Quite the contrary, Rule 8(a)(3) requires only that the defendant "receive[] adequate notice of what relief is sought." *Adkins v. Kelly-Springfield Tire Co.*, 1998 WL 744052, at *6 (N.D. Ill. Oct. 14, 1998) (quotations and citation omitted); *see also* Fed. R. Civ. P. 8(a)(3) (in addition to "short and plain statement of the claim," pleading must contain "a demand for the relief sought, which may include relief in the alternative or different types of relief"). Plaintiffs' detailed prayer for relief, along with the paragraphs requesting relief within each Count, are more than adequate to notify HCSC that Plaintiffs seek, among other things, equitable relief in the form of a surcharge. Compl. at 32–33 (Prayer for Relief); *id.* ¶¶ 104–05, 113, 121, 128; *see also, e.g., Dadian v. Vill. of Wilmette*, 1999 WL 299887, at *2 (N.D. Ill. May 4, 1999) ("[I]t has long been noted that 'a pleader need only make one demand for relief regardless of the number of claims he asserts.'") (citation omitted).

---

[12] Under Rule 8(a)(3), a demand for relief is not part of a plaintiff's claim. *See* Fed. R. Civ. P. 8(a); *see also Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002). Furthermore, Rule 54(c) allows a party to "obtain any relief to which he's entitled, even if he 'has not demanded such relief in [his] pleadings.'" *Bontkowski*, 305 F.3d at 762 (citation omitted). It would be an odd result indeed if Plaintiffs were precluded—at the very outset of the case—from seeking a surcharge remedy that otherwise would be available to them *even if* they had not specifically demanded it in their pleading.

[13] HCSC's discussion focuses solely on Plaintiffs' request for a surcharge in Count II, Mot. at 15–16, but in fact, Plaintiffs seek equitable relief, including a surcharge, in connection with Counts III, IV and V as well. *See* Compl. ¶¶ 113, 121, 128 & p. 33.

13

4984901.4

And, the Amended Complaint certainly gives HCSC adequate notice for the basis of such relief, explaining that HCSC has profited from its many breaches of its fiduciary duties. *See* Compl. at ¶ 26 & p. 33. Finally, the Supreme Court has explicitly held that surcharge is one of the equitable remedies available under ERISA. *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1881 (2011). There is no basis for the Court, especially this early in the case, to limit its own broad equitable powers to craft appropriate relief by "dismissing" Plaintiffs' prayer for a surcharge remedy.

### D. Plaintiffs' Claims For Equitable Relief Are Independent Of Their Claims For Improperly Denied Benefits.

There is also no basis, particularly at this early stage, to dismiss Plaintiffs' 29 U.S.C. § 1132(a)(3) claims, which they pled in the alternative to the extent they cannot obtain the relief they seek under § 1132(a)(1)(B).[14] HCSC does not dispute that § 1132(a)(3) authorizes broader equitable relief than (a)(1)(B) or that the equitable relief Plaintiffs seek fits squarely within the language of (a)(3), which provides injunctive and "other appropriate equitable relief" for "any act or practice which violates any provision of [ERISA] subchapter [I] or the terms of the plan[s]." Rather, Defendant seeks to dismiss all of Plaintiffs' (a)(3) claims based solely on its assertion that they are "repackaged" (a)(1)(B) claims. *See* Mot. at 14–18; *id*. at 18–19 (same argument as to Counts III and IV).

The Federal Rules permit Plaintiffs to plead alternate legal theories of recovery for the same factual allegations. *See*, *e.g.*, Fed. R. Civ. P. 8(a)(3). ERISA does not change the federal pleading regime. *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 726 (8th Cir. 2014) ("'*Varity Corp.* did not deal with pleading but rather with relief'") (quoting *Black v. Long Term Disability Ins.*, 373 F. Supp. 2d 897, 902–03 (E.D. Wis. 2005)). Plaintiffs' § 1132(a)(3) claims could only be

---

[14] Count II, which seeks equitable relief under § 1132(a)(3), is implicitly pled as an alternative to Count I, which seeks payment under § 1132(a)(1)(B). This argument also applies to Counts III, IV and V, which explicitly state that Plaintiffs rely on § 1132(a)(3) "in the alternative, . . . to the extent that the Court finds that the relief sought is otherwise unavailable." Compl. ¶¶ 107, 115, 123.

