**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| ELIZABETH CRAFT et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.  14 C 5853 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| HEALTH CARE SERVICE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

On July 30, 2014, Plaintiffs Elizabeth Craft and her daughter, Jane Doe, filed a class action lawsuit on behalf of themselves and similarly-situated plaintiffs against Defendant Health Care Service Corporation ("HCSC") for violations of ERISA based on the exclusion of residential treatment for mental illness in its health benefit plan of coverage. HCSC filed a motion to dismiss Plaintiffs' Complaint, which this Court denied on March 25, 2015. Following the Court's denial of that motion, Plaintiffs filed their First Amended Complaint on May 15, 2015. The First Amended Complaint adds four named plaintiffs and, in addition to challenging the blanket exclusion of residential treatment for mental illness, also challenges the HCSC's adoption and application of the Milliman Guidelines in making "medical necessity" determinations regarding residential treatment of mental illness where such treatment is covered by the relevant group health plans. HCSC moves once again for dismissal. (Dkt. No. 70). HCSC also moves to sever the claims of Plaintiffs Landis Seger and her son, John Doe. (Dkt. No. 73). For the following reasons, HCSC's Motion to Dismiss is granted in part and denied in part. Its Motion to Sever is granted.

1

# BACKGROUND[1]

HCSC issues and administers health care plans in five states through five divisions: Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Montana, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Texas. (First Am. Compl. at ¶ 13). Until recently, many of those plans explicitly excluded all coverage for the treatment of mental illness in residential treatment facilities. (*Id*. ¶ 2). These blanket exclusions were the core of Plaintiffs' original complaint in this case. Although HCSC has started covering residential treatment for mental illness for group health plans renewed on or after July 1, 2014, Plaintiffs allege that it "continues to restrict the scope of its coverage improperly through the adoption and application of criteria for determining the medical necessity of residential treatment that are inconsistent with generally accepted standards of medical practice and/or more restrictive than the criteria it applies when administering claims for medical and surgical benefits." (*Id*. ¶ 4). Plaintiffs' First Amended Complaint adds a challenge to HCSC's adoption and application of criteria for determining "medical necessity" and brings factual allegations specific to six named Plaintiffs.

Plaintiff Elizabeth Craft and her daughter, Plaintiff Jane Doe, reside in Parker, Colorado. (*Id*. ¶¶ 7-8). Jane Doe is seventeen years old and is covered under her mother's insurance plan, which is provided through her mother's employment with Trustwave Holdings, Inc., a PPO family plan insured and administered by Blue Cross and Blue Shield of Illinois ("BCBSIL") (*Id*. ¶ 8). The current plan is a calendar year plan that began January 1, 2015. Jane has been diagnosed with post-traumatic stress disorder; recurrent, severe major depressive disorder; and

---

[1] HCSC brings its motion to dismiss under both Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure. With respect to both Rules, the Court—as it must—construes the allegations in the complaint "in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the nonmoving party's] favor." *See Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999).

anorexia nervosa. (*Id.* ¶ 30). The 2014 Trustwave Plan, which is fully insured by HCSC, operating as Blue Cross and Blue Shield of Illinois, included each of these disorders within its definition of "Serious Mental Illness." (*Id.* ¶¶ 14, 30). On July 11, 2014, Plaintiff Craft sought preauthorization for residential treatment center ("RTC") services for Jane Doe. (*Id.* ¶ 37). HSCS denied the request based on the RTC exclusion in the 2014 Trustwave Plan. (*Id.* ¶ 37). Plaintiff Craft field an appeal of that denial arguing that the blanket exclusion violated the Parity Act. (*Id.*) Plaintiffs do not allege that Jane Doe was denied RTC benefits based on the application of improper medical necessity criteria.

Jane Doe's current Trustwave Plan is a calendar-year plan with a start date of January 1, 2015. Jane Doe claims that, although HCSC "purports to have lifted its exclusion on residential treatment for mental illness from the 2015 Trustwave Plan, [she] has reason to believe that HCSC will continue to deny her coverage because of its application of the overly restrictive medical necessity criterial." (*Id.* ¶ 44).

Plaintiff Bryan Pautsch resides in Cedarburg, Wisconsin. (*Id.* ¶ 9). His daughter, Mary Doe, is sixteen years old and is covered under her father's insurance plan, which is provided through his employment with Sikich, LLP. (*Id.* ¶ 10). Mary Doe has been diagnosed with major depressive disorder, generalized anxiety disorder, social anxiety disorder, and attention-deficit disorder. (*Id.* ¶ 46). The 2014 Sikich Plan, which is self-funded, but administered by HCSC, operating as Blue Cross and Blue Shield of Illinois, includes major depressive disorder within its definition of "Serious Mental Illness" and the Sikich Plan also covers Mary's "comorbid psychiatric conditions." (*Id.* ¶¶ 15, 47). Mary Doe was denied RTC services in October 2014 based on the blanket exclusion in the 2014 Sikich Plan. (*Id.* ¶¶ 49-52). Plaintiffs do not allege

that Mary Doe was denied RTC benefits based on the application of improper medical necessity criteria and makes no specific allegations regarding a 2015 Sikich Plan.

