UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH A. CRAFT; JANE DOE, a minor, by her next friend and parent, ELIZABETH A. CRAFT; BRYAN L. PAUTSCH; and MARY DOE, a minor, by her next friend and parent, BRYAN L. PAUTSCH; on their own behalf and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | |
| v. | |
| HEALTH CARE SERVICE CORPORATION, | |
| Defendant. | |

Case No. 14-CV-5853

Judge Virginia Kendall

## SECOND AMENDED CLASS ACTION COMPLAINT[1]

Plaintiffs Elizabeth A. Craft; Jane Doe,[2] a minor, by her next friend and parent, Elizabeth A. Craft; and Bryan L. Pautsch; and Mary Doe, a minor, by her next friend and parent, Bryan L. Pautsch, complain as follows on their own behalf and on behalf of all others similarly situated, against Defendant Health Care Service Corporation ("HCSC" or "Defendant").

## INTRODUCTION

1. Defendant HCSC violated legal duties it owed to health insurance plan participants and beneficiaries by improperly restricting the scope of their insurance coverage for the treatment of mental illness in Residential Treatment Centers. It did so by enforcing illegal plan exclusions for such coverage.

---

[1] Plaintiffs are filing this Second Amended Complaint, by agreement, for administrative purposes only. Plaintiffs do not waive any arguments they may have on appeal as to allegations or claims that the Court dismissed with prejudice in its March 31, 2016 order.
[2] Because the Complaint alleges facts that include the minor Plaintiffs' private health information, the three minor Plaintiffs' names have been replaced with pseudonyms.

2.     Until recently, many of HCSC's group health plans explicitly excluded all coverage for the treatment of mental illness in Residential Treatment Centers. They excluded coverage of residential treatment for mental illness even when that treatment was medically necessary, and even though they covered the treatment of medical and surgical conditions in similar residential facilities, such as Skilled Nursing Facilities.

3.     HCSC violated its fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), including its duties to comply with the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (the "Parity Act") which has been incorporated into ERISA at 29 U.S.C. § 1185a. Plaintiffs filed this Class Action in order to end HCSC's illegal practices.

4.     Because they have been harmed by Defendant's misconduct, Plaintiffs bring this complaint on behalf of themselves and all others similarly situated to obtain all appropriate relief available under ERISA.

## THE PARTIES

5.     Plaintiff Elizabeth A. Craft ("Ms. Craft") is the mother and next friend of Plaintiff Jane Doe. Ms. Craft resides in Parker, Colorado. At all times relevant to this Complaint, Ms. Craft has been an employee of Trustwave Holdings, Inc., and a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Trustwave Holdings, Inc. Health Care Benefit Program ("Trustwave Plan").

6.     Plaintiff Jane Doe ("Jane") is the seventeen-year-old daughter and dependent of Ms. Craft. Jane resides in Parker, Colorado. Jane is a beneficiary, as defined by ERISA § 3(8), 29 U.S.C. § 1002(8), of the Trustwave Plan. Jane's insurance coverage is through her mother's employment with Trustwave Holdings, Inc.

7. Plaintiff Bryan L. Pautsch ("Mr. Pautsch") is the father and next friend of Plaintiff Mary Doe. Mr. Pautsch resides in Cedarburg, Wisconsin. At all times relevant to this Complaint, Mr. Pautsch has been an employee of Sikich, LLP, and a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Sikich, LLP Health Care Benefit Program ("Sikich Plan").

8. Plaintiff Mary Doe ("Mary") is the sixteen-year-old daughter and dependent of Mr. Pautsch. Mary is a beneficiary, as defined by ERISA § 3(8), 29 U.S.C. § 1002(8), of the Sikich Plan. Mary's insurance coverage is through her father's employment with Sikich, LLP.

