# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH A. CRAFT; JANE DOE, by her next friend and parent, ELIZABETH A. CRAFT; BRYAN L. PAUTSCH; MARY DOE, by her next friend and parent, BRYAN L. PAUTSCH; on their own behalf and on behalf of all others similarly situated, | ) ) ) ) ) ) ) | Case No. 14-cv-5853 Hon. Virginia M. Kendall |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| HEALTH CARE SERVICE CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

---

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND RELATED RELIEF

Martin S. Himeles, Jr. (*pro hac vice*)
Daniel P. Moylan (*pro hac vice*)
Adam Abelson (*pro hac vice*)
Zuckerman Spaeder LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
(410) 332-0444

Caroline E. Reynolds (*pro hac vice*)
Zuckerman Spaeder LLP
1800 M Street NW, Suite 1000
Washington, DC 20036
(202) 778-1800

Meiram Bendat (*pro hac vice*)
Psych-Appeal, Inc.
8560 W. Sunset Blvd., Ste. 500
West Hollywood, CA 90069
(310) 598-3690, ext. 101

D. Brian Hufford (*pro hac vice*)
Jason S. Cowart (*pro hac vice*)
Zuckerman Spaeder LLP
399 Park Avenue, 14th Floor
New York, NY 10022
(212) 704-9600

George F. Galland, Jr.
Scott A. Entin
Miner, Barnhill & Galland, P.C.
14 W. Erie St.
Chicago, IL 60654
(312) 571-1170

*Counsel for Plaintiffs and the Putative Class*

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................I

TABLE OF AUTHORITIES ...............................................................................................II

I.    Introduction ............................................................................................................ 1

II.   Background ............................................................................................................ 2

    A.   Plaintiffs and Their Claims ......................................................................... 2

    B.   Procedural History ....................................................................................... 4

    C.   The Settlement ............................................................................................. 5

III.  The Court Should Certify The Settlement Class .................................................... 9

    A.   Plaintiffs Satisfy The Requirements Of Rule 23(a). ................................... 9

    B.   The Settlement Class Should Be Certified Under Rule 23(b)(3). ............ 13

    C.   The Settlement Class is Ascertainable. .................................................... 14

IV.  The Proposed Settlement Satisfies The Requirements For Preliminary Approval. .......... 15

    A.   Legal Standards for Preliminary Approval. ............................................. 15

    B.   The Incentive Awards to Plaintiffs Are Fair and Justified by Their Significant Personal Efforts To Secure Relief Benefiting the Class. ........................................ 18

    C.   A Counsel Fee of Thirty Percent Is Reasonable and Consistent with Precedents in the Seventh Circuit. ................................................................................ 20

    D.   The Settlement Falls Within the Range of Possible Approval. ................ 21

V.   THE NOTICE PLAN SATISFIES RULE 23. .................................................... 22

VI.  PROPOSED SCHEDULE. ................................................................................... 24

VII. CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.F. ex rel. Legaard v. Providence Health Plan*,
    300 F.R.D. 474 (D. Or. 2013) .................................................... 10

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
    Nos. 07 CV 2898, 09 C 2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012)............................. 20

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)....................................................... 9, 11, 13

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)........................................................ 13

*Bell v. PNC Bank, Nat'l Ass'n*,
    800 F.3d 360 (7th Cir. 2015) ................................................... 9

*Boyd v. Coventry Health Care Inc.*,
    299 F.R.D. 451 (D. Md. 2014).................................................. 22

*Bridgeview Health Care Ctr., Ltd. v. Jerryclark*,
    No. 09 C 5601, 2015 WL 4498741 (N.D. Ill. July 23, 2015) ................................ 20

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) .................................................. 19

*Costello v. BeavEx, Inc.*,
    810 F.3d 1045 (7th Cir. 2016) .................................................. 13

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
    Case No. 11-cv-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015) ................................ 19, 21

*De La Fuente v. Stokely-Van Camp, Inc.*,
    713 F.2d 225 (7th Cir. 1983) ................................................... 11

*Florin v. Nationsbank of Ga., N.A.*,
    34 F.3d 560 (7th Cir. 1994) ................................................... 21

*Gehrich v. Chase Bank USA, N.A.*,
    316 F.R.D. 215 (N.D. Ill. 2016)................................................. 22

*Heekin v. Anthem, Inc.*,
    No. 1:05-cv-01908-TWP-TAB, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012)...................... 20

*In re Capital One Tel. Consumer Prot. Act Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill .2015) ...................................................................... 21

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*,
   314 F.R.D. 580 (N.D. Ill. 2016) ........................................................................... 15

*In re Synthroid Mktg. Litig.*,
   325 F.3d 974 (7th Cir. 2003) ................................................................................ 21

*In re WorldCom, Inc. ERISA Litig.*,
   No. 02 Civ. 4816 (DLC), 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) ............... 22

*Isby v. Bayh,*
   75 F.3d 1191 (7th Cir. 1996) ................................................................................ 15

*Kolinek v. Walgreen Co.*,
   311 F.R.D. 483 (N.D. Ill. 2015) ........................................................................... 20

*Mehling v. N.Y. Life Ins. Co.*,
   248 F.R.D. 455 (E.D. Pa. 2008) ........................................................................... 22

*Messner v. Northshore Univ. HealthSystem,*
   669 F.3d 802 (7th Cir. 2012) ................................................................................ 13

*Mirfasihi v. Fleet Mortg. Corp.*,
   450 F.3d 745 (7th Cir. 2006) ................................................................................ 15

*Mullins v. Direct Digital, LLC*,
   795 F.3d 654 (7th Cir. 2015) ................................................................................ 14

*Oshana v. Coca-Cola Co.*,
   472 F.3d 506 (7th Cir. 2006) .................................................................................. 9

*Phillips v. Sheriff of Cook Cty.*,
   828 F.3d 541 (7th Cir. 2016) ................................................................................ 10

*Reynolds v. Beneficial Nat'l Bank,*
   288 F.3d 277 (7th Cir. 2002) ................................................................................ 15

*Rosario v. Livaditis,*
   963 F.2d 1013 (7th Cir. 1992) ........................................................................ 10, 11

*Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.*,
   271 F.R.D. 139 (N.D. Ill. 2010) ........................................................................... 24

*Spano v. Boeing Co.*,
   633 F.3d 574 (7th Cir. 2011) .................................................................................. 9

