UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH A. CRAFT; JANE DOE, by her next friend and parent, ELIZABETH A. CRAFT; BRYAN L. PAUTSCH; MARY DOE, by her next friend and parent, BRYAN L. PAUTSCH; on their own behalf and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> HEALTH CARE SERVICE CORPORATION, <br><br> Defendant. | Case No. 14-cv-5853 <br><br> Hon. Virginia M. Kendall |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS'
<u>FEES, EXPENSES, AND INCENTIVE AWARDS</u>**

6229474.1

**TABLE OF CONTENTS**

**INTRODUCTION** ................................................................................................................. 1

**BACKGROUND** .................................................................................................................. 2

**FEES AND EXPENSES REQUESTED** ............................................................................. 3

**ARGUMENT** ....................................................................................................................... 4

    **I. LEGAL STANDARDS** ........................................................................................ 4

    **II. A FEE AWARD EQUAL TO THIRTY PERCENT OF THE COMMON FUND IS FAIR AND REASONABLE IN THIS CASE.** .............................................. 8

        **A. The Requested Fees are Within the Market Range that Has Been Found Reasonable in Common Fund Cases in this Circuit.** ........................................... 8

        **B. Class Counsel Risked Nonpayment and Litigated the Case on Full Contingency.** ................................................................................................ 11

        **C. Class Counsel Performed Substantial Work in Securing Significant Monetary Benefits for the Class.** ............................................................... 13

        **D. Class Counsel Faced Significant Risks in Litigating this Complex, and Potentially Lengthy and Expensive, Case Through Class Certification and Trial.** ........................................................................................................ 14

        **E. A Lodestar Cross-Check, Although Disfavored by Courts in the Seventh Circuit, Nevertheless Confirms the Reasonableness of This Fee Award.** ........ 15

    **III. THE COURT SHOULD AWARD CLASS COUNSEL THEIR OUT-OF-POCKET EXPENSES.** ............................................................................... 17

**CONCLUSION** ................................................................................................. 19

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                                                            **Page No(s).**

*Alyeska Pipeline Service Co. v. Wilderness Society*,
   421 U.S. 240 (1975) .................................................................................................... 7

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*,
   No. 00-584-DRH, 2004 WL 287902, *2 (S.D. Ill. Jan. 22, 2004) ............................. 9

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ............................................................................................. 4, 14

*Cook v. Niedert,*
   142 F.3d 1004 (7th Cir. 1998) .................................................................................. 16

*Florin v. Nationsbank*,
   34 F.3d 560, (7th Cir. 1994) (*Florin I*) ............................................................ 4, 7, 12

*Florin v. Nation's Bank of GA, NA*,
   60 F.3d 1245, 1247 (7th Cir. 1995) (*Florin II*) ........................................................ 11

*Gaskill v. Gordon*,
   160 F.3d 361 (7th Cir. 1998) ................................................................................ 6, 10

*Goldsmith v. Tech. Solutions Co.*,
   No. 92 C 4374, 1995 WL 17009594, at *7–9 (N.D. Ill. Oct. 10, 1995) .................. 10

*Harman v. Lyphomed, Inc.,*
   945 F.2d 969, 975 (7th Cir. 1991) ............................................................................ 16

*In re Cont'l Ill. Sec. Litig.,*
   962 F.2d 566 (7th Cir. 1992), ..................................................................................... 5

*In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*,
   80 F. Supp. 3d 838 (N.D. Ill. 2015) ................................................................. *passim*

*In re Lawnmower Engine Horsepower Mtkg. & Sales Practices Litig.,*
   733 F. Supp. 2d 997, 1015 (E.D. Wis. 2010) ............................................................ 8

*In re Synthroid Marketing Litig.*,
   264 F.3d 712 (7th Cir. 2001) (*Synthroid I*) .......................................................... 5, 15

*In re Synthroid Mktg. Litig.,*
   325 F.3d 974 (7th Cir. 2003) (*Synthroid II*) ............................................................ 10

