UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH A. CRAFT; JANE DOE, by her next friend and parent, ELIZABETH A. CRAFT; BRYAN L. PAUTSCH; MARY DOE, by her next friend and parent, BRYAN L. PAUTSCH; on their own behalf and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> HEALTH CARE SERVICE CORPORATION, <br><br> Defendant. | Case No. 14-cv-5853 <br><br> Hon. Virginia M. Kendall |

EXHIBIT B

DECLARATION OF DANIEL P. MOYLAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

I, Daniel P. Moylan, under penalty of perjury and subject to the provisions of 28 U.S.C. § 1746, declare as follows:

1. I am a partner at Zuckerman Spaeder LLP ("Zuckerman"), and am counsel to Plaintiffs and the preliminarily certified class in the above-captioned action. I am submitting this declaration on behalf of Zuckerman in support of plaintiffs' motion for attorneys' fees, expenses, and incentive awards in connection with services rendered by my firm in this case.

2. I make this declaration based on personal knowledge of the facts contained herein and, if called, could testify competently thereto under oath.

6221136.2

3. On September 20, 2017, this Court preliminarily appointed Zuckerman, Psych-Appeal, Inc., and Miner, Barnhill & Galland, P.C. to serve as Class Counsel representing the settlement class (the "Class"), which this Court provisionally certified (ECF No. 153).

4. Zuckerman undertook this matter on a contingency fee basis. A description of the firm and biographies from our website for the principal lawyers on this matter as of the time the motion was filed (Brian Hufford, Jason Cowart, Martin Himeles, and myself) can be found in the Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Related Relief, and accompanying exhibits. *See* ECF No. 148 at 12, and ECF No. 148-08.[1]

5. Attached hereto as Exhibit 1 is a spreadsheet summarizing Zuckerman's lodestar to facilitate a "lodestar cross-check" by the Court. Exhibit 1 includes the names of attorneys and professional support staff who worked on this case and each timekeeper's respective hours recorded at the rates in effect for that timekeeper when recorded. The hourly rates shown in Exhibit 1 are the usual and customary rates set by Zuckerman for each individual as of the time these services were rendered.

6. Zuckerman does both hourly and contingency work. The firm has standard hourly rates that it charges clients in the marketplace throughout the country, and clients routinely pay those hourly rates for the firm's legal services. The firm reviews those hourly rates each year in comparison to the rates charged by similar firms, and customarily updates rates at the start of each calendar year. The firm's standard hourly rates effective at the time services were billed

---

[1] Earlier in the litigation, other Zuckerman lawyers (Caroline Reynolds and Adam Abelson) had substantial roles in the case, but scheduling conflicts prevented them from continuing in those roles. Their biographies are attached as Exhibit 4 to this Declaration.

have been used to determine the dollar value of the firm's time – namely, its lodestar – in this case. *See* Ex. 1.

7. Exhibit 2 to this Declaration reflects the total litigation expenses incurred by Zuckerman by category.

8. The information in this declaration regarding Zuckerman's time and expenses is taken from contemporaneous time and expense records and supporting documentation (expense vouchers, check records, books, and records) prepared and maintained by the firm in the ordinary course of business.[2] I reviewed summary information regarding the firm's time and expenses in preparation of this declaration to evaluate the necessity for, and reasonableness of, the time, costs, and expenses committed to this litigation.

9. Class Counsel have collectively spent 1,712.63 hours on this case since 2014. The principal activities have been (a) conducting an extensive pre-suit investigation; (b) doing legal and factual research; (c) drafting pleadings, including, among others, the complaint and amended complaints, briefs in support of the motion for preliminary injunction, in opposition to two motions to dismiss, and in support of the motion for class certification; (d) drafting discovery requests and responses, and reviewing discovery requests and responses from, and documents produced by, HCSC; (e) settlement-related work, including requesting, collecting and analyzing data from HCSC, negotiating the settlement, drafting and negotiating the terms of the settlement agreement, and preparing pleadings seeking preliminary and final class certification and approval of the settlement; (f) attending and participating in hearings as well

---

[2] Upon request, Zuckerman will provide time records for the listed timekeepers and receipts for listed expenses to the Court.

3

as case management and other conferences with this Court; (g) meeting and conferring with the clients; and (h) case management.

10. As of October 19, 2017, Zuckerman has spent 1,567.58 hours on this case. Zuckerman will spend additional time on this matter to prepare submissions for final approval, address any objections to the settlement that the Settlement Administrator may receive through the opt-out/objection period (which runs until November 20, 2017) and prepare for and participate in the Final Fairness Hearing scheduled for December 20, 2017.

11. I believe that Zuckerman's time, costs, and expenses as set forth herein are reasonable and were necessary for the effective and efficient prosecution and resolution of this litigation. I also believe the time, costs, and expenses are of the type that would normally be charged to a fee-paying client in the private legal marketplace. Zuckerman's engagement agreements with both named plaintiffs are attached as Exhibit 3 to this Declaration, and contain information reflecting an agreed share of any recovery in this matter.

12. The 1,712.63 hours collectively spent by Class Counsel represented a significant investment of our time on a risky, contingent matter with no guarantee of success. The vast majority of overall revenue earned by Zuckerman based on its legal services comes from billable matters, such that hours spent on contingent fee matters are an opportunity cost. This investment of time was substantial in view of the firms' relative sizes and resources. The time devoted by Class Counsel to this case constituted a substantial investment of the firms' resources that could have been invested in other matters with a more certain recovery.

13. Based on Class Counsel's extensive experience representing patients and providers in this specialized area of healthcare litigation, it is uncertain whether other firms would have been

4

willing to commence lawsuits on behalf of plaintiffs against HCSC, challenging its policy of excluding coverage for treatment of mental illness in residential treatment centers ("RTCs"). That is because (a) the amounts at issue for individual patients were relatively small, and (b) the litigation risks were significant, given the novel nature of these claims under the Parity Act.

14. The Settlement Agreement calls for the payment of $15,000 for each named plaintiff, subject to the Court's approval. ECF No. 148-01 at ¶ 16. In its September 20, 2017 order granting preliminary approval to the proposed settlement, the Court preliminarily approved incentive awards in these amounts for the named plaintiffs. ECF No. 153 at ¶ 4.

15. Class Counsel's experience has been that individuals and families naturally may be reticent to serve as named plaintiffs or class representatives in cases challenging health insurance practices that relate to people with mental illness. It is the unfortunate reality that many persons may feel stigmatized because of a mental illness or the illness of a loved one. Accordingly, some individuals are understandably reluctant to be the public face of a lawsuit challenging practices that impact people with mental health issues, because participation might involve public disclosure and scrutiny of their mental health histories. Compounding the problem is that persons struggling with mental health issues at times may find it especially challenging to participate in adversarial proceedings.

16. Ms. Craft and Mr. Pautsch willingly and forthrightly shared highly personal details about their families and their efforts to secure mental health treatment for their daughters. They brought claims not just for themselves and their families, but for the benefit of others who required require treatment in RTCs. Ms. Craft and Mr. Pautsch took their roles as named

5

plaintiffs and class representatives seriously and responsibly, and provided important assistance throughout the prosecution of this case.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 20th day of October, 2017 in Baltimore, Maryland.

_____
Daniel P. Moylan