4984901.4

considered "repackaged" or "duplicative" if Plaintiffs can pursue all of their legal theories *and* obtain all the relief they seek under § 1132(a)(1)(B). While HCSC may be correct that "'where relief is available to a plan participant under other provisions of the statute, relief may not be warranted under section 1132(a)(3),'" Mot. at 14 (quoting *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009)), that simply begs the question. The Court has not yet found (and HCSC does not concede) that Plaintiffs may maintain all of their claims, or obtain all the relief they seek, under § 1132(a)(1)(B).[15] Indeed, "[a]t the motion to dismiss stage, [] it is difficult for a court to discern the intricacies of the plaintiff's claims to determine if the claims are indeed duplicative, rather than alternative, and determine if one or both could provide adequate relief." *Silva*, 762 F.3d at 727. At the pleading stage, without benefit of discovery, neither Plaintiffs nor the Court should be forced to choose between (a)(1)(B) and (a)(3).[16]

HCSC attempts to curtail Plaintiffs' right to plead in the alternative, arguing that "Courts consistently have held that § 1132(a)(1) is the exclusive avenue to pursue the recovery of bene-

---

[15]    Notably, the surcharge remedy Plaintiffs seek is not available under § 1132(a)(1).

[16]    *See, e.g., Allbaugh v. Cal. Field Ironworkers Pension Trust*, 2014 WL 2112934, at *6 (D. Nev. May 20, 2014) ("[A]t the pleading stage, a plaintiff may advance multiple, alternative, and even contradictory theories of liability [under ERISA]."); *In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.*, 2005 WL 1972565, at *3 (D. Or. Aug. 15, 2005) ("Defendants respond that plaintiffs are not entitled to relief under § 1132(a)(3) because alternative remedies exist . . . . [including] recovery of allegedly lost plan benefits (§ 1132(a)(1)(B)). While other remedies ultimately may exist and be appropriate, the pleading stage is not the proper stage at which to make that determination."); *DeVito v. Aetna, Inc.*, 536 F. Supp. 2d 523, 534 (D.N.J. 2008) ("[C]laims under § 1132(a)(3) are not properly dismissed at the motion to dismiss stage merely because a plaintiff has also brought a claim under § [1132](a)(1)(B)."); *Zebrowski v. Evonik Degussa Corp. Admin. Comm.*, 2011 WL 767444, at *3 (E.D. Pa. Feb. 24, 2011) ("Before discovery, plaintiffs should not be forced to choose between their claims for benefits and their claims for equitable relief."); *Martin v. Aetna Life Ins. Co.*, 2014 WL 2009079, at *4 (E.D. Mo. May 16, 2014) ("declin[ing] to dismiss [(a)(3)] equitable claims as duplicative at this stage of the proceedings"); *cf. A.A., ex rel. J.A. v. Blue Cross & Blue Shield of Illinois*, 2014 WL 910144, at *11 (W.D. Wash. Mar. 7, 2014) ("Dismissal of a Section [1132](a)(3) claim is appropriate *at the summary judgment stage where a plaintiff has asserted, and obtained relief for,* a claim under Section [1132](a)(1)(B).") (emphasis added); *Lehman v. Nelson*, 2014 WL 4540160, at *11 (W.D. Wash. Sept. 11, 2014) ("As Plaintiff has *asserted and prevailed* on a claim for benefits, Plaintiff's claim for summary judgment on his [§ 1132(a)(3)] Cause of Action is denied.") (emphasis added).

fits, and redress under § 1132(a)(3) is unavailable **even when** the § 1132(a)(1) claims are ultimately unsuccessful." Mot. at 15 n.8 (emphasis in original). But Plaintiffs' "ultimate success" on the merits is not currently the issue. The Court currently confronts whether Plaintiffs can obtain adequate relief under § 1132(a)(1)(B). To the extent the Court has any doubts, it should not dismiss the alternative (a)(3) claims. That is precisely what *Varity Corp. v. Howe*, 516 U.S. 489 (1996), on which HCSC purports to rely, requires. *Varity*'s central holding is that ERISA's guiding purpose and expansive enforcement language mandate a private right of action under § 1132(a)(1)(B) and, to the extent (a)(1)(B) cannot provide full relief, under § 1132(a)(3). *See* 516 U.S. at 512–15. ERISA's fundamental purpose is "to protect the interests of participants and beneficiaries by establishing standards of conduct, responsibility, and obligation for fiduciaries and providing for appropriate remedies and ready access to the Federal courts." *Id.* (quotation omitted). The "overall structure" of ERISA's civil enforcement provision, § 1132(a), ensures that beneficiaries will have a cause of action against fiduciaries under at least one of its subsections. If, for any reason, a beneficiary cannot pursue an (a)(1)(B) claim against the fiduciary, the beneficiary can bring his claim under § 1132(a)(3).[17] *Id.* at 513.