Plaintiff Landis Seger and her son, John Doe, reside in Evansville, Indiana. (*Id*. ¶ 11-12). John Doe is fifteen years old and is covered under his mother's insurance plan, which is provided through her employment with HealthSouth Corporation. (*Id*. ¶ 12). John Doe has been diagnosed with post-traumatic stress disorder and reactive attachment disorder. (*Id*. ¶ 56). The 2014 HealthSouth Plan, which is self-funded, but administered by HCSC, operating as Blue Cross and Blue Shield of Texas, covers John Doe's conditions. (*Id*. ¶¶ 16, 57). In March 2014, John Doe was admitted to a residential treatment center. (*Id*. ¶ 59). He was initially authorized to receive ten days of treatment, but BCBSTX denied approval for an additional seven days after applying medical necessity criteria from the 16th Edition Milliman Care Guidelines' Medical Necessity Criteria ("Milliman Guidelines") for Posttraumatic Stress Disorder-Residential Care. (*Id*. ¶¶ 61-62). Plaintiffs do not allege that John Doe was denied RTC benefits based on an exclusion of coverage.

HCSC is the designated claims administrator for the Trustwave, Sikich, and HealthSouth plans. (*Id*. ¶ 13(a-c)). The three plans have delegated all coverage decisions to HCSC and HCSC exercises authority and control with respect to the administration of the plans. (*Id*. ¶ 13(a-c)). Plaintiffs do not allege that any of their 2015 plans exclude RTCs from coverage or that any of them has had a claim for RTC benefits in 2015 denied. The 2014 Trustwave and Sikich Plans did, however, exclude RTC benefits from coverage.

## DISCUSSION

HCSC moves to dismiss Counts I-V of Plaintiffs' First Amended Complaint under Rule 12(b)(6) for failing to state a claim upon which relief may be granted. HCSC also moves to

dismiss Counts I and II with respect to the Segers and Counts III-V with respect to the Crafts and Pautsches on the ground that they lack standing to assert these respective claims. HCSC also moves to dismiss Counts and I and II as moot with respect to the Crafts. Apart from its motion to dismiss, HCSC has filed a motion to sever the claims of Plaintiffs Landis Seger and her son, John Doe. The Court address the justiciability issues first, followed by the sufficiency of the First Amended Complaint under Rule 12(b)(6), and lastly addresses the motion to sever. The Motion to Dismiss is granted in part and denied in part. The Motion to Sever is granted.

## I. JUSTICIABILITY

HCSC challenges the mootness of certain issues and the standing of particular Plaintiffs with respect to certain claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Under Rule 12(b)(1), the Court must dismiss any action over which it lacks jurisdiction. Fed. R. Civ. P. 12(b)(1). In evaluating a motion brought under Rule 12(b)(1), the Court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the non-moving party. *See Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993). Contrary to Plaintiffs' suggestion in their response brief, *see* Dkt. No. 80, 30, whether a party "concedes" standing is irrelevant to the threshold issues of justiciability that the Court is charged to consider regardless of whether such issues are raised or "conceded" by the parties. *See Wernsing v. Thompson*, 423 F.3d 732, 742-43 (7th Cir. 2005) (internal quotation marks omitted) ("[N]ot only may the federal courts police subject matter jurisdiction *sua sponte*, they must.").

### A. Standing

"Article III of the Constitution limits federal judicial power to certain 'cases' and 'controversies,' and the 'irreducible constitutional minimum' of standing contains three elements." *Silha v. ACT, Inc.*, 807 F.3d 169, 172-73 (7th Cir. 2015) (quoting *Lujan v. Defs. of*

*Wildlife*, 504 U.S. 555, 559-60 (1992) (internal citations and quotation marks omitted)). To establish Article III standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Silha*, 807 F.3d at 172-73 (internal quotation marks omitted). "The plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing the required elements of standing." *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 691 (7th Cir. 2015) (internal quotation marks omitted).

The Crafts and Pautsches lack standing to assert Counts III-V against HCSC, which seek redress under ERISA based on HCSC's allegedly improper application of medical necessity criteria, because they have failed to adequately allege an injury in fact. The Crafts and Pautsches claim that Jane and Mary Doe suffered substantial injuries after being denied residential mental health treatment under the blanket exclusions in their respective plans. These injuries and these claims, however, are wholly unrelated to the application of the "medical necessity" criteria complained of in Counts III-V.

With respect to the Crafts, the First Amended Complaint states that, although HCSC "purports to have lifted its exclusion on residential treatment for mental illness from the 2015 Trustwave Plan, [Jane Doe] has reason to believe that HCSC will continue to deny her coverage because of its application of the overly restrictive medical necessity criteria." (First Am. Compl. at ¶ 44). This speculation as to whether HCSC will provide future benefits is insufficient to plead an injury for purposes of Article III standing. *See Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 984 (7th Cir. 1999) (Wood, J., dissenting) ("In order to

6

bring an ERISA suit in the district court, the plaintiff must have a claim that the plan improperly denied some benefit to which she was entitled. 29 U.S.C. § 1132(a)(1)(B). The district court would thus never be in the position of ordering a preliminary determination by the administrator of the plaintiff's eligibility for benefits, because such a plaintiff would be out of court either on ripeness grounds or for lack of statutory standing to sue (since she had not yet been denied a benefit—properly or improperly)."); *see also, e.g., Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450 (3d Cir. 2003) (finding no standing absent showing of individual loss, such as diminished value of coverage received by member herself; proposed showing that member's employer, which paid for membership, had overpaid for healthcare received was insufficient); *Impress Commc'ns v. Unumprovident Corp.*, 335 F. Supp. 2d 1053 (C.D. Cal. 2003) (finding no injury for purposes of Article III standing where plan participants could not allege that they had actually received less coverage than contracted for; participants had never sought any benefits under plan; and their allegation that insurers' administration of plan might result in denial of future benefits was too speculative to involve injury). The Court also notes that the relevant new plan language appears to decrease rather than increase the risk of Plaintiff being denied benefits, which further cautions against the finding of an injury. *Compare, e.g., Johnson v. Allsteel, Inc.*, 259 F.3d 885, 888 (7th Cir. 2001) (finding that increased risk that ERISA beneficiary would not be covered due to increase in administrator's discretion was injury in fact for purposes of Article III standing).