9. Defendant HCSC, headquartered in Chicago, Illinois, issues and administers health care plans in five states through five divisions, operating, respectively, under the names of Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Montana, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma and Blue Cross and Blue Shield of Texas. HCSC is the largest customer-owned health insurer in the United States and fourth largest overall, with nearly 14 million insureds.

a. HCSC is the underwriter and designated claims administrator of the Trustwave Plan. The Trustwave Plan has delegated all coverage decisions to HCSC, and HCSC exercises discretionary authority and control with respect to the administration of the Trustwave Plan. HCSC is therefore a fiduciary of the Trustwave Plan as defined in ERISA, 29 U.S.C. § 1002(21)(A)(iii). Because the Trustwave Plan is fully insured, HCSC is responsible for paying all allowed claims from its own assets.

b. HCSC is the designated claims administrator of the Sikich Plan. The Sikich Plan has delegated all coverage decisions to HCSC, and HCSC exercises discretionary authority and control with respect to the administration of the Sikich Plan. HCSC is

therefore a fiduciary of the Sikich Plan as defined in ERISA, 29 U.S.C. § 1002(21)(A)(iii).

## THE NAMED PLAINTIFFS' PLANS

10. The Trustwave Plan is a non-grandfathered "employee welfare benefit plan" under ERISA § 1003, 29 U.S.C. § 1002(1), which covers more than 50 employees and provides both medical/surgical benefits and mental health/substance use disorder benefits. The Trustwave Plan is fully insured by HCSC, operating as Blue Cross and Blue Shield of Illinois, which means that HCSC pays the benefits from its own assets. All claims determinations are made by HCSC in its capacity as the claims administrator under the plan.

11. The Sikich Plan is a non-grandfathered "employee welfare benefit plan" under ERISA § 1003, 29 U.S.C. § 1002(1), which covers more than 50 employees and provides both medical/surgical benefits and mental health/substance use disorder benefits. The Sikich Plan is self-funded (meaning that it pays benefits from its own assets), but it is administered by HCSC, operating as Blue Cross and Blue Shield of Illinois. All claims determinations are made by HCSC in its capacity as the claims administrator under the plan.

## JURISDICTION AND VENUE

12. Defendant's actions in administering employer-sponsored health care plans, including making coverage and benefit determinations under the terms and conditions of the health care plans, are governed by ERISA. This Court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1331 (federal question jurisdiction).

4

13.     Venue is proper in this District under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2),

because, *inter alia*, the Defendant resides in or may be found in this District.

## FACTUAL ALLEGATIONS

### *Background*

14.     Congress enacted the Parity Act on October 3, 2008, and the statute became

effective one year later, on October 3, 2009. The purpose of the law was to end discrimination in

the provision of insurance coverage for mental health treatment, as compared to medical and

surgical services. *See* 29 U.S.C. §1185a. While the Parity Act does not require health care plans

to cover mental health services, if a plan chooses to do so, such coverage must be provided "at

parity" with medical/surgical benefits.

15.     Under the Parity Act, health care plans covering mental health services are

required, *inter alia*, to ensure that:

> the treatment limitations applicable to such mental health or substance use
> disorder benefits are ***no more restrictive*** than the predominant treatment
> limitations applied to substantially all medical and surgical benefits covered by
> the plan (or coverage) and there are ***no separate treatment limitations*** that are
> applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185a(a)(3)(A)(ii) (emphasis added).

16.     This means that as of the Parity Act's effective date, October 3, 2009, it became

illegal for group health plans to impose blanket exclusions of coverage for residential treatment

for mental illness while imposing no such exclusion of coverage for residential treatment of

medical or surgical conditions. Such blanket exclusions of coverage for residential treatment for

mental illness therefore became void and unenforceable as of the same date.

17.     ERISA requires insurers like HCSC to administer welfare benefit plans in

compliance with the Parity Act and its implementing regulations and to refrain from enforcing

plan terms that conflict with federal law. ERISA also imposes strict fiduciary duties on HCSC, including the duty to administer plans solely for the benefit of plan participants and beneficiaries; to act prudently; and to act consistently with plan terms, to the extent those terms are consistent with federal law. The statutory requirements under ERISA trump any plan terms, such that, when administering any ERISA plans, HCSC must ignore plan provisions that violate ERISA's requirements.

18.     By, among other things, applying and enforcing certain plans' blanket exclusions of residential treatment for mental illness in violation of the Parity Act and its regulations, HCSC systemically and uniformly breached its ERISA duties, including its fiduciary duties, to the Plaintiffs and Class members.