*Spano v. Boeing Co*.,
    Case No. 06-CV-743-NJR-DGW, 2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) .................... 20

*Taubenfeld v. Aon Corp.*,
    415 F.3d 597 (7th Cir. 2005) ........................................................................................... 20

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)........................................................................................................ 10

*Wilkins v. HSBC Bank Nev., N.A.*,
    No. 14 C 190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015).................................... 21

*Williams v. Rohm & Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011) ........................................................................................... 22

*Wit v. United Behavioral Health*,
    317 F.R.D. 106 (N.D. Cal. 2016)........................................................................... 12

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ........................................................................................... 15

**Statutes**

29 U.S.C. § 1132(a)(1)(B) ...................................................................................... 4, 5

29 U.S.C. § 1132(a)(3).............................................................................................. 4, 5

29 U.S.C. § 1185a ...................................................................................................... 1, 2, 3

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................... 1, 14, 15

Fed. R. Civ. P. 23(a) ................................................................................................... 9

Fed. R. Civ. P. 23(a)(2)............................................................................................... 10

Fed. R. Civ. P. 23(a)(3)............................................................................................... 10

Fed. R. Civ. P. 23(a)(4)............................................................................................... 11

Fed. R. Civ. P. 23(b) ................................................................................................... 9

Fed. R. Civ. P. 23(b)(3)......................................................................................... 2, 13, 14, 23

Fed. R. Civ. P. 23(c) ................................................................................................... 9

Fed. R. Civ. P. 23(c)(2)............................................................................................... 23

Fed. R. Civ. P. 23(e) ............................................................................................... 22

Final Rules Under the Parity Act, 78 Fed. Reg. 68240-01 (Nov. 13, 2013) .................................... 3

Interim Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and
    Addiction Equity Act of 2008, 75 Fed. Reg. 5410 (Feb. 2, 2010) ............................................. 3

**Treatises**

1 William Rubenstein et al., *Newberg on Class Actions* (5th ed. 2011) ....................................... 12

7AA Charles Wright, Arthur Miller & Mary Kay Kane,
    Federal Practice and Procedure (3d ed. 2005) ........................................................... 13

**Regulations**

29 C.F.R. § 2590.712 ............................................................................................... 3

## I.    INTRODUCTION

Plaintiffs Elizabeth A. Craft and Bryan L. Pautsch, on behalf of their family members and all persons similarly situated, submit this memorandum in support of their motion pursuant to Federal Rule of Civil Procedure 23 for preliminary approval of a class settlement with Defendant Health Care Service Corporation ("HCSC").   If approved, the settlement will provide for substantial monetary payments to participants in ERISA health plans administered by HCSC, whose claims for insurance coverage for mental health treatment in residential treatment centers ("RTCs") were denied due to categorical exclusions of such benefits ("RTC exclusions").

Plaintiffs claim that HCSC, through its application of the RTC exclusion, violated fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), including duties to comply with the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (the "Parity Act"), incorporated into ERISA at 29 U.S.C. § 1185a. *See* ECF No. 106 (Second Am. Compl.) ¶¶ 2-3.   HCSC stopped enforcing RTC exclusions in accordance with the effective date provided in the Final Rules implementing the Parity Act.[1] The parties' settlement provides for monetary payments to members whose RTC claims were denied based on the RTC exclusion.

As part of the settlement, HCSC agreed to create a common fund of $5.25 million for the proposed class.   Under the Plan of Allocation, each plan participant who is a part of the class will receive a proportionate share of the fund after agreed deductions, based principally on the number of days for which he or she received mental health residential treatment during the class

---

[1] *See, e.g.,* ECF No. 42 at 3 (acknowledging the change with respect to lead plaintiff Craft's employer-sponsored plan).   During this litigation, the parties engaged in intensive motions practice in connection with lead plaintiff Elizabeth Craft's motion for preliminary injunction to stop application of the RTC exclusion, ECF No. 5, which was resolved by the parties without the need for a ruling from the Court, *see* ECF No. 30, and HCSC's motion to dismiss, which the Court denied in a Memorandum and Order, ECF No. 46.

period.

Accordingly, Plaintiffs respectfully request that the Court preliminarily approve the parties' Settlement Agreement—attached as Exhibit 1 and referred to hereafter as the "Settlement Agreement," "Agreement," or "Settlement"—and enter an order that:

1. Certifies the proposed settlement class under Rule 23(b)(3);

2. Preliminarily approves the proposed settlement as fair, reasonable, and adequate;

3. Directs notice to be disseminated to class members in the form and manner proposed by the parties as set forth in the Settlement and Exhibits C and D thereto;

4. Appoints Dahl Administration LLC to serve as the Settlement Administrator; and

5. Sets a hearing date and schedule for final approval of the settlement and consideration of Class Counsel's fee application.

## II. BACKGROUND

### A. Plaintiffs and Their Claims

The Mental Health Parity Act of 1996 required group health plans to impose the same aggregate lifetime and annual dollar limits for mental health benefits that such plans imposed on medical/surgical benefits. Pub. L. No. 104-204, 110 Stat. 2874 (current version codified at 29 U.S.C. § 1185a). *See* ECF No. 46 at 3-4; ECF No. 95 at 15-18. In 2008, the Parity Act extended the "parity" requirement to "treatment limitations"—such as "limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment"—that (a) are "more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan," or (b) are "applicable only with respect to mental health . . . benefits." 29 U.S.C. § 1185a(a)(3)(A)(i), (A)(ii) & (B)(iii). A "treatment limitation" is any "limit[] on the frequency of treatment, number of visits, days of

coverage, or other similar limit[] on the scope or duration of treatment." *Id.* § 1185a(a)(3)(B)(iii).

In 2010, the three departments that administer the Parity Act (the IRS, the Department of Labor's Employee Benefits Security Administration, and the Centers for Medicare & Medicaid Services) (collectively, the "Departments") published interim final rules (the "Interim Rules"). *See* Interim Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, 75 Fed. Reg. 5410-01 (Feb. 2, 2010). The Interim Rules interpreted the term "treatment limitations" to encompass both "quantitative" and "nonquantitative" limitations. *Id.* at 5412. *See also* 29 C.F.R. § 2590.712 (amended Jan. 13, 2014).