*In re Trans Union Corp. Privacy Litig.*,
    629 F.3d 741 (7th Cir. 2011) ............................................................................................ 12

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015) ....................................................................................... 10

*McKinnie v. JP Morgan Chase Bank, N.A.*,
    678 F. Supp. 2d 806 (E.D. Wis. 2009) ............................................................................... 6

*Meyenburg v. Exxon Mobil Corp.*,
    3:05-cv-15-DGW, 2006 WL 2191422, *2 (S.D. Ill. July 31, 2006) .................................. 9

*Montgomery v. Aetna Plywood, Inc.*,
    231 F.3d 399 (7th Cir. 2000) ............................................................................................. 5

*Silverman v. Motorola Solutions, Inc.*,
    739 F.3d 956, 958 (7th Cir. 2013) ................................................................................... 12

*Spano v. Boeing Co.*,
    2016 WL 3791123, at *2 (S.D. Ill. Mar. 31, 2016) ............................................. 7, 12, 16

*Spano v. Boeing Co.*,
    Case No. 06-CV-743-NJR-DGW, 2016 WL 3791123, at *1 (S.D. Ill. Mar. 31, 2016) ............. 4

*Sutton v. Bernard*,
    504 F.3d 688, 694 (7th Cir. 2007) ................................................................................... 11

*Travelers Property Cas. v. Good*,
    689 F.3d 714, 722 (7th Cir. 2012) ..................................................................................... 6

*Will v. Gen. Dynamics Corp.*,
    No. 06–698–GPM, 2010 WL 4818174, *2 (S.D. Ill. Nov. 22, 2010) ................................ 9

**RULES**

Fed. R. Civ. P. 23(h) ................................................................................................................. 4

Plaintiffs Elizabeth A. Craft and Bryan L. Pautsch, on behalf of their family members and the settlement class provisionally certified by the Court (the "Class"), respectfully submit this memorandum in support of their motion for attorneys' fees and expenses and for incentive awards.

Defendant Health Care Service Corporation ("HCSC") does not oppose Plaintiffs' request for an award of attorneys' fees and costs up to 30% of the Settlement Fund. HCSC also does not oppose Plaintiffs' request for incentive awards up to $15,000 per Settlement Class Representative.[1]

## INTRODUCTION

Zuckerman Spaeder LLP, Psych-Appeal, Inc., and Miner, Barnhill & Galland, P.C. (together, "Class Counsel") prosecuted this action to achieve a very favorable result for the Class. Class Counsel secured significant monetary relief for members of ERISA health plans administered by Defendant Health Care Service Corporation ("HCSC"). The members' claims for insurance coverage for mental health treatment in residential treatment centers ("RTCs") were denied due to HCSC's application of categorical exclusions of such benefits ("RTC exclusions"). As part of the settlement, HCSC has agreed to create a common settlement fund of $5.25 million (the "Settlement Fund"). Based upon the currently available data from HCSC, the Settlement Class Members who submitted claims for residential treatment received are expected to recover approximately 33% of aggregate visit-level charges. The effective rate of recovery is substantially higher when considering that this percentage assumes a potential reimbursement of every dollar of visit-level charges claimed by class members, while amounts actually reimbursed by HCSC through claim reprocessing could be denied, limited, or subject to reduction, making

---

[1] Capitalized terms not otherwise defined in this memorandum have the same meaning as in the parties' Settlement Agreement, ECF No. 148-1.

6229474.1

them lower than the total visit-level charges incurred by subscribers. This recovery is a very favorable one for the Class.

On September 20, 2017, the Court preliminarily approved the Settlement. ECF No. 153. Consistent with the preliminary approval order, Plaintiffs now ask the Court to award attorneys' fees and costs to Class Counsel equal to 30% of the settlement amount, or $1.575 million. This requested percentage award is consistent with awards for common fund settlements in ERISA and other complex federal class actions of similar size in the Seventh Circuit, and is justified by the substantial monetary relief that Class Counsel obtained for the Class as well as Class Counsel's significant effort undertaken and risk assumed in advancing novel claims under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (the "Parity Act"), incorporated into ERISA at 29 U.S.C. § 1185a. The award will result in Class Counsel receiving, at most, a modest multiplier over their lodestar. Finally, Plaintiffs request that the Court affirm its approval of an incentive award of $15,000 for each of the two named Plaintiffs.