Plaintiffs' RTC-exclusion claims, moreover, are a perfect example of why Plaintiffs should be permitted to proceed under both sections at this time. The putative class of plaintiffs subjected to the illegal exclusions includes two groups: one group, represented by Mary Doe, managed to pay out-of-pocket for the RTC treatment and therefore have a clear right to repayment under § 1132(a)(1)(B). Compl. ¶¶ 54, 98. The other group, however, represented by Jane

---

[17]    The *Varity* Court did explain, in *dicta*, that because § 1132(a)(3)(B) "authorizes '*appropriate*' equitable relief . . . we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief." *Id.* at 515. The Court's expectation did not in any way dampen its holding "that granting a remedy [for any breaches of ERISA fiduciary duties] is consistent with the literal language of the statute, the Act's purposes, and pre-existing trust law." *Id.*

Doe, could not afford the steep cost of RTC and had to forego the treatment they desperately needed. *Id*. ¶¶ 38–42. Because these individuals did not pay for treatment, they are not necessarily entitled to a "benefit payment" under (a)(1)(B). But HCSC's breach of its fiduciary duties certainly harmed these persons, and simultaneously enriched HCSC. Section (a)(3) may provide the only remedy. It is far from clear that Plaintiffs can obtain all the relief they seek pursuant to 29 U.S.C. § 1132(a)(1)(B), and the Court should therefore not dismiss their § 1132(a)(3) claims.

## II.    Plaintiffs Plausibly Plead Claims Arising from HCSC's Use of Overly Restrictive Coverage Determination Guidelines To Severely Limit Coverage for RTC.

Plaintiffs also plausibly plead their new claims based on HCSC's adoption and application of the Milliman Acute Residential Treatment Guidelines to make medical necessity determinations for *all* RTC claims, thereby effectively eliminating coverage for sub-acute RTC from Plaintiffs' plans. Plaintiffs allege that HCSC's actions violate three separate provisions of ERISA: (1) the fiduciary's duty to act in its insureds' best interest, (2) the Parity Act, and (3) provider non-discrimination. HCSC concedes the first point, and its arguments with regard to the remaining two are no more convincing.

### A.    HCSC Concedes That Count III States a Plausible Claim Under 29 U.S.C. § 1132(a)(1)(B).

Count III of the Amended Complaint alleges that HCSC breached the fiduciary duties it owes to Plaintiffs under ERISA. Compl. ¶ 110. Among other things, HCSC must administer its plans according to their terms and "solely in the interests of participants and beneficiaries." *Id*. ¶ 109. HCSC has violated, and continues to violate, those duties by using overly restrictive coverage determination guidelines. *Id*. ¶ 110–111. HCSC does not dispute the legal sufficiency of these allegations, at least to the extent they are brought pursuant to 29 U.S.C.

17

§ 1132(a)(1)(B).[18] Because HCSC concedes the viability of Count III under at least one statutory provision, that claim must not be dismissed.

### B. Count IV States a Plausible Claim That HCSC's Overly Restrictive Guidelines Violate the Parity Act.

Plaintiffs also plausibly plead that HCSC's application of the overly-restrictive Milliman Guidelines violates the Parity Act. HCSC complains that "the Amended Complaint does not identify any criteria used to determine medical necessity on the medical/surgical side that are less restrictive than those used to evaluate these mental health benefits," and that therefore "Plaintiffs plead only the conclusion: that Milliman Guidelines are more restrictive." Mot. at 19. To the contrary, Plaintiffs have pled that, on the medical/surgical side, HCSC applies generally accepted standards of care. Compl. ¶¶ 29, 117. Plaintiffs have also pled, at length, the deficiencies of the Milliman Guidelines compared to generally accepted standards of care. *See* Compl. ¶¶ 73–82. Specifically, Plaintiffs allege that:

> Milliman . . . Guidelines . . . are inconsistent with generally accepted standards of care in three key respects. First, [they] require a patient to demonstrate that treatment is "not feasible at a lower level of care." Generally accepted standards of care, in contrast, err on the side of caution and call for residential treatment "unless there is a clear and compelling rationale" to place an individual in a lower level of care (*i.e.*, the burden of proof is reversed). Second, [they] require the presence of acute symptoms to trigger residential treatment coverage, whereas generally accepted standards of medical practice highlight chronic considerations as well, and do not exclusively require such acute symptoms. Finally, [they] ignore generally accepted protocols and a breadth of considerations for determining when residential treatment is appropriate and instead focus almost exclusively on a single criterion – the presence of acute symptoms such as imminent risk of harm . . .

*Id.* ¶ 82. And while Plaintiffs cannot allege precisely how HCSC evaluates the medical necessity of medical/surgical analogues to residential treatment, they **do allege** that:

---

[18] Nor could it. Indeed, the Northern District of California just recently denied a motion to dismiss nearly identical claims brought against United Healthcare. *See Wit v. United Behavioral Health*, 2014 WL 6626894 (N.D. Cal. Nov. 20, 2014).

4984901.4

> The welfare benefit plans that HCSC administers require medical necessity determinations to be made by applying generally accepted standards of medical practice. Consistent with plan terms, HCSC makes medical necessity determinations related to medical/surgical conditions, including analogs to residential treatment such as skilled nursing, by applying generally accepted standards of medical practice.

*Id.* ¶ 117. Admittedly, Plaintiffs infer, in the absence of information to the contrary, that HCSC upholds its fiduciary duties with respect to the administration of medical/surgical benefit claims. It is ***possible*** that HCSC does not: that HCSC also deviates from generally accepted standards of medical practice with regard to medical/surgical RTC analogues. But it is certainly ***plausible*** that HCSC complies with the terms of its plans when administering medical/surgical benefit claims. And HCSC certainly does not argue that this inference is incorrect.

### C. Count V States A Plausible Claim That HCSC's Overly Restrictive Guidelines Violate ERISA's Non-Discrimination Provision.

Plaintiffs have also plausibly pled a violation of the Public Health Service Act's non-discrimination provision, 42 U.S.C. § 300gg-5, which is incorporated into all ERISA plans. 29 U.S.C. § 1185d. The non-discrimination provision requires that:

> A group health plan and a health insurance issuer offering group or individual health insurance coverage ***shall not discriminate with respect to*** participation under the plan or ***coverage against any health care provider who is acting within the scope of that provider's license or certification*** under applicable State law.

42 U.S.C. § 300gg-5 (emphasis added). Plaintiffs allege that HCSC's use of the overly restrictive Milliman Guidelines—which require ***acute*** symptoms—to evaluate claims for sub-acute residential treatment effectively excludes all sub-acute RTC facilities from coverage under HCSC plans. Compl. ¶¶ 60, 64–66. By eliminating coverage for treatment by a particular class of providers acting within the scope of their licenses, HCSC is violating the non-discrimination provision. HCSC's interpretation of the provision renders it null. HCSC asserts that it is only prohibited from discriminating against providers if it first determines that a treatment is covered and medi-

19

cally necessary. Mot. at 20–21.[19] But there is no dispute that RTC is a "covered benefit" under John Doe's plan; HCSC just administered that benefit to prevent coverage when he was treated at a sub-acute facility. Thus, what Plaintiffs allege is that HCSC has rigged its medical necessity determinations such that treatment by particular providers will *never* (or at least rarely) be covered. It cannot be the case that HCSC can manipulate its claims handling practices to preclude coverage of treatment by a particular class of providers and yet claim that the non-discrimination provision does not apply ***because*** HCSC denied coverage.

### D. Plaintiffs Seek Relief That Benefits The Plans As A Whole.

Plaintiffs may also pursue Counts III through V under 29 U.S.C. § 1132(a)(2), because they seek relief that benefits their plans, not just themselves as individuals. Under (a)(2), "a participant [or] beneficiary" may bring a civil action "for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2). In turn, 29 U.S.C. § 1109(a) provides that:

> Any person who is a fiduciary with respect to a plan who breaches any of the . . . duties imposed upon fiduciaries by [ERISA] shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate . . . .

Plaintiffs sue HCSC, among other reasons, because "HCSC has violated [its obligations under ERISA] by adopting and applying the Milliman . . . Guidelines to make medical necessity determinations with respect to ***all*** residential treatment claims," Compl. ¶ 110; *see also id.* ¶¶ 119, 126. These claims determination practices, which affect ***all*** RTC claims, bring the

---

[19] Neither the plain statutory language nor the FAQ on which HCSC relies, Mot. at 20–21, makes the prohibition on discrimination turn on the insurer's coverage determination. To the contrary, the statute says an insurer shall not discriminate "with respect to coverage." 42 U.S.C. § 300gg-5. And the FAQ merely states that the provision applies when "an item or service[] is a covered benefit under the plan." *See* Ctrs. for Medicare and Medicaid Srvs., The Ctr. for Consumer Info. & Ins. Oversight, Affordable Care Act Implementation FAQs - Set 15, available at http://www.cms.gov/CCIIO/Resources/Fact-Sheets-and-FAQs/aca_implementation_faqs15.html.

alleged violations squarely within the purview of § 1109.

HCSC is broadly correct that a suit pursuant to § 1132(a)(2) must benefit "the plan as a whole." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985). However, a class action under (a)(2) need not include all plan participants or beneficiaries. *See, e.g., Rogers v. Baxter Int'l, Inc.*, 417 F. Supp. 2d 974, 981 (N.D. Ill. 2006), *aff'd*, 521 F.3d 702 (7th Cir. 2008) ("Most courts [] have rejected th[e] position [that *Russell* requires relief on behalf of the all plan participants], noting that the Court in [*Russell*] was addressing only the question whether an individual participant could recover under § 502(a)(2), not specifically whether a group of participants could recover.") (collecting cases).[20] Here, Plaintiffs seek broad declaratory and injunctive relief that will inure not just to their benefit, but to the benefit of all members of HCSC-administered plans, who are injured by HCSC's failure to lawfully administer plan benefits consistent with the plan terms and to comply with its fiduciary duties. *See* Compl. at 32–33 (Prayers for Relief 4, 6, 8). But even if Plaintiffs' claims are characterized as only benefitting the subclass of plan members whose RTC benefit claims have been, or would be, wrongfully denied under the Milliman Guidelines, they still readily fit within the scope of § 1132(a)(2).

## III.    Plaintiffs' Claims are Justiciable.

HCSC's sundry challenges to the Amended Complaint's justiciability also fail. HCSC challenges the Segers' standing to assert Counts I and II, disputes the Crafts and Pautsches' standing to assert Counts III through V, and asserts that the Crafts' claims are moot. Mot. at 22–

---

[20] *See also Kuper v. Iovenko*, 66 F.3d 1447, 1453 (6th Cir. 1995) ("We conclude that . . . a subclass of Plan participants may sue for a breach of fiduciary duty . . . . Defendants' argument that a breach must harm the entire plan to give rise to liability under § 1109 would insulate fiduciaries who breach their duty so long as the breach does not harm all of a plan's participants. Such a result clearly would contravene ERISA's imposition of a fiduciary duty that has been characterized as the highest known to law.") (quotation omitted); *Kling v. Fid. Mgmt. Trust Co.*, 270 F. Supp. 2d 121, 126 (D. Mass. 2003) ("*Kling* does sue on behalf of the Plan, and thus meets the requirements of § [11]09 as interpreted by the Supreme Court in *Russell*. That the harm alleged did not affect every single participant does not alter this conclusion.").