The allegations are similarly weak with respect to the Pautsches' standing. With respect to Mary Doe, there is simply no allegation regarding the medical necessity criteria. Plaintiffs do not even include speculation that Mary Doe will be denied benefits under some new plan and, in fact, there is no allegation as to what the Pautsches' current plan currently provides (presumably,

it is some 2015 version of the Sikich Plan that eliminates the blanket exclusion of years past, but no such plan was mentioned in the First Amended Complaint or otherwise provided to this Court). There is no allegation that Mary Doe has been denied coverage based on the application of the "medical necessity" criteria and there is no sufficiently alleged injury stemming from such unpled denial. *See, e.g., Mertens v. Hewitt Associates*, 508 U.S. 248, 262 (1993) (noting that the existing ERISA enforcement scheme is the result of "an enormously complex and detailed statute that resolved innumerable disputes between powerful competing interests—not all in favor of potential plaintiffs."); *Pegram v. Herdrich*, 530 U.S. 211, 234 (2000) (allowing "wholesale attacks on existing HMOs solely because of their structure, untethered to claims of concrete harm" would be contrary to Congressional policy). Counts III-V are dismissed with respect to the Crafts and Pautsches for lack of standing. Counts I and II are dismissed with respect to the Segers for lack of standing.[2]

### B. Mootness

With respect to mootness, HCSC argues that the Craft Plaintiffs' claims for injunctive relief and allegedly denied past benefits under Counts I and II must be dismissed. The Court "may not give opinions upon moot questions or abstract propositions." *Zessar v. Smith*, 536 F.3d 788, 793 (7th Cir. 2008). "Federal courts lack subject matter jurisdiction when a case becomes moot." *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011). "While an 'entire claim is not mooted simply because the specific relief it sought has been rendered moot, [to avoid dismissal based on mootness, the party seeking relief] must ... demonstrate that the court's adjudication would affect it in some way.'" *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011). (quoting *Cornucopia Inst. v. U.S. Dep't of Agric.*, 560 F.3d 673, 676 (7th

---

[2] The Seger Plaintiffs appropriately concede they do not have standing to assert Counts I and II because their HealthSouth Plan never contained a categorical exclusion of RTC coverage. (Dkt. No. 80, 30 n.22).

Cir.2009)); *see also United States v. Segal*, 432 F.3d 767, 773 (7th Cir. 2005) ("When making a mootness determination, we consider ... whether it is still possible to fashion some form of meaningful relief to the [plaintiff] in the event he prevails on the merits." (internal quotation marks and citations omitted)). The Court must consider mootness issues *sua sponte* and, to the extent it does so in the following discussion, it does so appropriately under the law. *See Wernsing v. Thompson*, 423 F.3d 732, 745 (7th Cir. 2005) (internal quotation marks and citation omitted) ("Mootness, like standing, is always a threshold jurisdictional question that we must address even when it is not raised by the parties.").

Count I is not moot. In Count I, Plaintiffs seek a declaratory judgment that blanket exclusions are unlawful and they seek recovery of benefit payments improperly denied pursuant to these blanket exclusions. Although a claim for declaratory relief would typically be moot in a case like this where the disputed policy provision has already been removed from the subject policies, it is not moot as a predicate to the damages award that is also sought. *See Crue v. Aiken*, 370 F.3d 668, 677–78 (7th Cir. 2004) ("When a claim for injunctive relief is barred but a claim for damages remains, a declaratory judgment as a predicate to a damages award can survive."); *see also, e.g., Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 596 (7th Cir. 2006) (plaintiff's case not moot where, in addition to injunctive relief that was no longer necessary, he was seeking monetary damages); *Wernsing v. Thompson*, 423 F.3d 732, 745 (7th Cir. 2005) (claims for money damages not moot even though underlying misconduct which caused the injury had ended); *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (holding that, although injunctive relief was moot, a case or controversy still existed because the plaintiff requested declaratory relief and damages).

9

Here, Plaintiffs' claim for damages survives because the Crafts allege not only the denial of her most recent treatment, but a series of denials, and then the collateral damage to the family's finances. The Crafts may proceed on their claims for money damages and the claim for declaratory relief survives as a predicate to that potential award.

Lastly, the Court notes that any potential deficiency with Count II is unrelated to mootness. HCSC asks the Court to find that the "Crafts' claim for an injunction in Count I is moot because the Trustwave Plan no longer contains an RTC exclusion." Plaintiffs do not seek injunctive relief in Count I; and, more importantly, the injunctive relief Plaintiffs seek (in Count II) is not that HCSC stop including such a blanket exclusion (this is the declaratory relief already discussed, *supra*); rather, Plaintiffs ask the Court to enter an injunction "requiring Defendant to re-process all claims for residential treatment of mental illness that it denied within the statute of limitations on the basis of an exclusion of coverage for residential treatment of mental illness that were inconsistent with ERISA and the Parity Act." The problem with Plaintiffs' request for injunctive relief is not that it is moot; the problem is that—as discussed in the following section—it is not an appropriate form of equitable relief under ERISA. For the reasons stated, the Court denies HCSC's motion to dismiss Counts I and II as moot.

### II. 12(b)(6) MOTION TO DISMISS

The Court now turns to HCSC's motion to dismiss Counts I-V brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In evaluating a Rule 12(b)(6) motion to dismiss, the Court takes all facts alleged in the complaint as true and draws all reasonable inferences from those facts in the plaintiff's favor. *See Vinrich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right

to relief above the speculative level." *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 914 (7th Cir. 2015) (citations and internal quotation marks omitted). For the following reasons, HCSC's motion is granted in part and denied in part.