19.     HCSC took these actions for its own financial benefit.  With respect to fully-insured plans, its improper restrictions on coverage directly benefitted HCSC's bottom line, because it is responsible for paying claims out of its own assets.  On information and belief, HCSC also benefitted from its improper restrictions with respect to self-insured plans, both by allowing it to solicit and retain more business from plans seeking to reduce costs and because such plans often contain stop-loss provisions that incentivize insurers to minimize claims payments.

20.     While  HCSC has represented that, today, it no longer enforces blanket residential treatment exclusions, it previously applied such exclusions to deny claims for residential treatment submitted on behalf of many of its insureds in violation of its fiduciary obligations under ERISA, for which they are entitled to appropriate relief.

21.     Through this lawsuit, Plaintiffs are asserting their rights under ERISA and the Parity Act. Plaintiffs seek a court order declaring that blanket exclusions of coverage for

6

residential treatment of mental illness are and, at all times relevant to this action, were illegal, and therefore void and unenforceable, in health plans which provide coverage for residential treatment of medical or surgical conditions. Plaintiffs also seek payment of the benefits they were improperly denied or, in the alternative, an injunction requiring HCSC to re-process the claims that it improperly denied based upon such illegal exclusions.

### *Factual Allegations Regarding Jane Doe*

22.     Jane Doe is a 17-year-old girl who has been diagnosed with post-traumatic stress disorder; recurrent, severe major depressive disorder; and anorexia nervosa. The 2014 Trustwave Plan included each one of those mental disorders within its definition of "Serious Mental Illness."

23.     From August 2012 through July 2014, Jane was hospitalized for acute in-patient care for her mental illness ten separate times. Jane has frequently been found to be suicidal, and has taken direct steps to harm herself on multiple occasions. Jane has long expressed a desire to "waste away" and has repeatedly attempted to die of starvation by refusing food and fluids. On July 11, 2014, Jane was hospitalized for treatment of depression and suicidality after she cut her forearm from the wrist to the elbow.

24.     Nearly every time Jane was hospitalized for acute in-patient care, her treating physicians recommended that she be transferred to a long-term residential treatment facility. One of Jane's psychiatrists explained to Jane's mother that, in order for Jane to become healthy again, she needed to address deep-seated psychological problems that would be extremely painful for her to face. That psychiatrist emphasized that the only safe way for Jane to undertake that necessary treatment was in a long-term program in a residential facility with 24-hour supervision and care.

25. Though the 2014 Trustwave Plan covered mental health treatment, HCSC consistently denied residential treatment claims filed on Jane's behalf based on an exclusion in the Plan. The Trustwave Plan's exclusion of coverage for residential treatment for mental illness, however, violated the Parity Act. No similar exclusion applied to residential treatment for medical or surgical conditions. To the contrary, for example, under the Trustwave Plan, long-term in-patient treatment at a Skilled Nursing Facility was covered up to 100% for medical and surgical conditions.

26. As an ERISA fiduciary, HCSC was legally obligated to ignore the blanket exclusion of residential treatment because it violated ERISA and the Parity Act. HCSC also had the duty to administer the Trustwave Plan solely for the benefit of the participants and beneficiaries. By, among other things, applying and enforcing the Trustwave Plan's blanket exclusion of residential treatment for mental illness in violation of the Parity Act and its regulations, HCSC breached its ERISA duties, including its fiduciary duties.

27. Contrary to its fiduciary obligations under ERISA, HCSC nevertheless applied the exclusion to deny coverage for medically necessary residential treatment. As a result, Jane was repeatedly discharged from acute in-patient care to partial hospitalization programs and intensive outpatient programs, neither of which was adequate to treat her mental illness. Partial hospitalization programs, which HCSC classifies as out-patient treatment, are short in duration and do not provide 24-hour care, which Jane needed in order to properly treat her illness. Intensive outpatient programs are another "step down" from partial hospitalization and last for even fewer hours each day, with no treatment at all on weekends.