Following the promulgation of the Interim Rules, HCSC, through its operating divisions (Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield Montana, Blue Cross and Blue Shield New Mexico, Blue Cross and Blue Shield Oklahoma, and Blue Cross and Blue Shield Texas), continued to enforce categorical exclusions of coverage for mental health treatment in RTCs in certain of its ERISA plans.[2] In 2013, the Departments published final regulations applicable to plan years beginning on or after July 1, 2014. *See* Preamble, Final Rules Under the Parity Act, 78 Fed. Reg. 68240-01 (Nov. 13, 2013) ("Final Rules"); 29 C.F.R. § 2590.712(i). Among other things, the Final Rules explicitly stated that the Parity Act prohibited any "[r]estrictions based on . . . facility type . . . that limit the scope or duration of benefits for services provided under the plan." 29 C.F.R. § 2590.712(c)(4)(ii)(H).

Plaintiffs' Second Amended Complaint alleges that before July 2014, when it came to

---

[2] HCSC has argued that this was a proper interpretation of the Parity Act and Interim Rules for a variety of reasons. *See, e.g.,* ECF No. 32, ECF No. 70.

medical/surgical conditions, HCSC applied no blanket exclusion for residential treatment—such as in skilled nursing facilities or residential rehabilitation centers—even as it enforced plan exclusions of all coverage for RTCs for mental health treatment. The Named Plaintiffs, who were both subject to HCSC's enforcement of blanket RTC exclusions,[3] brought this case as a putative class action to remedy HCSC's alleged violations of the Parity Act and ERISA. *See* ECF No. 46 (denying HCSC's first motion to dismiss); ECF No. 95 (denying in part HCSC's second motion to dismiss). They sought a declaration that HCSC violated ERISA and the Parity Act, an order requiring that HCSC reprocess their claims, and any other relief the Court might find appropriate. *See* Second Am. Compl. at 16.

### B. Procedural History

Plaintiffs asserted claims under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) and (a)(3), alleging that when HCSC denied coverage on the ground that Plaintiffs' plans contained an RTC exclusion, it violated its fiduciary duty under ERISA to comply with the Parity Act. Section (a)(1)(B) entitles a beneficiary of an ERISA-governed benefit plan to bring a civil action "[1] to recover benefits due to him under the terms of his plan, [2] to enforce his rights under the terms of the plan, or [3] to clarify his rights to future benefits under the terms of the plan."

Ms. Craft and her daughter, initially the sole plaintiffs, filed the complaint on July 30, 2014 and sought a preliminary injunction. ECF No. 1. After the motion for a preliminary injunction was resolved, HCSC filed a motion to dismiss the Complaint for failure to state a claim (ECF Nos. 31-32), which this Court denied on March 25, 2015. ECF No. 46.

---

[3] Mary Doe (Plaintiff Bryan Pautsch's daughter) was denied RTC treatment based on a plan exclusion for "[e]xpenses for . . . Residential Treatment Centers, except for Inpatient Substance Use Disorders as specifically mentioned in this benefit booklet." Ex. 3 (2014 Sikich Plan) at 78. *See also id.* at 26 (making clear the RTC exclusion applies only to mental health care). Jane Doe (plaintiff Elizabeth Craft's daughter) was denied RTC treatment based on HCSC's enforcement of a similar plan exclusion. Ex. 4 (2014 Trustwave Plan) at 27, 93.

Plaintiffs filed a First Amended Complaint on May 15, 2015. The Court denied in part and granted in part HCSC's motion to dismiss that complaint on March 31, 2016. ECF No. 95.[4] Plaintiffs filed a Second Amended Complaint (ECF No. 106), and the parties proceeded to class certification discovery. Plaintiffs filed their motion for class certification and accompanying papers on January 13, 2017. ECF Nos. 133-38. On February 22, 2017, the parties jointly moved for a stay of all case deadlines, having reached an agreement on certain material terms to resolve the case on a class-wide basis. ECF No. 140. The Court granted a stay pending the parties' finalization of the settlement terms. ECF No. 142.

## C. The Settlement

Following negotiations over a period of months, the parties reached final agreement to settle their dispute on August 16, 2017.

### 1. The Settlement Class.

The proposed settlement class is as follows:

> All individuals who, on or after July 30, 2011, have been participants in and beneficiaries of an ERISA-governed employee welfare benefit plan administered and/or insured by HCSC that provided coverage for both medical/surgical conditions and mental health conditions and who had made on their behalf or on behalf of their beneficiary pre-service and/or post-service claims for benefits for treatment of mental illness in a residential treatment center, and for which HCSC issued an adverse benefit determination denying the claims in whole or in part based on plan exclusions of coverage for residential treatment of mental illness; provided, however, that the following are excluded from the Settlement Class: (i) HCSC, any entity in which HCSC has a controlling interest, and HCSC's officers, directors, attorneys, successors, subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff; and (iii) and any other person who has previously released claims

---

[4] As to the claims in this case, the Court dismissed Plaintiffs' claim under § 1132(a)(3), finding it was duplicative of Plaintiffs' claim under § 1132(a)(1)(B), but rejected HCSC's argument that the Craft plaintiffs' claim was moot (ECF No. 95 at 8-10), and denied HCSC's motion to dismiss Plaintiffs' § 1132(a)(1)(B) claim. *Id.*

against HCSC that would otherwise be released pursuant to this Settlement Agreement.

### 2. The Settlement Fund and Plan of Allocation.

The Agreement requires that HCSC pay $5.25 million into a qualified settlement fund (the "Settlement Fund") according to the schedule in paragraph 2 of the Agreement. The Agreement provides for an incremental increase to the Settlement Fund if additional class members not included in the HCSC Request Data, as defined in the Agreement, are identified before the final approval hearing.