## BACKGROUND

As alleged by Plaintiffs in their complaint, this case arises out of HCSC's application of RTC exclusions to deny RTC benefits to members of ERISA health plans administered by HCSC. Plaintiffs claim that by denying coverage for RTC claims through application of RTC exclusions, HCSC violated its fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), including duties to comply with the Parity Act.

Ms. Craft and her daughter, initially the sole plaintiffs, filed a complaint through counsel on July 30, 2014, seeking a preliminary injunction. ECF No. 1. After the motion for a

preliminary injunction was resolved, HCSC filed a motion to dismiss the Complaint for failure to state a claim (ECF Nos. 31-32), which this Court denied on March 25, 2015. ECF No. 46.

Plaintiffs filed a First Amended Complaint on May 15, 2015. ECF No. 59. The Court denied in part and granted in part HCSC's motion to dismiss that complaint on March 31, 2016. ECF No. 95.[2] Plaintiffs filed a Second Amended Complaint (ECF No. 106), and the parties proceeded to class certification discovery. Plaintiffs filed their motion for class certification and accompanying papers on January 13, 2017. ECF Nos. 133-38. On February 22, 2017, the parties jointly moved for a stay of all case deadlines, having reached an agreement on the material terms of a class-wide settlement. ECF Nos. 140-41. The Court granted a stay pending the parties' finalization of the settlement terms. ECF No. 142.

After several months of negotiations, the parties reached an agreement in principle to settle their dispute earlier this year and executed the Settlement Agreement on August 16, 2017. Class Counsel filed a motion for preliminary approval on August 18, 2017. ECF No. 147. On September 20, 2017, the Court entered an order preliminarily certifying the settlement class under Federal Rule of Civil Procedure 23(a), approving the settlement agreement, approving the notice of settlement, and setting the Fairness Hearing for December 20, 2017. ECF No. 153.

## **FEES AND EXPENSES REQUESTED**

Plaintiffs respectfully request the Court to award attorneys' fees and costs in the amount of $1.575 million – thirty percent of the gross Settlement Fund of $5.25 million. The requested award of attorneys' fees and expenses is reasonable, appropriate, and consistent with market rates for legal services and Seventh Circuit precedents involving common funds (or portions of

---

[2] The Court dismissed Plaintiffs' claim under § 1132(a)(3), finding it was duplicative of Plaintiffs' claim under § 1132(a)(1)(B), but rejected HCSC's argument that the Craft plaintiffs' claim was moot (ECF No. 95 at 8-10), and denied HCSC's motion to dismiss Plaintiffs' § 1132(a)(1)(B) claim. *Id*.

3

funds) of up to $10 million. *See infra* § II.A. HCSC has agreed not to oppose Plaintiffs' application for an award of attorneys' fees and expenses that does not exceed 30% of the Settlement Fund. ECF No. 148-01, at ¶ 17. The distribution of attorneys' fees and expenses among Class Counsel is described in further detail below, and in Exhibits A-D.

## ARGUMENT

### I. LEGAL STANDARDS

Rule 23 states that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h). The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

The Seventh Circuit has found that attorneys' fees based on the common-fund doctrine are appropriate in ERISA class action settlement cases. *See Florin v. Nationsbank*, 34 F.3d 560, 563 (7th Cir. 1994) (*Florin I*). In evaluating the fee request, courts will consider "the overall benefit to the class, including non-monetary benefits…to encourage attorneys to obtain meaningful affirmative relief." *Spano v. Boeing Co.*, Case No. 06-CV-743-NJR-DGW, 2016 WL 3791123, at *1 (S.D. Ill. Mar. 31, 2016). Additionally, this Circuit requires a determination of whether "a requested fee is within the range of fees that would have been agreed to at the outset of the litigation in an arms-length negotiation given the risk of nonpayment and the normal rate of compensation in the market at the time." *Id.* at *2; *see also In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (*Synthroid I*). Thus, in common fund cases, the measure of a reasonable attorney fee is "what an attorney would receive from a paying client in a