21

23. None of these arguments supports dismissal of any Count of Plaintiffs' Amended Complaint.

### A. Even Under HCSC's Reading, Each Count and Prayer for Relief in the Amended Complaint is Justiciable

As a threshold matter, even if HCSC prevailed on each of its justiciability arguments—which it should not—at least one Plaintiff would still have standing to assert each Count and Prayer for Relief in the Amended Complaint. "In a class action suit with multiple claims, at least one named class representative must have standing with respect to each claim." Newberg on Class Actions § 2:5 (5th ed.); *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 807 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 826 (2013) (rejecting defendant's standing challenge where "[o]nly one of the original named plaintiffs" could show injury); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1283 (11th Cir. 2000) (instructing district court to ensure on remand that "at least one of the named class representatives possesses the requisite … standing to bring each of the class's legal claims").[21] Here, HCSC concedes the Pautsches' standing to bring claims under Counts I and II, and the Segers' standing to bring claims under Counts III, IV and V.[22] Mot. at 22–25. This alone suffices to preserve each Count in the Amended Complaint.

### B. The Crafts and Pautschs Have Standing to Assert Counts III–V

Contrary to HCSC's argument, Mot. at 22–23, the Crafts and Pautsches have standing to challenge HCSC's use of the Milliman Guidelines. "[W]ith regard to injunctive relief, it is well-established that '[t]he actual or threatened injury required by Art[icle] III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" *Horvath v.*

---

[21] *See also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007) ("To establish Article III standing in a class action, it is not required that each named plaintiff must have a claim against each named defendant. Rather, for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant . . .") (quotation omitted); *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1215 n.1 (9th Cir. 2008) (same).

[22] Plaintiffs agree that the Segers do not have standing to assert claims under Count I or II because their plan never contained a categorical exclusion of RTC coverage. Because the Crafts and Pautsches do have standing, however, the claims cannot be dismissed.

*Keystone Health Plan E., Inc.*, 333 F.3d 450, 456 (3d Cir. 2003) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). ERISA "gives a member of a plan **standing to sue** '. . . to clarify his rights to future benefits under the terms of the plan.'" *Exbom v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 900 F.2d 1138, 1141 (7th Cir. 1990) (quoting 29 U.S.C. § 1132(a)(1)(B)) (emphasis added).[23] "By its very nature, a claim for clarification of future benefits presumes that the plaintiff is not currently being denied benefits to which he claims he is entitled. Thus, the fact that plaintiffs' benefits have not yet been reduced does not mean that they lack standing to assert this claim." *Bell v. Xerox Corp.*, 52 F. Supp. 3d 498, 505 (W.D.N.Y. 2014).

Every Circuit to confront the issue has held that a beneficiary has standing to clarify her future benefits under an ERISA plan whether or not she can demonstrate that she has personally already suffered, or is likely to suffer, actual harm. *See, e.g., Fin. Institutions Ret. Fund v. Office of Thrift Supervision*, 964 F.2d 142, 148 (2d Cir. 1992) (fact that "the risk to plan assets . . . was remote" did not rob beneficiaries of standing to challenge a fiduciary breach); *Horvath*, 333 F.3d at 456 (3d Cir.) (plan member had standing to enjoin HMO's treatment-rationing incentives for physicians despite being unable to show that she had been denied any treatment as a result); *Larson v. Northrop Corp.*, 21 F.3d 1164, 1171 (D.C. Cir. 1994) ("a plaintiff need not suffer harm . . . before he becomes entitled to bring an action" for breach of fiduciary duties under ERISA).[24]

---

[23] Similarly, at common law the beneficiary of a trust has standing to sue to enjoin fiduciary breaches. *Scanlan v. Eisenberg*, 669 F.3d 838, 846 (7th Cir. 2012); *see also id.* at 847 (holding that a discretionary beneficiary need not "plead facts indicating that the diminution in the trust assets had, or will ever have, a probable adverse impact on discretionary distributions").

[24] HCSC ignores this unanimous authority in favor of a single, inapposite, case. *See* Mot. at 23 (citing *Impress Commc'ns v. Unumprovident Corp.*, 335 F. Supp. 2d 1053 (C.D. Cal. 2003)). *Impress Communications* explicitly approved of "the [Third Circuit's] reasoning in *Horvath* that allows standing based on the statutory rights conferred by ERISA," but explained that it could not help the plaintiffs, who did "not define what they seek as injunctive relief," and in any case "no longer participate[d] in [d]efendants' disability plan," and therefore could not benefit from any clarification of the plan's terms. 335 F. Supp. 2d

But the Crafts and Pautsches **can** show that they are likely to suffer harm due to HCSC's use of the Milliman Guidelines. Jane and Mary remain insureds under HCSC plans and will very likely require residential treatment in the future. *See* Compl. ¶¶ 8, 10, 43, 54. They, along with John, seek prospective relief that ensures that HCSC will evaluate those future RTC claims fairly. Compl. at 32, 33.[25] They have standing under 29 U.S.C. § 1132(a) to do just that.