### A. Whether Count II is duplicative of Count I

Plaintiffs' claim for equitable relief under Section 502(a)(1)(B) of ERISA (29 U.S.C. § 1132(a)(1)(B)) in Count I renders their claim under Section 502(a)(3) of ERISA (29 U.S.C. § 1132 (a)(3)) in Count II duplicative in this case. In *Varity Corp. v. Howe*, 516 U.S. 489, the Court described Section 502(a)(3) as a "catchall ... [that] offer[s] appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). The Court in *Varity* elaborated by asserting that relief under Section 502(a)(3) is not "appropriate" where Section 502 "elsewhere provide[s] adequate relief for a beneficiary's injury." *Id*. at 515.

The Seventh Circuit has yet to decide whether a claim for benefits under Section 502(a)(1)(B) bars a Section 502(a)(3) claim for equitable relief under *Varity*. The Seventh Circuit has, however, recognized that "a majority of the circuits" have interpreted *Varity* to mean that "if relief is available to a plan participant under subsection (a)(1)(B), then that relief is *un* available under subsection (a)(3)." *See Mondry v. American Family Mut. Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009) (internal citations omitted). This statement does not necessarily foreclose a plaintiff from bringing claims under both Sections (a)(1)(B) and (a)(3); indeed, both claims may well survive the motion to dismiss stage in appropriate cases. *See, e.g., N.Y. St. Psychiatric Ass'n, Inc. v. UnitedHealth Group*, 798 F.3d 125, 134 (2nd Cir. 2015) (reversing district court's dismissal of plaintiff's claim under subsection (a)(1)(B) where "it [was] too early to tell" whether monetary

benefits under a prevailing claim under subsection 502(a)(1)(B) would provide a sufficient remedy).

However, where—as here—it is plain from the plaintiff's complaint that his claims under these sections are a mere repackaging of each other, the claim under Section (a)(3) is appropriately dismissed. *See, e.g., Hakim v. Accenture United States Pension Plan*, 656 F. Supp. 2d 801, 810 (N.D. Ill. 2009) (quoting *Rice ex rel. Rice v. Humana Ins. Co.*, No. 07 C 1715, 2007 WL 1655285, at \*4 (N.D. Ill. June 4, 2007)) (several other "judges of this court [that] have interpreted [*Varity*] to mean that a claim for equitable relief under § 1132(a)(3) must be dismissed if relief may be obtained under § 1132(a)(1)(B)."); *citing also, Heroux v. Humana Ins. Co.*, No. 04 C 304, 2005 WL 1377854, at \*4 (N.D. Ill. June 8, 2005) (at motion to dismiss stage, stating that a § 1132(a)(3) claim "would be foreclosed by the relief [sought] \* \* \* under § 1132(a)(1)(B)"); *Jurgovan v. ITI Enter's*, No. 03 C 4627, 2004 WL 1427115, at \*4 (N.D. Ill. June 23, 2004) (granting motion to dismiss ERISA § 502(a)(3) claim under *Varity* where plaintiff had a claim for benefits under § 502(a)(1)(B))); *Erikson v. Ungaretti & Harris–Exclusive Provider Plan*, No. 03 C 5466, 2003 WL 22836462, at \*3 (N.D. Ill. Nov. 24, 2003) (granting motion to dismiss § 502(a)(3) claim that rested "on the exact same basis as [plaintiff's] claims for denial of benefits" under § 502(a)(1)(B)); *Clark v. Hewitt Assoc's, LLC*, 294 F. Supp. 2d 946, 950 (N.D. Ill. 2003) (holding that a plaintiff who has the right to bring a claim under ERISA § 502(a)(1)(B), regardless of its merits, may not seek relief under ERISA § 502(a)(3)).

In their claim under Section 502(a)(1)(B), Plaintiffs are seeking money benefits owed and a declaratory judgment that blanket exclusions of coverage for residential treatment for mental illness are void under the Parity Act. Their claim under Section 502(a)(3)—repackaged as a claim seeking an injunction requiring Defendants to reprocess all claims for RTC denied within

the statute of limitations—seeks essentially the same relief and is based on the same underlying conduct. *See Mondry*, 557 F.3d at 804-805 (noting that Section 1132(a)(3) authorizes only "appropriate" equitable relief); *see also, e.g., Chorosevic v. MetLife Choices*, No. 4:05-CV-2394 CAS, 2009 WL 723357, at *11 (E.D. Mo. Mar. 17, 2009) (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) (finding claim for reprocessing of benefits is "essentially a request for an injunction to enforce a contractual obligation to pay money past die. This is precisely what the Supreme Court disallowed under § 1132(a)(3) in Great–West."); *Fairview Health Serv's v. The Ellerbe Becket Co. Employee Med. Plan*, Civil File No. 06-2585 (MJD/AJB), 2007 WL 978089, at ** 6–7 (D. Minn. Mar, 28, 2007) (dismissing claim for reprocessing of benefits because such relief was not appropriate under this statute).