28. From August 2012 through early 2014, Jane was discharged to partial hospitalization programs on four different occasions. Each time, Jane completed the partial

hospitalization program, but when she began transitioning to intensive outpatient treatment, she relapsed and ended up back in acute in-patient care. These outpatient treatments were demonstrably ineffective at treating Jane's illness.

29.     When Jane was hospitalized on July 11, 2014, Jane's mother, Plaintiff Craft, immediately sought pre-authorization of coverage for residential treatment at a facility accredited by the Joint Commission on Accreditation of Healthcare Organizations ("Joint Commission") and licensed under Illinois state law, pointing out that the exclusion of coverage for residential treatment of mental illness under the Trustwave Plan violated the Parity Act. On July 17, 2014, HCSC issued a letter denying Craft's request on the ground that "Mental Health Residential Treatment Facilities [was] not a covered benefit" under the Trustwave Plan. The same day, Craft filed an urgent appeal of the denial, again arguing that the blanket exclusion violated the Parity Act. On July 18, 2014, HCSC demanded that Craft provide authorization from Jane, her minor daughter, in order to file the urgent appeal. Although she objected to its necessity, Craft provided Jane's authorization for the appeal on July 24, 2014. In a letter dated July 28, 2014 (which Craft did not receive until August 4), HCSC denied Craft's urgent appeal, again based upon the exclusion in the Trustwave Plan.

30.     Meanwhile, Jane's psychiatrists again recommended that she be discharged to long-term residential treatment, noting her high risk of relapse in a less restrictive treatment setting. However, Jane and her family could not afford the out-of-pocket expense of $1,000 per day.

31.     Therefore, in light of HCSC's refusal to authorize coverage for residential treatment, Jane's psychiatrists were "forced to go to [partial hospitalization]." Jane was thus discharged on July 22, 2014, to a partial hospitalization program that ran from 8:30 in the

morning to 3:00 in the afternoon, five days per week. The program lasted 10 days, but HCSC only approved coverage for two days at a time, requiring concurrent review and re-authorization every two days, with the constant threat looming that coverage for even that level of care would be denied, adding to the pressure on Jane and interfering with her treatment program. When she was not at the partial hospitalization program, Jane slept nearly all the time, and quickly began refusing food and fluids.

32.     Plaintiff Craft, through counsel, filed the Original Complaint in this action on July 30, 2014.

33.     On July 31, 2014, Jane was hospitalized again for acute in-patient care after she was found to be severely dehydrated and passively suicidal. This was the tenth time Jane had been hospitalized within the preceding two years.

34.      As a result of Jane's inability to obtain the appropriate treatment for her mental illness in the more than two year-long period during which HCSC applied the Trustwave Plan's illegal exclusion, Jane and Plaintiff Craft suffered numerous injuries. Jane was unable to attend school regularly, if at all, during this period. She suffered debilitating physical effects from her eating disorder, and required emergency treatment on numerous occasions for severe hydration. Her relapses became more frequent and more severe, with ever more active attempts at self-harm. Plaintiff Craft and her husband had to significantly alter their work schedules in order to care for Jane. In October 2013, Ms. Craft's husband actually had to quit his job in order to assist in Jane's care, causing the loss of substantial income.  In addition, they have incurred substantial out-of-pocket medical expenses for Jane's numerous visits to doctors, emergency rooms, and hospitals.

*Factual Allegations Regarding Mary Doe*

35.     Mary Doe is a sixteen-year-old girl who has been diagnosed with major depressive disorder, generalized anxiety disorder, social anxiety disorder, and attention-deficit hyperactivity disorder.  She has a history of suicidal ideation, self-harm, and long-term school avoidance.

36.     The 2014 Sikich Plan classifies major depressive disorder as a "Serious Mental Illness" and also covers Mary's comorbid psychiatric conditions.

37.     Rogers Memorial Hospital is licensed to operate both a psychiatric hospital and a residential treatment center under Wisconsin state law and is accredited by the Joint Commission.

38.     In October 2014, Mary was admitted to Rogers Memorial Hospital for acute in-patient care for her mental illness because she was exhibiting suicidal ideations. After one week of acute in-patient care, Mary was "stepped-down" on October 29, 2014 to a residential treatment program in the same facility. At that time, her attending psychiatrist noted that Mary "recently was hospitalized for suicidal ideation which has reduced such that she is stable to continue treatment at this level of care."