The Plan of Allocation, attached as Exhibit E to the Agreement, provides that, after payment of settlement administration costs, attorneys' fees and expenses, and class representative service awards, each Participating Settlement Class Member (*i.e.*, all class members who do not opt out) will be allocated a share of the Net Settlement Fund based on the greater of that person's "Adjusted Treatment Days," which will be the greater of:

(i)   20 days ("Base Treatment Days");

(ii)  for persons who received mental health residential treatment and submitted a post-service claim for reimbursement to HCSC, the number of eligible non-overlapping days for which he or she received mental health residential treatment, **as computed from the claims data that HCSC maintains** in the ordinary course of its business (counting each day only once in the case of overlapping claims), as shown on a "Claims Data Sheet" that will accompany the Class Notice; or

(iii) for Participating Class Members who believe the data reflected on the Claims Data Sheet understates the number of days that he/she (or his/her beneficiary) received mental health residential treatment during the Class Period, the number of treatment days shown on that person's Claims Data Sheet plus the verified number of *non-overlapping* treatment days, as determined through **supplemental documentation provided by the Participating Settlement Class Member.**

The Adjusted Treatment Days will be used to compute a percentage share of the Net Settlement Fund for every Settlement Class Member who does not opt out of the Settlement. Specifically, each member's percentage will be computed by dividing that member's Adjusted

Treatment Days by the total number of treatment days for all Participating Settlement Class Members. That percentage will then be multiplied by the amount of the Net Settlement Fund to determine each member's share of the fund.

3.  Class Notice and Settlement Administration

The parties have retained Dahl Administration to serve as the Settlement Administrator, subject to Court approval. The Settlement Administrator will mail notices of settlement ("Notice of Settlement") to all class members. *See* Agmt. § VII. In addition, the Settlement Administrator will send Notice of Settlement via email to all class members for whom HCSC has an email address. Finally, the Settlement Administrator will maintain a website dedicated to the Settlement which will contain the Notice of Settlement and other pertinent information concerning this action and the Settlement. The proposed Notice of Settlement is attached as Exhibit C to the Settlement Agreement. The Notice of Settlement will inform Class Members of their right to opt out of the settlement or object to its terms.[5]

4.  Service Awards

Plaintiffs will separately petition the Court to award each of the Class Representatives up to $15,000 each from the Settlement Fund in recognition of the time, effort, expense, and public exposure they incurred pursuing claims that ultimately benefited the entire class. HCSC has agreed not to oppose any such application. *See infra* § IV.B.

5.  Attorneys' Fees

Plaintiffs will also separately petition for an award of attorneys' fees and reimbursement of litigation expenses from the Settlement Fund. Plaintiffs will not seek more than thirty percent

---

[5] The parties agreed to standard termination provisions, including a provision allowing HCSC to terminate the Settlement Agreement in the event certain thresholds are exceeded for class members who opt out of the settlement. *See generally* Agmt. § IX.

of the gross settlement fund for counsel fees, Agmt. ¶ 6—an allocation consistent with market rates and Seventh Circuit precedents involving common funds (or portions of funds) up to $10 million. *See infra* § IV.C (reviewing precedents). HCSC has agreed not to oppose Plaintiffs' application.

6.   <u>Residual Distribution</u>

The Plan of Allocation (Exhibit E to the Settlement Agreement) also provides a procedure in the event some number of Participating Class Members does not cash the settlement checks issued to them. If the Settlement Administrator makes two attempts to make a distribution to a Participating Settlement Class Member and it is not reasonably possible to complete the distribution of that member's share of the Net Settlement Fund, then the Participating Settlement Class Member's share shall be set aside into a Residual Settlement Fund. If the Residual Settlement Fund exceeds $15,000, the Settlement Administrator will distribute pro rata the remainder to those Participating Settlement Class Members for whom distributions were completed. If the Residual Settlement Fund is $15,000 or less, the Settlement Administrator will distribute the remainder to National Alliance on Mental Illness.

7.   <u>Release</u>

In exchange for the benefits provided under the Settlement, Class Representatives and Participating Class Members will release:

> any claim, liability, right, demand, suit, obligation, damage, including consequential damages, losses or costs, punitive damages, attorneys' fees and costs, actions or causes of action, of every kind or description—whether known or unknown (including "Unknown Claims" is defined herein), suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, legal, statutory, or equitable—related to or arising out of (i) the facts alleged in the Action concerning treatment at, or the availability of benefits or coverage for treatment at, an RTC during the Class Period; (ii) pre-service and/or post-service claims for benefits for treatment of mental illness in an RTC, and for which HCSC issued an adverse

8

> benefit determination denying the claims in whole or in part based on plan exclusions of coverage for residential treatment of mental illness; and (iii) the pre-service and post-service claims identified in the Request Data.

Agmt. § 1.s (defining "Released Claims").  *See also id.* § 1.t (defining "Released Parties") and § 1.u (defining "Releasing Parties").

## III.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS.

The Settlement Agreement provides for Plaintiffs to seek conditional certification of a proposed Settlement Class, in accordance with Rule 23(c).  Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 597 (1997).  First, the plaintiff must satisfy the requirements of Rule 23(a).  *Id.* at 614.  Second, the plaintiff must show that the Class meets one of the prongs of Rule 23(b).  *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011).  Finally, the plaintiff must show that the class is "identifiable" as a class, *i.e.*, that the class definitions are definite enough that the class can be ascertained.  *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).

### A.    Plaintiffs Satisfy The Requirements Of Rule 23(a).

Plaintiffs have satisfied the requirements of Rule 23(a) of numerosity, commonality and adequacy.  *See Amchem*, 521 U.S. at 613; *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373-74 (7th Cir. 2015).

#### 1.    The Numerosity Requirement Is Satisfied.

HCSC has produced Request Data that identifies 313 unique plan participants or beneficiaries who had their pre-service or post-service claims for RTC coverage denied based upon an RTC exclusion.

2.      There Are Questions Of Fact And Law Common To The Settlement Class.

The "commonality" requirement is satisfied so long as all class members have claims based on a "common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[T]he common question presented by a prospective class of plaintiffs need not resolve every issue in the case." *Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541, 551 (7th Cir. 2016).  The "common contention" must, however, "be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. "[E]ven a single common question will do." *Id.* at 359 (alterations and citations omitted).

The claims of all putative members of the Settlement Class, including Mr. Pautsch and Ms. Craft, turn on the following common questions, among others: (1) whether the putative Class's ERISA-governed benefit plans' exclusions of coverage for residential treatment of mental illness violated the Parity Act, and (2) whether HCSC's enforcement of those exclusions with respect to the putative Class violated ERISA.  The answer to each of these questions would be the same for every Settlement Class Member, and would rest on common proof that does not depend upon the individual circumstances of any Settlement Class Member.