4

similar case," *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000), which requires the district judge "to simulate the market where a direct market determination is infeasible." *In re Cont'l Ill. Sec. Litig.,* 962 F.2d 566, 572 (7th Cir. 1992) (finding that a direct market determination is "infeasible in a class action because no member of the class has a sufficient stake to drive a hard—or any—bargain with the lawyer" and "[s]o the judge has to step in and play surrogate client.").

In the Seventh Circuit, simulating the market rate for legal fees involves an examination of several factors, including: the going market rate for legal services in similar cases; the risk of nonpayment class counsel assumed and the probability of success at the outset of litigation; the quality of class counsel's performance; and the complexity, length, and expense of the matter. *See Synthroid I,* 264 F.3d at 721; *In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 844-45 (N.D. Ill. 2015).

Courts within the Seventh Circuit often use the percentage-of-recovery method, rather than a lodestar or other basis, to calculate reasonable attorneys' fees in common-fund cases, such as this matter. *In re Dairy Farmers*, 80 F. Supp. 3d at 844 (percentage method "has emerged as the favored method for calculating fees in common-fund cases in this district"); *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund, in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis."); *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 816 (E.D. Wis. 2009) (awarding attorneys fees' as "a percentage of the common fund because it most closely replicates the [contingency fee] market for the legal services provided."). A common fund exists when plaintiffs share a pre-litigation interest in the subject matter of the litigation, rather than

5

seeking recovery for discrete wrongs suffered by individual members; the class of beneficiaries is small and easily identifiable; the benefits of the settlement can be traced with some accuracy; and costs can be shifted with some exactitude to those benefitting. *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012); *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 264, n. 39 (1975).

The common-fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co.*, 444 U.S. at 478; *see also Florin I*, 34 F.3d 560, 563 (7th Cir. 1994) (finding that in a common-fund case, the court "determines the amount of attorney's fees that plaintiffs' counsel may recover from this fund, thereby diminishing the amount of money that ultimately will be distributed to the plaintiff class… [because] not one plaintiff, but all those who have benefitted from litigation should share its costs.") (internal citation omitted). Thus, in cases with an actual, existing judgment fund, where each member of the class had "an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf," courts may assess attorneys' fees "against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Boeing Co.*, 444 U.S. at 478, 479; *In re Dairy Farmers*, 80 F.Supp. 3d at 844 (citing the percentage method, which involves setting the fee award as a percentage of the recovered settlement fund plus expenses and interest, as the "favored method for calculating fees in common-fund cases in this district").

Although the use of a lodestar cross-check may no longer be favored in the Seventh Circuit, a court may still use a lodestar multiplier as an additional factor in gauging the reasonableness of attorney fees. *See Spano*, 2016 WL 3791123, at *3 (recognizing that "using a lodestar cross-check is disfavored" but noting that it is helpful in assessing the reasonableness of

a fee request); *In re Lawnmower Engine Horsepower Mtkg. & Sales Practices Litig.,* 733 F. Supp. 2d 997, 1015 (E.D. Wis. 2010) (cross-checking the 25% fee award against the fee that would be awarded under lodestar to confirm it was appropriate). Under the lodestar approach, a "lodestar" figure is calculated by multiplying the number of reasonable hours expended by each individual attorney's hourly rate. *Id.* at 1015. The lodestar is then divided into the proposed fee award to arrive at a lodestar multiplier used to compare to multipliers approved in other cases. *Id.*

As explained below, under either the percentage or lodestar approach, class counsel's fee request is reasonable and should be granted.

## II. A FEE AWARD EQUAL TO THIRTY PERCENT OF THE COMMON FUND IS FAIR AND REASONABLE IN THIS CASE.

### A. The Requested Fees are Within the Market Range that Has Been Found Reasonable in Common Fund Cases in this Circuit.