### C.  The Crafts' Claims Under Counts I and II are Not Moot.

HCSC's argument that Jane Doe's claims are moot  rests on assertions outside the Amended Complaint that cannot be considered on a motion to dismiss. *See, e.g., U.S. ex rel. Batty v. Amerigroup Illinois, Inc.*, 528 F. Supp. 2d 861, 878 (N.D. Ill. 2007).[26] In any event, HCSC ignores most of the Crafts' allegations, which describe a consistent course of conduct over two years, during which Jane repeatedly sought residential treatment and HCSC repeatedly denied coverage based on the plan's exclusion. By the time the Crafts filed this lawsuit, Jane had been hospitalized ten separate times as a result of her mental illnesses. Compl. ¶ 31. Nearly every

---

at 1059–60. HCSC's citation to *Bell v. Keating*, 697 F.3d 445 (7th Cir. 2012), is even more perplexing. *Bell* concerned the standing of "a plaintiff who wishes to engage in conduct arguably protected by the Constitution, but proscribed by a statute," and has no relation whatsoever to ERISA or the scope of standing to vindicate explicit statutory rights. *See id.* at 451. Moreover, the Seventh Circuit concluded that Bell **had** standing. *Id.* at 452.

[25] Plaintiffs also seek reprocessing of RTC claims denied based on the Milliman Guidelines. *See* Compl. at 33. That additional remedy will not benefit the Crafts or Pautsches, whose RTC claims were denied pursuant to the previous wholesale exclusion of sub-acute RTC. That has no effect, however, on their clear standing for declaratory and injunctive relief.

[26] Even if the Court were to consider these extraneous facts, they would not support dismissal.



time, Jane's treating physicians recommended that she be transferred to a long-term residential treatment facility. *Id.* ¶ 32. HCSC, however, consistently denied coverage for RTC because of the exclusion in Jane's health care plan. *Id.* ¶ 33.[27] When Jane was released to inadequate levels of care, she suffered repeated treatment failures, landing her back in the hospital with increasingly severe symptoms. *Id.* ¶¶ 35–43. Jane's inability to obtain adequate care over the course of a two-year period caused a number of injuries to Jane and her family, including Jane's worsened mental health condition, severe physical effects, and inability to attend school regularly. *Id.* ¶ 42.

Nor does the fact that Jane's current plan dropped the categorical exclusion of RTC coverage moot her entitlement to a declaration that such exclusions are illegal. The main thrust of HCSC's arguments on Counts I and II is that the "plain language" of the Parity Act permits such exclusions, a proposition to which HCSC has devoted nearly half of its brief. If the Plaintiffs' claim were dismissed as moot, nothing would stop HCSC from reintroducing the exclusion in the next version of its plans.

## CONCLUSION

For the reasons set forth herein, and for good cause shown, Defendant's motion to dismiss should be denied in its entirety.

Dated: July 10, 2015

Respectfully submitted,

/s/ Caroline E. Reynolds
D. Brian Hufford (*pro hac vice*)

---

[27] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ In any case, Plaintiffs were "required only to provide [HCSC] with fair notice of what [Plaintiffs'] claim is and the grounds upon which it rests." *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 908 (7th Cir. 2005) (quotation omitted).

4984901.4

Jason S. Cowart (*pro hac vice*)
Zuckerman Spaeder LLP
399 Park Avenue, 14th Fl.
New York, NY 10022
212.704.9600

Caroline E. Reynolds (*pro hac vice*)
Zuckerman Spaeder LLP
1800 M Street NW
Washington, DC 20036
202.778.1800

Meiram Bendat (*pro hac vice*)
Psych-Appeal, Inc.
8560 W. Sunset Blvd., Ste. 500
West Hollywood, CA 90069
310.598.3690, ext. 101

George F. Galland, Jr.
Scott A. Entin
Miner, Barnhill & Galland, P.C.
14 W. Erie St.
Chicago, IL 60654
312.571.1170

*Counsel for Plaintiffs and the Putative Class*

26