Plaintiffs' additional prayer for a surcharge in Count II does nothing to save their claims under Section 502(a)(3). Yes, a district court may determine that a surcharge is an appropriate equitable remedy under the particular circumstances of a case brought pursuant to Section 502(a)(3). *See Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 882-83 (7th Cir. 2013) (citing *CIGNA Corp. v. Amara*, 563 U.S. 421, 444 (2011)). But, that does not render such relief routinely necessary or appropriate—especially where the same basis for seeking a surcharge also gives rise to Plaintiffs' claims under Section 502(a)(1)(B). Plaintiffs' underlying claims in Counts I and II are the same. The equitable claims in Count II are a merely a "repackaged denial of benefits claims." *See Crummett v. Metropolitan Life Ins. Co.*, Civil Action No. 06-01450 (HHK), 2007 WL 2071704, at *2 (D.D.C. July 16, 2007) (internal quotation marks and citation omitted). Because Count II seeks nothing that Plaintiff does not separately seek under Count I, Count II is dismissed.

For these same reasons, the Seger Plaintiffs' claims for relief under Section 1132(a)(3) in Counts III and IV are dismissed as duplicative of the identical claims brought under Section 1132(a)(1)(B). In Counts III and IV, the claims for relief under both sections are identical; the Seger Plaintiffs' do not seek relief pursuant to Section 1132(a)(3) that would be unavailable under Section 1132(a)(1)(B) and there is no reason for Plaintiffs to think they will not be fully compensated if they prevail under the latter section.

### B. Whether Count I States a Claim for Relief Under the Statutes and IFRs

HCSC moves to dismiss Count I on the ground that blanket RTC exclusions in the subject policies did not violate the Parity Act or the Interim Final Rules ("IFRS"). Preliminarily, the Court notes that HCSC is not barred from bringing this argument by this Court's prior order. (*See* Dkt. No. 46). Plaintiffs argue that HCSC "already failed once to convince the Court that a categorical exclusion of RTC coverage is not a 'treatment limitation' within the meaning of the Parity Act." (*See* Dkt. No. 80, 12). Whether the Court was previously "convinced" that a categorical exclusion of RTC coverage did not violate the Parity Act is irrelevant; the Court did not rule on the issue because it was not properly before it at that time. Because this argument was not developed by HCSC in its original motion to dismiss, the argument was deemed waived and the Court expressly refused to rule on the scope of the statute. (Dkt. No. 46, 8). A Defendant may raise new 12(b)(6) arguments in a successive motion to dismiss and that is precisely what HCSC has done in this case. *See Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012); *see also Chasensky v. Walker*, 740 F.3d 1088, 1094 (7th Cir. 2014) (internal quotation marks and citations omitted) ("When a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward ... [b]ecause a plaintiff's

new complaint wipes away prior pleadings, the amended complaint opens the door for defendants to raise new and previously unmentioned affirmative defenses." )

The Court, therefore, now turns to the merits of HCSC's argument. The issue is whether Plaintiffs' allegations regarding the residential treatment exclusion in the subject plans are sufficient to state a cause of action. HCSC argues that because the Parity Act did not prohibit RTC exclusions at the time HCSC denied the Craft and Pautsch Plaintiffs' request to preauthorize RTC services, Plaintiffs' claims that the exclusions violated the Parity Act must be dismissed.

As outlined in detail in this Court's order from March 3, 2015 ("Order"),[3] Congress passed the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act in 2008 ("the Parity Act"). *See* Parity Act, PL 110-343, 122 Stat 3765 (codified at 29 U.S.C. § 1185(a). The Parity Act extended the parity requirement in the Mental Health Parity Act of 1996 ("MHPA") that required group health plans to impose the same aggregate lifetime and annual dollar limits for mental health benefits that such plans impose on medical/surgical benefits. *See* MHPA, Pub. L. No. 104–204, 110 Stat 2874 (current version at 29 U.S.C. § 1185a). Specifically, the Parity Act extended to: (1) "financial requirements" (*e.g.*, copayments and deductibles); and (2) "treatment limitations." 29 U.S.C. § 1185a(a)(3)(A)(i)-(ii), (B)(i). "The term 'treatment limitation' includes limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment." *Id*. at § 1185a(a)(3)(B)(iii).

The three Departments responsible for administering the Parity Act subsequently published interim final rules ("IFRs"). *See* Preamble, IFRs Under the Parity Act, 75 Fed. Reg. 5410-01, 5419 (Feb. 2, 2010). The IFRs explicitly applied the term "treatment limitations" to

---

[3] The Court adopts Section I of the Discussion section from its ruling on March 25, 20015 denying HCSC's initial motion to dismiss, which provides additional background regarding the Parity Act. (Dkt. No. 46).

both "quantitative" and "nonquantitative" limitations. 29 C.F.R. § 2590.712 (amended Jan. 13, 2014). The preamble to the IFRs stated, however, that the IFRs did not address what some commentators had called the "scope of services" or "continuum of care" issue. *See* Preamble, IFRs Under the Parity Act, 75 Fed. Reg. at 5419 (Feb. 2, 2010). The Departments invited comments regarding the dispute over the issue without resolving it:

> The Departments recognize that not all treatments or treatment settings for mental health conditions or substance use disorders correspond to those for medical/surgical conditions. The Departments also recognize that [the Parity Act] prohibits plans and issuers from imposing treatment limitations on mental health and substance use disorder benefits that are more restrictive than those applied to medical/surgical benefits. These regulations do not address the scope of services issue. The Departments invite comments on whether and to what extent [the Parity Act] addresses the scope of services or continuum of care provided by a group health plan or health insurance coverage.

*Id*. at 5416-17. The Departments highlighted, however, that "treatment limitations" in the Parity Act included both quantitative and nonquantitative limitations:

> Plans impose a variety of limits affecting the scope or duration of benefits under the plan that are note expressed numerically. Nonetheless, such nonquantitative provisions are also treatment limitations affecting the scope or duration of benefits under the plan….Paragraph (c)(4) of these regulations generally prohibits the imposition of any nonquantitative treatment limitation to mental health…benefits unless certain requirements are met.