39.     Mary ultimately was discharged from the residential program on January 6, 2015. Her discharge report stated that the "Justification for Length of Stay" was that "[t]he patient had significant anxiety, depression, as well as relational stress with both parents, long-term school avoidance refusal in the context of significant mental and medical health issues over the past several years."

40.     Prior to Mary's admission to the residential program, Rogers Memorial Hospital verified her benefits with HCSC. Rogers was informed that residential treatment was excluded from coverage.

41.     Though the 2014 Sikich Plan covered mental health treatment, it excluded coverage of residential treatment claims for mental illness.  HCSC applied this exclusion in violation of the Parity Act. No similar exclusion applied to residential treatment for medical or surgical conditions. To the contrary, for example, long-term in-patient treatment at a Skilled Nursing Facility was covered under the Sikich Plan for up to 100% for medical and surgical conditions.

42.     As an ERISA fiduciary, HCSC was legally obligated to ignore the blanket exclusion of residential treatment because it violated ERISA and the Parity Act. HCSC also had a duty to administer the Sikich Plan solely for the benefit of the participants and beneficiaries. By, among other things, applying and enforcing the Sikich Plan's blanket exclusion of residential treatment for mental illness in violation of the Parity Act and its regulations, HCSC breached its ERISA duties, including its fiduciary obligations.

43.     As a result of HCSC's violation of its fiduciary duties and the Parity Act, Mary Doe's family incurred more than $66,000 in out-of-pocket expenses for Mary Doe's slightly more than two months of treatment at Rogers Memorial Hospital's residential program.

### *Class Action Allegations*

44.     **Class Definition.** Plaintiffs bring their claims on their own behalf and on behalf of a "Residential Treatment Exclusion Class," defined as follows:

> All individuals who, within the applicable statute of limitations, have been participants in or beneficiaries of an employee welfare benefit plan administered by HCSC that provided coverage for both medical/surgical conditions and mental health conditions and who submitted or had submitted on their behalf requests for coverage of residential treatment for mental illness, and for which HCSC denied coverage in whole or in part based on a plan exclusion of coverage for residential treatment of mental illness.

45. **Size of Class**. The members of the class defined above are so numerous that joinder of all members is impracticable. While the precise number of members in the class is known only to Defendant, Defendant is the fiduciary and administrator of tens of thousands of ERISA welfare benefit plans and advertises on its website that it has 14 million members.

46. **Class Representatives**. Named Plaintiffs Elizabeth Craft and Bryan Pautsch are participants in employee welfare benefit plans administered by HCSC that provide coverage for both medical/surgical conditions and mental health conditions. In addition, HCSC denied claims for coverage of residential treatment for the mental illnesses of Ms. Craft's and Mr. Pautsch's minor daughters based upon a blanket exclusion of coverage for residential treatment of mental illness. Ms. Craft's and Mr. Pautsch's claims, on their own behalf and as next friends of the minor Plaintiffs Jane and Mary Doe, are typical of the claims of the other members of the Class, and they will fairly and adequately represent the interests of the Class.

47. **Common Questions of Law and Fact**. There exist issues of fact and law common to all members of the Class. Among other things, this action requires a determination of whether HCSC is an ERISA fiduciary and whether it violated the Parity Act and the company's fiduciary duties by applying blanket exclusions of all coverage for the residential treatment of mental illness in group welfare plans. Further, this action requires the Court to determine the appropriate remedies under ERISA for HCSC's ERISA violations.

48. **Separate Suits Would Create Risk of Varying Conduct Requirements**. The prosecution of separate actions by class members against HCSC would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct. Certification is therefore proper under Federal Rule of Civil Procedure 23(b)(1).

13

49.     **HCSC Has Acted on Grounds Generally Applicable to the Class**. By, *inter alia*, applying uniform, blanket exclusions of residential treatment for mental illness to deny the class members' requests for coverage, HCSC has acted in violation of its fiduciary duties, on grounds generally applicable to the class, rendering declaratory relief appropriate respecting the whole class. Certification is therefore proper under Federal Rule of Civil Procedure 23(b)(2).