Rule 23(a)(2) is satisfied in light of these common questions.  *See A.F. ex rel. Legaard v. Providence Health Plan*, 300 F.R.D. 474, 477, 481 (D. Or. 2013) (certifying a class of persons who were denied treatment based on a plan exclusion of a particular treatment for autism because, among other reasons, "all class members have in common the issue of whether the [exclusion] violates state or federal law").

3.      The Named Plaintiffs' Claims Are Typical Of The Claims Of The Class.

"The question of typicality in Rule 23(a)(3) is closely related to the preceding question of commonality."  *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).  A named plaintiff's

claim is "typical" if it (1) "arises from the same event or practice or course of conduct that gives rise to the claims of other class members," and/or (2) is "based on the same legal theory." *Id. See also De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) ("The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact."). The Named Plaintiffs' claim satisfies both requirements.

**First**, the claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members"—HCSC's enforcement of the RTC exclusions. Moreover, with respect to the members of the putative Class, HCSC applied plan exclusions of coverage for mental health residential treatment, and those exclusions were in whole or in part the reason putative Class members' claims were denied. As set forth above, the same facts are true with respect to the Named Plaintiffs. *See* § II.A, *supra*.

**Second**, the Named Plaintiffs' claims are "based on the same legal theory" as the Class's claim, namely that by enforcing a blanket exclusion of coverage of all mental health treatment at a particular level of care—residential treatment—HCSC violated the Parity Act. ECF No. 46 at 9-10; ECF No. 95 at 19-20. Plaintiffs further claim that by enforcing the RTC exclusions to deny coverage for the Class members, HCSC breached its fiduciary duties and thereby violated ERISA. *See Rosario*, 963 F.2d at 1018.

4.    <u>The Named Plaintiffs And Their Counsel Fairly And Adequately<br>Represent The Interests Of Putative Class Members.</u>

The "adequacy" requirement of Rule 23(a)(4) is satisfied so long as (a) there are no fundamental "conflicts of interest between named parties and the class they seek to represent," *Amchem*, 521 U.S. at 625, and (b) plaintiffs are represented by qualified and competent counsel.

*See also* 1 William Rubenstein et al., *Newberg on Class Actions* § 3:58 at 341-42 (5th ed. 2011) (explaining that only "fundamental" conflicts that "go to the heart of the litigation" render a class representative inadequate).

**The Named Plaintiffs**. Plaintiffs' interests are fully aligned with those of the proposed Class. All Settlement Class members, including the Named Plaintiffs, share an interest in establishing that HCSC's enforcement of the categorical RTC exclusions in their ERISA-governed plans violated the Parity Act, and in obtaining appropriate relief.

**Class Counsel**. Plaintiffs request that Zuckerman Spaeder LLP (Brian Hufford, Jason Cowart, Martin Himeles and Daniel Moylan), Psych-Appeal, Inc. (Meiram Bendat), and Miner, Barnhill & Galland, PC (George Galland) be appointed as Settlement Class Counsel. Counsel are experienced class action attorneys who are amply qualified to serve as class counsel. The lawyers from Zuckerman Spaeder LLP, including Mr. Hufford and Mr. Cowart, have successfully prosecuted numerous nationwide class actions against insurance companies for violations of ERISA and related federal and state laws. Among their successes were two of the largest recoveries ever obtained in health insurance class actions: a $350 million settlement against United Healthcare and a $250 million settlement against Health Net. Ex. 2 (attorney biographies). Meiram Bendat, J.D., Ph.D., the Founder and President of Psych-Appeal, Inc., has extensive experience in class action litigation against insurers, and specializes in cases involving mental health-related insurance benefit denials. *Id.* Several of the proposed Class Counsel at Zuckerman Spaeder LLP and Psych-Appeal, Inc. represent three recently certified classes in ERISA cases pending in the Northern District of California involving denials of mental health care coverage by United Behavioral Health ("UBH"). *See Wit v. United Behavioral Health*, 317 F.R.D. 106, 120 (N.D. Cal. 2016).

### B.   The Settlement Class Should Be Certified Under Rule 23(b)(3).

A class may be certified under Rule 23(b)(3) if "questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

**Predominance**.   Plaintiffs need establish only that questions common to the class predominate; they need not "prove that the predominating question will be answered in [their] favor." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459, 468 (2013).   "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.   "Predominance is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016) (alterations and internal quotation marks omitted).   As shown above, the claims of Settlement Class members all rest on common questions that are susceptible to proof by common evidence.   In addition, all Settlement Class members seek the same relief, and their entitlement to such relief does not depend on individualized issues.

**Superiority**.   The proposed Settlement Class also satisfies the superiority requirement because the "class action is superior to other available methods of resolving the controversy." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).   *See also* 7AA Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure § 1779 at 174 (3d ed. 2005).   The factors that determine whether class treatment is superior to other methods of adjudication include (a) the interest of class members in individually controlling the prosecution of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in managing a

13

class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

Each of these factors favors certification here. The interest of class members in controlling the prosecution is limited or nonexistent in view of the substantial monetary relief available under the settlement, in view of the considerable risks, costs, and uncertainties involved in pursuing an administrative reprocessing remedy as part of separate proceedings that could take years to run their full course. Certifying the settlement class will concentrate the claims of class members in this Court for purposes of evaluating the settlement's fairness and adequacy, and is unlikely to raise unusual management issues during the notice period or at the fairness hearing.

The overriding common issues would allow this case to be resolved efficiently in this Court. Certification of the Settlement Class, therefore, would best serve the interests of both the individual Class members and judicial economy.

### C. The Settlement Class is Ascertainable.

Although it is not specifically mentioned in Rule 23, the Seventh Circuit requires, at least for non-settlement classes, that a class "be defined clearly and that membership be defined by objective criteria rather than by, for example, a class member's state of mind." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). Here, regardless of whether such a showing is required, the composition of the Settlement Class is objectively ascertainable from HCSC's records. HCSC maintains records of pre-service and post-service claims for residential treatment benefits for mental illness. Accordingly, all of the information necessary to determine whether an individual is in the Settlement Class is contained in records in HCSC's possession.