"As a barometer for assessing the reasonableness of a fee award in common-fund cases, courts look to the going market rate for legal services in similar cases." *In re Dairy Farmers*, 80 F. Supp. 3d at 845. The Seventh Circuit has noted that to simplify this assessment, a court should find out "what the market in fact pays not for the individual hours but for the ensemble of services rendered" in similar cases. *Id.* The usual range for contingent fees is "between 33 and 50 percent." *Id.*; *see also Berger v. Xerox Corp. Ret. Income Guarantee Plan*, No. 00-584-DRH, 2004 WL 287902, at *2 (S.D. Ill. Jan. 22, 2004) (finding that 29% of the gross settlement is a reasonable fee award); *Gaskill*, 160 F.3d at 362-63 (noting that typical contingency fees are between 33% and 40% and that "[s]ome courts have suggested 25% as a benchmark figure for a contingent-fee award in a class action"); *Will v. Gen. Dynamics Corp.*, No. 06–698–GPM, 2010 WL 4818174, at *2 (S.D. Ill. Nov. 22, 2010) (stating that where "the market for legal services in

7

a class action is only for contingency fee agreements, and there is a substantial risk of nonpayment for the attorneys, the normal rate of compensation in the market is 33.33% of the common fund recovered") (internal citation omitted); *Meyenburg v. Exxon Mobil Corp.*, 3:05-cv-15-DGW, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ("33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation.").

Where the percentage method has been used, courts in this circuit have approved fee awards "at or about the 33.3%-of-fund level" in similar complex class actions. *See In re Dairy Farmers*, 80 F. Supp. 3d at 846 (awarding attorneys' fees of one-third of a $46 million common fund) (collecting cases); *In re Synthroid Mktg. Litig.,* 325 F.3d 974 (7th Cir. 2003) (*Synthroid II*) (affirming the district court's award of 30% of the first $10 million to counsel representing the consumer class); *Gaskill*, 160 F.3d at 363-64 (affirming district court's award of 38% of a common fund); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 502–03 (N.D. Ill. 2015) (awarding attorney's fees amounting to 36% of the settlement fund less administrative costs and incentive awards); *Goldsmith v. Tech. Solutions Co.*, No. 92 C 4374, 1995 WL 17009594, at *7–9 (N.D. Ill. Oct. 10, 1995) (awarding fees in the amount of one-third of the settlement fund and noting that "courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery"). *See also* ECF. No. 148 at 20-21.

Both named plaintiffs entered into engagement agreements that address counsel fees and expenses in the event of a settlement. Ex. 3 to Decl. of Daniel P. Moylan in Supp. of Zuckerman Spaeder LLP's Motion for Attys' Fees and Expenses ("Moylan Decl."). Each contains complementary provisions addressing class-wide and individual settlements, which reinforce the reasonableness of a 30% award in this case. *Id.* ¶ 6. As to a class-wide settlement,

8

the engagement agreement provides that if the defendant reaches an agreement concerning counsel fees and costs as part of the settlement, and such fees are approved by the Court, then that award will constitute payment in full and neither Plaintiffs nor the Class will owe anything additional. Under the Settlement Agreement, HCSC agreed not to oppose an award for counsel fees and costs up to 30% of the common fund, subject to Court approval. ECF No. 148-01, at ¶ 17. In the event the Court approves the award of 30% of the common fund, this will constitute payment in full in accordance with Plaintiffs' engagement agreement.

The engagement agreement has a complementary provision addressing individual settlements. Although that provision does not directly apply to the Settlement Agreement at issue here, it sheds further light on an agreed market rate for counsel fees and expenses for this case. As to an individual settlement, the agreement provides that if the final award of counsel fees would fall below 30% of any gross recovery, then Plaintiffs would make up the difference.[3]

Thus, Plaintiffs' request of 30% of the gross settlement fund falls within a reasonable range of market rates and Seventh Circuit precedents involving common funds in similar cases.