*Id*. at 5416. For most plans, the IFRs became effective for the plan year beginning on or after July 1, 2010. 29 C.F.R. § 2590.712(i)(1).

On November 13, 2013, the Departments published final regulations applicable to plan years beginning on or after July 1, 2014. *See Preamble, Final Rules Under the Parity Act*, 78 Fed. Reg. 68240 (Nov. 13, 2013); 29 C.F.R. § 2590.712(i). HCSC denied Craft's request to preauthorize RTC treatment in the plan year beginning January 1, 2014. (*See* FAC ¶ 37; Dkt. No. 32, Ex. 1, Trustwave Plan, Certificate Rider ("Effective Date: 01/01/2014").) HCSC also denied

Pautsch's request to preauthorize RTC treatment in the plan year beginning January 1, 2014. (*See* FAC ¶ 51; Dkt. No. 71, Ex. 2, Sikich Plan ("Effective Date: 01/01/2014").)

Under *Chevron*, the Court must undertake a two-step inquiry in evaluating a statute that is administered by an agency. "First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Rush University Medical Center v. Burwell*, 763 F.3d 754, 758-59 (7th Cir. 2014) (quoting *U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984)). If the language is clear and unambiguous, the inquiry ends there. "If not, then Congress has left the administrative agency with discretion to resolve a statutory ambiguity, so at step two, we require only that the agency's interpretation be reasonable." *Coyomani-Cielo v. Holder*, 758 F.3d 908, 912 (7th Cir. 2014) (internal quotation marks and citations omitted).

The interpretive issue in this case is whether the term "treatment limitation," as used in the Parity Act, includes RTC exclusions. (*See* Dkt. No. 71, 9). Turning to the first step of the *Chevron* analysis, the Court must "give effect to the unambiguously expressed intent of Congress" if the "statute speaks clearly to the precise question at issue." *Barnhart v. Walton*, 535 U.S. 212, 218 (2002) (internal quotation marks and citation omitted). HCSC argues that the plain language of the Parity Act does not bar the RTC exclusions and that, on the contrary, it only prohibits quantitative limitations. Such a reading, however, is belied by both the plain language of the statute and ordinary tools of statutory interpretation. *See Brumfield v. City of Chicago*, 735 F.3d 619, 628 (7th Cir. 2013) (applying cardinal principles of statutory interpretation in first step of *Chevron* analysis) (citing *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666 (2007) ("In making the threshold determination under *Chevron*, a reviewing court should not

confine itself to examining a particular statutory provision in isolation. Rather, the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (alteration marks, citations, and internal quotation marks omitted))).

The Parity Act defines "[t]he term 'treatment limitation' [to include] limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment." 29 U.S.C. § 1185a(a)(3)(B)(iii). The phrase "other similar limits on the scope" of treatment plainly includes nonquantitative limitations.[4] *See, e.g., A.F. ex rel. Legaard v. Providence Health Plan*, 35 F. Supp. 3d 1298, 1315 (D. Ore. 2014) (finding the "plain and ordinary meaning of 'treatment limitation' includes and encompasses" nonquantitative limitation on treatment of plan members with developmental disabilities). Whether "other similar limits" specifically extends to "facility type" or "location of services," however, is ambiguous.

A blanket ban on residential treatment for mental illness may, as the Court alluded to in its previous order, be quite "similar" to the sort of quantitative limitations delineated by the statute. For example, "[t]he practical effect of the RTC exclusion is that Jane Doe receives fewer hours (or days) of coverage for medically necessary nursing care than, for example, an elderly person would receive to rehabilitate a broken hip." (*See* Dkt. No. 46, 9). On the other hand, a

---

[4] The Court declines HCSC's invitation to rely on the canons of *noscitur a sociis* and *ejusdem generis* in this case. First, the list of treatment limitations clearly includes nonquantitative limitations. Moreover, and more important to the issue at hand, these canons do nothing to clarify whether the list includes the specific type of limitations at issue here: namely, RTC exclusions. The Court will not pick and choose canons of interpretation to clarify ambiguity where the statute was obviously left to be administered by not just one, but three Departments. *See City of Arlington, Tex. v. F.C.C.*, 133 S. Ct. 1863, 1868 (2013) (internal quotation marks and citations omitted) ("*Chevron* is rooted in a background presumption of congressional intent: namely, that Congress, when it left ambiguity in a statute administered by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows."); *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 227 (2008) ("In any event, we do not woodenly apply limiting principles every time Congress includes a specific example along with a general phrase."); *Mich. Citizens for an Indep. Press v. Thornburgh*, 868 F.2d 1285, 1292 (D.C. Cir. 1989) (*Chevron* "implicitly precludes courts picking and choosing among various canons of statutory construction to reject reasonable agency interpretations of ambiguous statutes.").

broken hip is a wholly different ailment than an illness of the mind and the Court dares not venture into comparing the two when another body has already been charged with that most delicate and difficult task. Therefore, "[i]n light of the foregoing analysis—which suggests some confusion, potential contradictions," this Court cannot say that the subject language of the Parity Act is "clear" at *Chevron's* first step. *Coyomani-Cielo*, 758 F.3d at 912. The Court need not delve into legislative history at this juncture and, instead, turns to *Chevron* step two. *See id.* at 914 (internal quotation marks and citations omitted) (7th Cir. 2012) ("In this Circuit, 'we seem to lean toward reserving consideration of legislative history ... until the second *Chevron* step.' ")

At step two, "*Chevron* directs courts to accept an agency's reasonable resolution of an ambiguity in a statute that the agency administers." *Michigan v. E.P.A.*, 135 S. Ct. 2699, 2707 (2015). Under this standard, agencies "must operate within the bounds of reasonable interpretation." *Utility Air Regulatory Group v. EPA*, 134 S. Ct. 2427, 2442, (2014) (internal quotation marks omitted). At this step, the parties agree that the IFRs are entitled to deference; that the IFRs expressly state that the Parity Act applies to both quantitative and nonquantitative limitations; and that the IFRs do not address the continuum of care problem. HCSC insists that this failure to address the specific problem leaves open the possibility that coverage plans may exclude certain benefits, *see S.S. v. Microsoft Corp. Welfare Plan*, No. 2:14-cv-00351, Order at 14 (W.D. Wash. Feb. 11, 2015); Plaintiffs argue that the Departments' refusal to interpret a particular aspect of the statute is not itself an interpretation of the statutory language.