50.     **Questions of Law and Fact Common to the Class Predominate Over Individual Issues**. The claims of the individual Class members are more efficiently adjudicated on a class-wide basis. Any interest that individual members of the Class may have in individually controlling the prosecution of separate actions is outweighed by the efficiency of the class action mechanism. Upon information and belief, there has been no class action suit filed against this defendant for the relief requested in this action for a class of ERISA insureds. This action can be most efficiently prosecuted as a class action in the Northern District of Illinois, where HCSC has its headquarters. Issues as to HCSC's conduct in applying standard policies and practices towards all members of the class predominate over questions, if any, unique to members of the Class. Certification is therefore also proper under Federal Rule of Civil Procedure 23(b)(3).

51.     **Class Counsel**. Plaintiffs have retained experienced and competent class counsel.

### CLAIM FOR RELIEF

### COUNT I
**Claim for Violation of Fiduciary Duties and Improper Benefit Denials
With Respect to Exclusion of Residential Treatment Center Coverage
<u>(On behalf of Plaintiffs and the Class)</u>**

52.     Plaintiffs re-allege and incorporate the factual allegations above, as though such allegations were fully stated herein.

53. Plaintiffs bring Count I under 29 U.S.C. § 1132(a)(1)(B), which authorizes a participant or beneficiary to bring a civil action to recover benefits due to him, to enforce his rights under the terms of a plan, or to clarify his rights to future benefits under a plan.

54. As claims administrator, Defendant makes all claims determinations and decides all benefits questions under the plans it administers.

55. When plans are fully insured by Defendant, Defendant pays benefits under the plans from its own assets.

56. The terms of all ERISA plans include the substantive requirements of ERISA and the Parity Act. Blanket exclusions of coverage applicable solely to residential treatment for mental illness, and not to residential treatment of medical/surgical conditions, violate ERISA and the Parity Act.

57. Accordingly, HCSC's denials, pursuant to such blanket exclusions, of Plaintiffs' and the class members' requests for coverage for residential treatment of mental illness violated ERISA and the Parity Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment in their favor against Defendant and request that this Court:

1. Certify this case as a class action; designate the Named Plaintiffs as class representatives; and designate D. BRIAN HUFFORD, JASON COWART, CAROLINE E. REYNOLDS, MEIRAM BENDAT, AND GEORGE F. GALLAND as class counsel;

15

2. Declare that Defendant HCSC may not apply contract provisions, policies or practices that wholly exclude services to treat mental health conditions when such exclusions and/or limitations are not applied to medical and surgical services;

3. Declare that blanket exclusions applicable solely to residential treatment for mental illness are void and unenforceable under the Parity Act;

4. Order HCSC to pay Plaintiffs and the class the benefits it wrongfully denied pursuant to its enforcement of blanket exclusions of coverage for residential treatment of mental illness, or, in the alternative, order HCSC to reprocess claims for residential treatment of mental illness that it previously denied (in whole or in part) pursuant to such a blanket exclusion;

5. Award Plaintiffs and the Class their attorney fees and costs under 29 U.S.C. § 1132(g); and

6. Award such other relief as is just and proper.


Dated: April 25, 2016                          /s/ D. Brian Hufford
                                               D. Brian Hufford
                                               One of the Attorneys for Plaintiff


D. Brian Hufford
Jason S. Cowart
Zuckerman Spaeder LLP
399 Park Avenue, 14th Floor
New York, NY 10022
212.704.9600

Caroline E. Reynolds
Zuckerman Spaeder LLP
1800 M Street NW
Washington, DC 20036
202.778.1800

Meiram Bendat
Psych-Appeal, Inc.
8560 W. Sunset Blvd., Ste. 500
West Hollywood, CA 90069
310.598.3690, ext. 101

George F. Galland, Jr.
Scott A. Entin
Miner, Barnhill & Galland, P.C.
14 W. Erie St.
Chicago, IL 60654
312.571.1170

*Counsel for Plaintiffs and the Putative Class*