## IV. THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL.

### A. Legal Standards for Preliminary Approval.

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir. 1996). At the preliminary approval stage, a district court's review of a class action settlement proposal poses two questions: (1) whether the class may be certified under Rule 23, and (2) whether the proposed settlement is "within the range of possible approval." *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 588 (N.D. Ill. 2016). In evaluating a proposed settlement of a class action, a district court must "consider whether the settlement is fair, adequate, and reasonable, and not a product of collusion." *Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745, 748 (7th Cir. 2006) (internal citation omitted). At this initial state, however, the court need not resolve the merits of the controversy or make a precise determination regarding the parties' respective legal rights, and this is why courts at this stage perform a summary version of the exhaustive final fairness inquiry. *In re Nat'l Collegiate Athletic Ass'n*, 314 F.R.D. at 588. Balancing the fairness factors in a summary fashion is appropriate on preliminary approval. *Id.* at 603.

In evaluating the strength of the plaintiffs' case compared to the value of the settlement, district courts generally "quantify the net expected value of continued litigation to the class, since a settlement for less than that value would not be adequate," *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284-85 (7th Cir. 2002), and also take into account the circumstances surrounding the settlement in deciding whether it is reasonable. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) (no abuse of discretion where district court approved proposed settlement without quantifying net expected value of continued litigation because proposed settlement was "reached through extensive arm's-length negotiations with an

experienced third-party mediator, the parties contentiously litigated a motion to dismiss, and the district court considered the other factors").  If the court determines that the settlement is within the range of possible approval, it proceeds to a fairness hearing, notifying the class members of the proposed settlement and of the hearing, at which they and any interested parties have an opportunity to be heard.  *Id*.

1.    The Settlement Is the Product of Arms-Length Negotiations.

The parties here agreed on a proposed resolution after months of arms-length negotiations.  Both sides had substantial information about the relevant facts and law that enabled them to evaluate the strengths and weaknesses of their respective cases.  HCSC provided data about the size and characteristics of the putative class.  Plaintiffs' counsel analyzed the data and requested additional information, which HCSC provided together with updated Request Data.  The parties evaluated the potential values and risk factors associated with their respective claims and defenses, which allowed them to identify a range of potential outcomes.  In February 2017, the parties reached tentative agreement on certain important terms of the settlement.  The parties thereafter exchanged multiple drafts of the settlement agreement and related papers.

2.    Further Litigation Would Be Complex, Lengthy and Uncertain.

Plaintiffs believe they had a substantial prospect of success at the class certification stage and on the merits.  But they recognize that HCSC raised substantial defenses, denied liability, and could have taken at least one appeal on how the Parity Act and the Interim Final Rules should be interpreted and applied to its practices, and whether a finding of liability would have violated its due process rights.  In addition, Plaintiffs and HCSC recognize that the principal remedy for Plaintiffs and the Class, if certified, would have been claim reprocessing, which would involve further administrative processes.  It is uncertain how few or many such claims might have been approved upon reprocessing: class members' claims may have ultimately been

denied for other reasons, such as lack of medical necessity. Such denials can be appealed, but such proceedings add delay and may be unsuccessful. The settlement will avoid the significant costs, delays, risks, and complications of further legal and/or administrative proceedings.

3. Plaintiffs and Class Counsel Recommend the Settlement.

Class Counsel, having litigated numerous similar cases involving ERISA claims, regard the settlement as fair and reasonable to the Class, and Plaintiffs concur. Class Counsel view the substantial payments contemplated under this settlement as a superior outcome for Class Members. Distributions to each class member from the net settlement fund are currently estimated to start from a base of several thousand dollars, and for some class members they will be substantially higher, in proportion to the number of days for which each Class Member sought coverage of residential treatment during the class period.

4. The Allocation Plan Is Fair to All Members.

Counsel for the parties focused on the allocation model to ensure it fairly accommodates the interests of all class members, particularly given that some class members paid out of pocket for residential treatment when coverage was denied, and others had to forego residential treatment.

The plan is for allocations to be proportionate to the varying durations of RTC stays for which coverage was claimed by members during the class period, with a minimum allocation based on a stay of 20 days. A flat distribution amount to every class member would have been arbitrary and inequitable. Where members or their dependents were prescribed and received relatively longer RTC stays, this indicated a heightened need for services and thus a greater therapeutic impact (and expense) from the exclusion. And some members may have been unable to afford RTC services out of pocket. To account for this, the settlement sets the base number of treatment days used to compute members' proportionate share of the net fund.

17

In addition, some members may have paid out of pocket for RTC stays that are not captured in HCSC's Request Data—for example, if members did not submit follow-up claims or documentation about RTC stays, believing this to be fruitless in view of the RTC exclusion.  To address this, members have the option to submit documentation showing that they received treatment at accredited RTCs on dates not captured in HCSC's Request Data, to the extent they received that treatment within the period when HCSC applied the exclusion.  Allowing members to document RTC stays within the class period will more accurately reflect therapeutic needs of the patients and the corresponding impact of the exclusion.

In short, the parties and counsel applied considerable thought and effort to design a distribution model that approximates therapeutic impact using the best available data.  The model is fair and equitable to all members.

### B. The Incentive Awards to Plaintiffs Are Fair and Justified by Their Significant Personal Efforts To Secure Relief Benefiting the Class.

Plaintiff Elizabeth Craft initiated this action on behalf of her daughter, herself and the class, and immediately filed a motion for preliminary injunction challenging HCSC's denial of RTC benefits based upon the exclusion.  She worked closely with Plaintiffs' counsel to tell her daughter's story.  It took uncommon bravery for Ms. Craft and her daughter to share their struggles in a public forum.  Plaintiff Bryan Pautsch joined this action and likewise shared the story of his own daughter, Mary Doe.

Ms. Craft and Mr. Pautsch have spent considerable time with counsel throughout these proceedings, including by sharing information necessary to pursue their claims, providing medical information and claim documentation, receiving periodic updates regarding the status of proceedings, planning for potential depositions, engaging actively in discussions related to settlement, and reviewing pleadings and settlement papers.

The time commitment alone does not capture the full demands of this litigation on the Plaintiffs and their families. Ms. Craft and Mr. Pautsch and their family members, who pursued their claims even as they were confronting serious and intensely personal struggles with mental illness, incurred significant emotional demands. Many families confronting such challenges would understandably avoid sharing such sensitive information about their loved ones. Plaintiffs instead made the courageous decision to tell their stories publicly—a decision that has contributed to significant relief for the class.