### B. Class Counsel Risked Nonpayment and Litigated the Case on Full Contingency.

The significant financial risk assumed by class counsel in taking this case on full contingency also supports this fee request. When determining the reasonableness of a fee award, courts in this Circuit have assessed and emphasized the severity of the risk of nonpayment assumed by class counsel. *See Florin v. Nation's Bank of GA, NA*, 60 F.3d 1245, 1247 (7th Cir. 1995) (*Florin II*) (emphasizing that a "court must also be careful to sustain the incentive for attorneys to continue to represent such clients on an inescapably contingent basis") (internal citation omitted); *Sutton v. Bernard*, 504 F.3d 688, 694 (7th Cir. 2007) ("We recognized that

---

[3] This provision also addresses reimbursement for expenses, and provides that the total reimbursement and share of counsel fees would not exceed 50% of the Plaintiffs' recovery in the event of an individual settlement.

9

there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."); *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) ("Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel."). To assess the riskiness of the litigation, a court must measure "the probability of success of this type of case *at the outset* of litigation." *Florin I*, 34 F.3d 560, 565 (7th Cir. 1994) ; *see also In re Trans Union Corp. Privacy Litig.,* 629 F.3d 741, 746 (7th Cir. 2011) ("[I]f the market-determined fee for a sure winner were $1 million the market-determined fee for handling a similar suit with only a 50 percent chance of a favorable outcome should be $2 million").

At the outset of this litigation, there was no evidence that HCSC had interest in a class settlement. Class counsel knew the expenditure of significant time, effort, and money would be needed to advance novel claims under the Parity Act. *See* Moylan Decl. at ¶¶ 12-13; *Spano*, 2016 WL 3791123, at *2 ("Class Counsel's fee request is justified in this case given the extraordinary risk counsel accepted in agreeing to represent the Class; the fact that Class Counsel brought this kind of case when no one else had… ."). Class counsel faced significant risk of nonpayment, not only for their time, but also of unreimbursed out-of-pocket expert fees and other costs. Therefore, the proposed fee award is justified given the level of financial, legal, and factual uncertainty involved in advancing these novel claims, which yielded substantial benefit for the class.

### C. Class Counsel Performed Substantial Work in Securing Significant Monetary Benefits for the Class.

Class Counsel's goal at the initiation of this litigation was to end HCSC's practice of excluding all coverage for treatment of mental illness in RTCs, and to obtain fair, reasonable,

10

and adequate relief for class members, participants in ERISA health plans administered by HCSC whose claims for mental health treatment in RTCs were denied due to RTC exclusions. In furtherance of these goals, class counsel prepared and filed the class action complaint, engaged in extensive motions practice relating to lead plaintiff Elizabeth Craft's motion for preliminary injunction to stop application of the RTC exclusion, successfully defended against HCSC's motions to dismiss for failure to state a claim, briefed class certification, engaged in arms-length settlement negotiations with HCSC, and sought the Court's preliminary approval of the class for settlement. *See* ECF No. 148 at 1-4; ECF No. 153.[4]

HCSC discontinued its use and enforcement of RTC exclusions, and this settlement will secure substantial monetary payments for class members.[5] Based upon the currently available data from HCSC, the Settlement Class Members who incurred out of pocket costs are expected to recover approximately 33% of aggregate visit-level charges, a percentage which assumes a potential reimbursement of every dollar of visit-level charges claimed by class members. *See* ECF No. 148 at 21-22 (detailing how the effective rate of recovery under this settlement is a substantially higher percentage than this estimate of 33% suggests, and citing cases with similar magnitudes of recovery).

The work of class counsel is not complete. Here, the class will receive no benefit if the Settlement Agreement does not receive final approval. Because class counsel is filing this fee request prior to final approval, the lodestar calculation and description of work set forth above does not account for the time counsel will spend responding to any objections to settlement and in seeking final approval of the class settlement. Such time spent to achieve benefits for the class

---

[4] A summary of the time, costs, and expenses for Class Counsel is attached as Exhibit A. Declarations for each firm reporting time, costs, and expenses are attached hereto as Exhibits B through D.