The Court stands by its previous order and finds it implausible that the Departments' decision not to address the continuum of care issues in the IFRs was somehow an authorization for issuers to enforce treatment-setting limitations. (*See* Dkt. No. 46, 13-14). Such a reading of the IFRs defies both the statute itself and the related regulations, which explicitly apply the

Parity Act to both quantitative and nonquantitative limitations. *See* 45 C.F.R. § 146.136(a); 29 C.F.R. § 2590.712(a); *see also* Interim Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Policy and Addiction Equity Act of 2008, 75 Fed.Reg. 5410–01, 5413 (Feb. 2, 2010) ("The statute describes the term as including limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment, but it is not limited to such types of limits."). The RTC exclusion prevents beneficiaries like Jane Doe from receiving 24-hour supervision and care in a non-hospital setting. There is no corresponding limitation on the treatment of medical conditions. *Cf.* 29 U.S.C. § 1185a(a)(3)(A)(ii) (a plan must not impose treatment limitations on mental-health benefits that are not imposed on medical/surgical benefits). The term "treatment limitations" is not limited to quantitative limitations, (*see supra*), and the Plaintiffs have therefore stated a claim for relief under the Parity Act.

### C. Whether the Plaintiffs Have Stated a Claim for Relief Under § 1132(a)(2) in Counts III and IV

Section 502(a)(2) allows a participant to bring a civil action for "appropriate relief" under Section 409 of ERISA. 29 U.S.C. § 1132(a)(2). Section 409 of ERISA provides that any plan fiduciary who breaches his fiduciary duties "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach[.]" 29 U.S.C. § 1109(a). In accordance with this language, a loss to the plan is a necessary element of any breach of fiduciary duty claim. *See Sharp Elecs. Corp. v. Metro. Life ins. Co.*, 578 F.3d 505, 512 (2009) (noting that to survive a motion to dismiss, Plaintiff must allege, in part, "a cognizable loss to the plan flowing from [the] breach" of fiduciary duty); *Mass. Mut. Ins. v. Russell*, 473 U.S. 134, 142 (1985) ("A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily

concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary.").

In Counts III and IV, Plaintiffs allege that "Plaintiffs and members of the Class have been harmed by HCSC's breaches of fiduciary dut[y]" in denying them insurance benefits based on application of the overly-restrictive Milliman Guidelines. (First Am. Compl. at ¶¶ 112, 120). Plaintiffs do not, however, allege their benefit plan was harmed in any way, nor do they seek damages on behalf of the plan. On the contrary, Plaintiffs' claim that HCSC applied over-restrictive guidelines would have presumably resulted in the subject plans paying *less* in benefits.

Plaintiffs insist they "seek broad declaratory and injunctive relief that will inure not just to their benefit, but to the benefit of all members of HCSC-administered plans, who are injured by HCSC's failure to lawfully administer plan benefits consistent with the plan terms and to comply with its fiduciary duties. See Compl. at 32– 33 (Prayers for Relief 4, 6, 8)." While true that "a participant in a defined contribution plan may bring a § 502(a)(2) action for breach of fiduciary duty as to an individual account," the remedy in such an action "is for the fiduciary to 'make good' the loss to the plan." *See Peabody v. Davis*, 636 F.3d 368, 373 (7th Cir. 2011). Here, Plaintiffs have failed to allege a loss to the plan and their claims under § 502(a)(2) in Counts III and IV are dismissed. *See, e.g., Ehrman v. Standard Ins. Co.*, No. C06-05454 MJJ, 2007 WL 1288465, at *2 (N.D. Cal. May 2, 2007) (dismissing breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(2) premised on defendants' underpayment of benefits to individual participants in the Plan).

### D. Whether Count IV States a Claim for Relief Under the Parity Act

Under the Parity Act, group health plans must apply financial and treatment limitations to mental heal or substance abuse disorders that are "no more restrictive than the predominant

[financial/treatment] limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage)." 29 U.S.C. § 1185a(a)(3). HCSC argues Plaintiffs have failed to plead a cause of action under this provision because they failed to allege "treatment limitations on medical/surgical benefits which, when compared to mental health benefits, demonstrate disparity." (*See* Dkt. No. 71, 19). In their First Amended Complaint, Plaintiffs allege that the:

> Milliman . . . Guidelines . . . are inconsistent with generally accepted standards of care in three key respects. First, [they] require a patient to demonstrate that treatment is "not feasible at a lower level of care." Generally accepted standards of care, in contrast, err on the side of caution and call for residential treatment "unless there is a clear and compelling rationale" to place an individual in a lower level of care (i.e., the burden of proof is reversed). Second, [they] require the presence of acute symptoms to trigger residential treatment coverage, whereas generally accepted standards of medical practice highlight chronic considerations as well, and do not exclusively require such acute symptoms. Finally, [they] ignore generally accepted protocols and a breadth of considerations for determining when residential treatment is appropriate and instead focus almost exclusively on a single criterion – the presence of acute symptoms such as imminent risk of harm…

(First Am. Compl. at ¶ 82). With respect to the relevant medical limitations, Plaintiffs maintain:

> The welfare benefit plans that HCSC administers require medical necessity determinations to be made by applying generally accepted standards of medical practice. Consistent with plan terms, HCSC makes medical necessity determinations related to medical/surgical conditions, including analogs to residential treatment such as skilled nursing, by applying generally accepted standards of medical practice.