The settlement provides that, subject to this Court's approval, HCSC will not oppose a request for incentive awards of up to $15,000 for each of the Plaintiffs. These awards are within the normal range of incentive awards in similar class actions in the Seventh Circuit, and are justified given the significant emotional demands and time investment involved for each family. In *Cook v. Niedert*, the Seventh Circuit laid out the standard for determining the reasonableness of an incentive award. 142 F.3d 1004, 1016 (7th Cir. 1998). When deciding whether an incentive award is reasonable, courts consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* The Seventh Circuit in *Cook* affirmed an incentive award of $25,000 to the class representative in part because his efforts spending many hours with his attorneys and providing them with an abundance of information led to a $13 million cash recovery for the class. *Id.*

District courts have followed the example in *Cook*, approving similar incentive awards in similar class actions. *See Craftwood Lumber Co. v. Interline Brands, Inc.*, Case No. 11-cv-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) (finding an incentive award of $25,000 to the class representative reasonable and in line with incentive fees awarded by other courts in the

district and the mean percentage of incentive fees awarded in class actions nationwide); *Heekin v. Anthem, Inc.*, No. 1:05-cv-01908-TWP-TAB, 2012 WL 5878032, at *1 (S.D. Ind. Nov. 20, 2012) (authorizing the payment of a $25,000 incentive award to each of the two named plaintiffs); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, Nos. 07 CV 2898, 09 C 2026, 2012 WL 651727, at *16-17 (N.D. Ill. Feb. 28, 2012) (concluding that incentive awards of $25,000 for each of seven named plaintiffs was warranted because they bore unique costs in the form of threats and loss of reputation, and the total amount of the incentive award was below the mean incentive fee awarded in complex commercial class actions and amounted to a lower percentage of the settlement fund than incentive fees awarded in this circuit).

### C.    A Counsel Fee of Thirty Percent Is Reasonable and Consistent with Precedents in the Seventh Circuit.

For common fund settlements in ERISA and other complex federal class actions, courts in the Seventh Circuit have often recognized fees of thirty percent or more as consistent with market rates and reasonable for common funds (or fund portions) up to $10 million.  *See, e.g., Spano v. Boeing Co.*, Case No. 06-CV-743-NJR-DGW, 2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) (summarizing legal principles and factual circumstances relevant to ERISA common fund settlements; citing precedents for proposition that "[a] one-third fee is consistent with the market rate in settlements concerning this particularly complex area of law"; recognizing lodestar cross-check as disfavored, although citing precedents in which courts had considered multipliers of between 2 and 5 as appropriate).  In *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501-02 (N.D. Ill. 2015) (Kennelly, J.), the court explained:

> [A] thirty percent fee award is not unusual in the Seventh Circuit in common fund cases in which recovery is less than $10 million. *See, e.g., Taubenfeld* [*v. Aon Corp.*, 415 F.3d 597, 598-600 (7th Cir. 2005)] (holding that district court was within its discretion in awarding lead counsel 30% of a $7.25 million settlement fund); . . . *Bridgeview Health Care Ctr., Ltd. v. Jerryclark*, No. 09 C 5601,

20

2015 WL 4498741, at *2 (N.D. Ill. July 23, 2015) [(Valdez, Mag. J.)] (awarding one-third of common fund in TCPA class action); *Saf–T–Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) [(Bucklo, J.)] (awarding one-third of common fund in [$3.5 million] TCPA class action). And even though common fund cases in which plaintiffs recover more than $10 million are not perfectly analogous, the fact that courts in this circuit regularly allow attorneys to recoup one-third of the first $10 million of the class action settlement fund is, at the very least, instructive. *See, e.g., [In re Synthroid Mktg. Litig.*, 325 F.3d 974, 980 (7th Cir. 2003)] ("We . . . give consumer class counsel 30% of the first $10 million . . . ."); *Craftwood Lumber Co. v. Interline Brands, Inc*., No. 11 C 4462, 2015 WL 1399367, at *4 (N.D. Ill. Mar. 23, 2015) (awarding plaintiffs' counsel a sliding scale contingency fee including thirty percent of the first ten million dollars of the settlement; [*In re Capital One Tel. Consumer Prot. Act Litig*., 80 F. Supp. 3d 781, 804-05 (N.D. Ill .2015)] (finding that before considering possible risk adjustments, 30% is the reasonable base market rate for the first $10 million of recovery); [*Wilkins v. HSBC Bank Nev., N.A.*, No. 14 C 190, 2015 WL 890566, at *10 (N.D. Ill. Feb. 27, 2015)] (same).

*See generally Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 562-64 (7th Cir. 1994) (recognizing that common fund principles applied where parties' agreement to settle ERISA action included a provision that plaintiffs would seek counsel fees from the fund, and released defendants from statutory fee-shifting liability apart from the common fund). Moreover, the Seventh Circuit in *Florin* cited the advantages of common fund settlements, including their relative ease of administration for the court and parties. *See id.* at 566.

The proposed fee allocation is justified by the legal and factual uncertainties involved in advancing novel claims under the Parity Act, which yielded substantial relief for the class.

**D.**     **The Settlement Falls Within the Range of Possible Approval.**

The settlement affords the prospect of substantial relief to the class. Based upon the currently available data from HCSC, the Settlement Class is expected to recover approximately 33% of aggregate visit-level charges. Moreover, this percentage assumes a potential reimbursement of every dollar of visit-level charges claimed by class members. Even in the

21

event of claim reprocessing, claims may be denied or limited on other grounds, such as lack of medical necessity, which, if appealed by a claimant, would require further administrative and/or court proceedings in which the claimant may or may not have prevailed. Even for approved claims, the amounts actually reimbursed by HCSC would often be lower than the total visit-level charges incurred by subscribers. The benefits could be subject to further reductions, depending upon subscribers' plans, to account for factors such as coinsurance and deductibles. Therefore, the effective rate of recovery under the settlement is a substantially higher percentage than this estimate of 33% suggests.