[5] Class Counsel created a Plan of Allocation that ensures *every* Class Member will get a payment, with the minimum amount expected to be several thousand dollars. *See* ECF No. 148-06.

11

is compensable. *See Boeing Co.*, 444 U.S. 472 at 478. Thus, Class Counsel's ability to obtain substantial monetary relief for the class favors approval of the requested award. *See In re Dairy Farmers*, 80 F. Supp. 3d at 844, 849 (N.D. Ill. 2015) (indicating that quality of class counsel's performance in achieving settlement, *i.e.* "whether this is the type of outcome that willing clients would have envisioned from the outset," is another litmus test for assessing reasonableness).

### D. Class Counsel Faced Significant Risks in Undertaking to Litigate this Complex, and Potentially Lengthy and Expensive, Case Through Class Certification and Trial.

At the outset, class counsel knew that prosecuting these novel claims under the Parity Act could involve years of discovery, extensive motions practice, related hearings, presentation of evidence and argument at trial, and possible appeals, which would likely require thousands of hours of attorney time to complete, as well as the advancement of significant out-of-pocket costs and expenses. Class counsel have collectively spent just over 1,700 hours advancing this matter, with a total lodestar of approximately $1.05 million. *See* Ex. A. Additional time will be spent in overseeing claims administration and preparing for and attending the final fairness hearing. In taking on the case, Class Counsel invested time in a matter with an uncertain outcome rather than applying that time in hourly cases with regular payment at hourly rates. *See* Ex. B, Moylan Decl. ¶¶ 12-13.

The complexity of the claims presented and the uncertainty arising from the potential length and expense of this litigation at its outset favor the award here. *See*, *e.g., Synthroid I,* 264 F.3d at 721 (noting that market rate depends "in part on the amount of work necessary to resolve the litigation"); *In re Dairy Farmers*, 80 F. Supp. 3d at 847 (listing an assessment of the complexity, length, and expense of the litigation as a factor in determining the reasonableness of a fee award).

### E. A Lodestar Cross-Check, Although Disfavored by Courts in the Seventh Circuit, Nevertheless Confirms the Reasonableness of This Fee Award.

In this matter, a thirty percent fee award will provide at most a small risk multiplier (between 1 and 2) over lodestar. Attached in support of this motion are sworn declarations from attorneys at each firm that worked on this matter. *See* Exs. B-D. In each of these declarations, the declarant-attorney attests to the total time his firm spent litigating this matter and the hourly rates of the attorneys at that firm effective at the time at the time services were incurred. *See id.* Exhibit A summarizes the total hours and lodestar across all three firms involved in this litigation. Together, class counsel firms that worked on this matter reported having spent in excess of 1,700 hours advancing the matter and a collective lodestar of $1,052,480.45. Ex. A. Thus, the requested award of $1.575 million represents a lodestar multiplier of about 1.5, which is on the low end of the typical range. Although not a required point of comparison (and indeed one that is disfavored by courts in the Seventh Circuit), the modest scope of this risk multiplier further confirms that the requested fee is within the range of reasonableness. *See Cook v. Niedert,* 142 F.3d 1004, 1013 (7th Cir. 1998) ("[W]e have never ordered the district judge to ensure that the lodestar result mimics that of the percentage approach."); *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 976 (7th Cir. 1991) ("[m]ultipliers anywhere between one and four have been approved"); *Spano*, 2016 WL 3791123, at *3 ("lodestar multipliers can be reasonable in a range between 2 and 5" in risky litigation).

Zuckerman Spaeder LLP ("Zuckerman") attorneys served as lead plaintiffs' counsel throughout this litigation, and have had the primary responsibility for prosecuting Plaintiffs' claims against HCSC and negotiating the Settlement Agreement. The total time spent by Zuckerman lawyers from July, 2014 through September, 2017 would be billable at standard rates

13

at just over $950,000, and Zuckerman's aggregate expenses are just over $23,000. *See* Exs. 1 and 2 to Moylan Decl.