(*Id*. ¶ 117). The problem with this argument is that, at this very early stage of the proceedings and absent law offered by HCSC to support its position, the Court cannot place a burden on plaintiff-patients to plead specific details with respect to the appropriate standards of care. Especially at the pleading stage, "patients are unlikely to be aware of the potential range of 'recognized clinically appropriate standards of care' which may give rise to a difference in how mental health and medical services are treated and thus they would be left to speculate as to the clinical reasons for a particular disparity." *See, e.g., C.M. v. Fletcher Allen Health Care, Inc.*,

No. 5:12-cv-108, 2013 WL 4453754, at *6 (D. Ver. April 30, 2013). With this in mind, the Court

finds that Plaintiffs have pled sufficient facts in Count IV to state a claim under the Parity Act.

### E. Whether Count V States a Claim for Relief Under the Non-Discrimination Provision of ERISA

Under Section 2706 of the Affordable Care Act, 42 U.S.C. § 300gg-5(a), which is

incorporated by reference in what the parties refer to as "the Non-Discrimination Provision of

ERISA," 29 U.S.C. § 1185d, a health insurance issuer offering group insurance coverage…

> shall not discriminate with respect to participation under the plan or coverage
> against any health care provider who is acting within the scope of that provider's
> license or certification under applicable State law. This section shall not require
> that a group health plan or health insurance issuer contract with any health care
> provider willing to abide by the terms and conditions for participation established
> by the plan or issuer. Nothing in this section shall be construed as preventing a
> group health plan, a health insurance issuer, or the Secretary from establishing
> varying reimbursement rates based on quality or performance measures.

Plaintiffs allege in Count V of their First Amended Complaint that HCSC…

> violates the Non-Discrimination Provision and its fiduciary duties under ERISA
> by making coverage determinations and applying coverage guidelines which
> preclude coverage for residential services provided by licensed sub-acute
> Residential Treatment Centers which are not authorized to provide hospitalization
> or acute services, even when HCSC insureds only require such sub-acute services
> to treat chronic mental health conditions. Thus, HCSC is discriminating against
> such Residential Treatment Centers.

(First Am. Compl. at ¶ 126). HCSC insists that the Non-Discrimination Provision, "by its plain

language," requires merely that "beneficiaries have the option to receive [treatments that are both

covered and medically necessary] from any provider licensed to provide them." Neither side has

provided the Court with any law to support its position and the appropriate application of this

statute is not nearly as obvious as the parties have concluded in their page or two of briefing the

issue. *See Coyomani-Cielo*, 758 F.3d at 912 ("One way to demonstrate the ambiguity in this case

is to consider the parties' differing interpretations."). On this limited record, the Court declines to

weigh-in on the proper interpretation of this statute. *See Ripberger v. Corizon, Inc.*, 773 F.3d 871, 879 (7th Cir. 2014) (parties waive undeveloped and perfunctory arguments); *Eberhardt v. Brown*, 580 F. App'x 490, 491 (7th Cir. 2014) (parties waive arguments that they raise for the first time in a reply brief). HCSC's motion to dismiss Count V is denied.

### III. MOTION TO SEVER

In light of foregoing rulings on HCSC's motion to dismiss, the Court grants HCSC's Motion to Sever. Under Rule 20 of the Federal Rules of Civil Procedure, multiple plaintiffs may join in an action where (1) joined plaintiffs "assert any right of relief . . . with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences," and (2) "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1).

All counts involving the treatment of the Pautsches and Crafts have been dismissed except for Count I ; all counts involving the treatment of the Segers have been dismissed except for Counts III through V. Counts I and II generally arise from the validity of blanket RTC exclusions under the Parity Act; Counts III through V arise from the allegedly improper application of the Milliman Guidelines. In their opposition to HCSC's Motion to Sever, Plaintiffs emphasized that all Plaintiffs have claims arising from the allegedly improper application of the Milliman Guidelines. Because of the rulings above, that is no longer true. Had that been the case following resolution of the motion to dismiss, the Court may have been inclined to keep the plaintiffs together in one action. But, as it stands, Plaintiffs have provided no other argument against severance. On the contrary, it would be cumbersome and inefficient to keep the plaintiffs joined under these circumstances. *See United States v. Carter*, 695 F.3d 690, 700 (7th Cir. 2012)

(noting that the purpose of permissive joinder is to promote judicial efficiency). HCSC's Motion to Sever is granted.

## CONCLUSION

For the reasons stated, HCSC's Motion to Dismiss is granted in part and denied in part. (Dkt. No. 70). The Court denies HCSC's motion to dismiss Counts I and II as moot; Count I remains as far as the allegations brought by the Crafts and the Pautsches. Counts I and II are dismissed with respect to the Segers. Counts II through V are dismissed with respect to the Crafts and the Pautsches. Plaintiffs' claims under Sections 1132(a)(3)and 1132(a)(2) in Counts III and IV are also dismissed. All dismissals are with prejudice. HCSC's Motion to Sever is granted. (Dkt. No. 73).

Date: _____3/31/16_____

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

25