Although this is not a damages case, a recovery of this magnitude compares favorably to other cases, and is certainly within the range of possible approval. *Cf. Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 227-28 (N.D. Ill. 2016) (approving recovery of approximately 10% of the maximum (non-trebled) damages award under TCPA, where each claimant stood to recover approximately $52.50, and citing similar approved settlements) (Feinerman, J.); *In re Syncor ERISA Litig.*, No. 2:03cv-02446 (RGK) (RCx), ECF No. 309 (C.D. Cal. Oct. 22, 2008) & ECF No. 300 (Sept. 29, 2008) at 9 (8.7% of maximum damages); *In re Fremont Gen. Corp. Litig.*, No. 2:07-cv-02693 (JHN) (FFMx), ECF No. 277 at 10 (C.D. Cal. July 11, 2011) & ECF No. 286 (Aug. 10, 2011) (10.8% of maximum losses); *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 463 (D. Md. 2014) (3.2% of maximum damages, with an average of $180 per class member); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011) (24.3% of maximum damages); *Mehling v. N.Y. Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (20% recovery); *In re WorldCom, Inc. ERISA Litig.*, No. 02 Civ. 4816 (DLC), 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (7% of maximum damages).

## V.   THE NOTICE PLAN SATISFIES RULE 23.

Rule 23(e) requires that the Court direct that notice be given to class members who would

be bound by the Settlement "in a reasonable manner." Notice to a Rule 23(b)(3) class must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Plaintiffs' proposed notice plan is attached as Exhibit D to the Settlement Agreement. The settlement class involves a definite group of members and is limited to approximately 310 unique subscribers. HCSC will provide the Settlement Administrator, no later than five (5) business days after the date on which the Court enters the Preliminary Approval Order, the (i) names, (ii) last known mailing addresses, and (iii) if available, email addresses, of the Settlement Class Members. *Id.* Meanwhile, the Settlement Administrator will generate Claims Data Sheets that show: (1) the date range in HCSC's claims data for each RTC claim that each Settlement Class Member made during the Class Period and a computed number of non-overlapping treatment days, or (2) the base treatment day figure described above. *Id.*

No later than fifteen (15) calendar days after entry of the Preliminary Approval Order, Notice will issue to the Class members in the following manner:

1. <u>By direct mail</u>. The Settlement Administrator will update all addresses provided by HCSC using the National Address Change Registry and other resources. The Settlement Administrator will then send the approved Notices to all Settlement Class Members. If any Notices are returned due to an invalid address, the Settlement Administrator will conduct additional searches to attempt to obtain a valid address and re-send the Notice.

2. <u>By email</u>. Where HCSC possesses an email address for a Settlement Class Member, the Settlement Administrator will also email Notice to that Settlement Class Member.

3. <u>By limited publication</u>.

   a. Class Counsel will post the Notice on their respective law firms' websites.

   b. The Settlement Administrator will maintain a Website with information about the Settlement, which will contain the Notice. The Website will also contain the following pleadings:

        i.   The operative Complaint and Answer;

       ii.   The Court's Order Granting Preliminary Settlement Approval; and

     iii.   A schedule showing upcoming Court deadlines.

To exclude themselves from the Class, Class members will be required to post-mark a written opt-out notice within forty-five (45) calendar days of when Notice is mailed.

The proposed Notice Plan, which contemplates that the Notice will be mailed directly to all Class members, with multiple efforts made to ensure each Class member receives notice, satisfies these requirements. Indeed, due process is satisfied even if all Class members do not actually receive the notice, so long as class counsel made a reasonable effort to reach all Class members. *See, e.g*., *Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc*., 271 F.R.D. 139, 144 (N.D. Ill. 2010) ("Direct notice is indeed ideal, but the requirement of 'personal notice' does not mean that each individual who is potentially a member of the class must receive actual notice of the class action.").[6]

## VI.   PROPOSED SCHEDULE

Plaintiffs propose the following schedule for the period leading up to the fairness hearing at which the court will consider whether to grant final approval to the proposed Settlement.

| TIMING | EVENT |
|--------|-------|
| Day 1 | Order granting preliminary approval |
| Day 15 | Last day to send settlement class notice |
| Day 60 | Last day for class members to opt out or object to Settlement |

[6] The Settlement Administrator will send the Notice of Settlement to all class members, maintain a website dedicated to the Settlement, and manage all aspects of claims administration. *See* Agmt. § VI. Dahl is a nationally-recognized leader in class action settlement administration that has provided claims administration services and class notice services for class actions involving consumer rights, securities, product liability, fraud, property, employment, and discrimination since 2008. It is a full-service organization, providing customized class action administration, direct and media notice, claims processing, accounting, quality control review, and distribution management. Plaintiffs request that the Court approve the parties' selection of Dahl as Settlement Administrator and authorize payment of Dahl from the Settlement Fund in accordance with the Settlement Agreement.

| Day 75 | Last day for Plaintiffs to file a motion for final approval of the Settlement and to respond to objections |
| Day 90+ | Final settlement approval hearing |

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the accompanying Proposed Order certifying the proposed settlement class; granting preliminary approval of the proposed settlement; appointing Zuckerman Spaeder LLP (Brian Hufford, Jason Cowart, Martin Himeles and Daniel Moylan), Psych-Appeal, Inc. (Meiram Bendat), and Miner, Barnhill & Galland, P.C. (George Galland) as Class Counsel; appointing Bryan Pautsch and Elizabeth Craft as the Settlement Class Representatives; directing dissemination of notice to the class pursuant to the proposed notice plan; appointing a Settlement Administrator for the dissemination of notice and establishment of a Settlement Fund; and setting a schedule for final approval and related deadlines.

Dated: August 18, 2017

Respectfully submitted,

s/ Martin S. Himeles, Jr.

D. Brian Hufford (*pro hac vice*)
Jason S. Cowart (*pro hac vice*)
Zuckerman Spaeder LLP
399 Park Avenue, 14th Floor
New York, NY 10022
(212) 704-9600

Caroline E. Reynolds (*pro hac vice*)
Zuckerman Spaeder LLP
1800 M Street NW, Suite 1000
Washington, DC 20036
(202) 778-1800

Meiram Bendat (*pro hac vice*)
Psych-Appeal, Inc.
8560 W. Sunset Blvd., Ste. 500
West Hollywood, CA 90069
(310) 598-3690, ext. 101

Martin S. Himeles, Jr. (*pro hac vice*)
Daniel P. Moylan (*pro hac vice*)
Adam Abelson (*pro hac vice*)
Zuckerman Spaeder LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
(410) 332-0444

George F. Galland, Jr.
Scott A. Entin
Miner, Barnhill & Galland, P.C.
14 W. Erie St.
Chicago, IL 60654
(312) 571-1170

*Counsel for Plaintiffs and the Putative Class*

25