Plaintiff Ms. Craft and her daughter originally retained Meiram Bendat of Psych-Appeal, Inc. ("Psych-Appeal") in July, 2014, shortly after HCSC's denial of RTC coverage for Ms. Craft's daughter under the exclusion, and Psych-Appeal has served as Plaintiffs' counsel for the entire litigation. The time spent by Psych-Appeal from July, 2014 through October, 2017 is billable at $54,412.50, and it did not incur any supplemental litigation costs. *See* Ex. C, Decl. of Meiram Bendat in Supp. of Psych-Appeal, Inc.'s Motion for Attys' Fees and Expenses ("Bendat Decl.") at ¶¶ 7-8.

Miner, Barnhill & Galland, P.C. ("MB&G") has served as local counsel for the Plaintiffs throughout this litigation. The time spent by MB&G from July, 2014 through September, 2017 is billable at $44,928.50, and the firm's aggregate costs are $1,045.15. *See* Ex. D, Decl. of George F. Galland in Supp. of Miner, Barnhill & Galland, P.C.'s Motion for Attys' Fees and Expenses ("Galland Decl.") at Exs. 1 and 2.

In total, the lodestar for all three firms is $1,052,480.45 in fees and $24,779.01 in costs. Ex. A. Class Counsel respectfully submit that the costs and expenses were reasonable and necessary to obtain the Settlement Agreement and consistent with what the market would award in a private setting. Class Counsel anticipate additional costs and expenses will be incurred up to the time of final approval and after, and these expenses further support the reasonableness of this fee request involving a risk multiplier around 1.5.

### III. THE COURT SHOULD GRANT FINAL APPROVAL OF THE INCENTIVE AWARDS FOR THE NAMED PLAINTIFFS.

The Settlement Agreement calls for the payment of $15,000 for each named plaintiff, subject to the Court's approval. ECF No. 148-01, at ¶ 16. As Class Counsel have described,

14

these awards are appropriate because they are within the average range of incentive awards in similar class actions within this Circuit, and are justified given the emotional and time demands this litigation placed on each family. *See* ECF No. 148 at 18-20 (citing Seventh Circuit precedent); Ex. B (Moylan Decl.), at ¶ 15-16; *see also Spano*, 2016 WL 3791123 at \*4 (finding awards of $25,000 for each of three class representatives, where total class representative awards amounted to less than one percent of the fund, reasonable). This Court preliminarily approved incentive awards of $15,000 for each of the named plaintiffs. ECF No. 153, at ¶ 4. Plaintiffs respectfully request the Court to finally approve these awards in connection with final approval of this Settlement.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court finally approve a fee equal to 30% of the Settlement Fund, or $1,575,000, and approve a $15,000 incentive award for each of the two named Plaintiffs.

Dated: October 20, 2017                                          Respectfully submitted,

                                                                                       *s/ Daniel P. Moylan*
D. Brian Hufford (*pro hac vice*)                       Martin S. Himeles, Jr. (*pro hac vice*)
Jason S. Cowart (*pro hac vice*)                      Daniel P. Moylan (*pro hac vice*)
Zuckerman Spaeder LLP                                 Adam Abelson (*pro hac vice*)
485 Madison Avenue, 10th Floor                   Zuckerman Spaeder LLP
New York, NY 10022                                       100 East Pratt Street, Suite 2440
(212) 704-9600                                                  Baltimore, MD 21202-1031
                                                                           (410) 332-0444
Caroline E. Reynolds (*pro hac vice*)
Zuckerman Spaeder LLP                                 George F. Galland, Jr.
1800 M Street NW, Suite 1000                       Scott A. Entin
Washington, DC 20036                                   Miner, Barnhill & Galland, P.C.
(202) 778-1800                                                 14 W. Erie St.
                                                                           Chicago, IL 60654
Meiram Bendat (*pro hac vice*)                    (312) 571-1170
Psych-Appeal, Inc.
8560 W. Sunset Blvd., Ste. 500
West Hollywood, CA 90069
(310) 598-3690, ext. 101

*Counsel for Plaintiffs and the Putative Class*