IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH A. CRAFT; JANE DOE, a minor, by her next friend and parent, ELIZABETH A. CRAFT; BRYAN L. PAUTSCH; MARY DOE, a minor, by her next friend and parent, BRYAN L. PAUTSCH; on their own behalf and on behalf of all others similarly situated, <br><br>     *Plaintiffs*, <br>  v. <br><br>HEALTH CARE SERVICE CORPORATION, <br><br>     *Defendant.* | 14 C 5853 <br><br> Hon. Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed this class action suit on July 30, 2014 against Defendant HCSC. (Dkt. 1). On February 26, 2018, the Court entered a Final Order and Judgment approving the Settlement Agreement entered into by the parties on behalf of the Settlement Class. (Dkt. 170). Distribution of the Net Settlement Fund to the Class began soon thereafter. On September 14, 2018, Plaintiffs filed a Motion to Modify Administration of Settlement by Extending Distribution Deadline, seeking a 45-day extension of the distribution deadline. (Dkt. 175). For the following reasons, Plaintiffs' Motion is granted.

## BACKGROUND

In their class action suit, Plaintiffs allege Defendant HCSC engaged in discriminatory and illegal practices by restricting the scope of their insurance coverage for treatment of mental illness in residential treatment centers, in violation of its duties owed to health insurance plan participants and beneficiaries pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA")

1

and the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (the "Parity Act"), as incorporated into ERISA. (Dkt. 1). The parties entered settlement discussions in 2016. On September 20, 2017, the Court entered an Order preliminarily approving the Class Action Settlement on behalf of individuals who after July 30, 2011 were participants in or beneficiaries of an ERISA-governed employee welfare benefits plan administered and/or insured by HCSC, submitted a claim for treatment of mental illness in a residential treatment center, and had their claim denied by HCSC based on plan exclusions for coverage of residential treatment of mental illness. (Dkt. 153). The parties identified Settlement Class Members through HCSC data and provided these individuals Notice of the proposed settlement and opportunity to opt out. (Dkt. 159). No Settlement Class Members opted out of the Settlement. (Dkt. 170 at 3).

On February 26, 2018, the Court issued a Final Order and Judgment approving the Settlement Agreement and dismissing the action with prejudice. (Dkt. 170). The approved Settlement Agreement established a Settlement Fund of $5,250,000 and appointed Dahl Administration LLC as Settlement Administrator. (148-1 at 5, 10). The Agreement incorporates a Plan of Allocation for the distribution of the Net Settlement Fund ($5,250,000 less certain taxes, costs, fees, etc.) to all Class Members who did not opt out of the Settlement Class ("Participating Settlement Class Members"). (Dkts. 148-1 at 6; 148-6 at 1). The Plan of Allocation sets forth how each Member's share is to be calculated and provides a procedure and schedule for distributing checks to each Member. (*See* Dkt. 148-6).

According to the Plan of Allocation, each Participating Settlement Class Member "will receive a share of the Net Settlement Fund based on his/her Adjusted Treatment Days," as calculated according to a formula provided in the Plan of Allocation. (*Id.* at 1). Each Member's share "shall be determined by multiplying the Net Settlement Fund on the date the Final Approval

Order [February 26, 2018] by the following fraction: (the Member's Adjusted Treatment Days) / (the sum of the Adjusted Treatment Days for all Participating Members)." (*Id.* at 1–2).

The Plan of Allocation then provides the following schedule for distributing the checks to Participating Settlement Class Members:

> G. The Settlement Administrator will make at least two attempts to distribute checks by certified mail to Participating Settlement Class Members, and will work with the Parties' counsel to attempt to find up-to-date address information for any Participating Settlement Class Members for whom an attempt was unsuccessful.
>
> H. If the Settlement Administrator determines that, after at least two attempts to make a distribution to a Participating Settlement Class Member, it is not reasonably possible to complete the distribution of that member's share of the Net Settlement Fund, then the Participating Settlement Class Member's share shall be set aside until all distributions have been either completed or set aside. If any check remains uncashed and unreturned for at least 90 days after mailing, then the Settlement Administrator will issue a stop payment request and set aside that Participating Settlement Class Member's share.
>
> I. At the earlier of either (i) 120 days after Final Judgment or (ii) the completion or setting aside of all distributions referred to in paragraph H (the "Completion Date"), the Settlement Administrator will, within 30 days thereafter, distribute the remainder of the Net Settlement Fund (less a reserve for reasonable administrative costs and/or expected taxes), which shall include the amount of any distributions that have been set aside pursuant to Paragraph H and the amount of any distributions that have not been completed because the time period for cashing the distribution check has expired (the "Residual Settlement Fund"), as follows:
>
>> 1. If the Residual Settlement Fund exceeds $15,000, then the Settlement Administrator will distribute pro rata the remainder to those Participating Settlement Class Members for whom distributions were completed ("Accessible Participating Members"), where the share distributed to each Accessible Participating Member shall be determined by multiplying the amount of the Residual Settlement Fund by the following fraction: (the Member's Adjusted Treatment Days) / (the sum of the Adjusted Treatment Days for all Accessible Participating Members); or, alternatively,
>>
>> 2. If the Residual Settlement Fund is $15,000 or less, then the Settlement Administrator will distribute the remainder to National Alliance on

Mental Illness, 3803 N. Fairfax Drive, Suite 100, Arlington, VA 22203.

(*Id.* at 2).

The Settlement Agreement also includes a "Modification or Amendment" clause that states the "Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by the Persons who executed this Agreement or their successors-in-interest." (Dkt. 148-1 at 28). Finally, both the Final Order and Judgment and the Settlement Agreement include an express reservation of jurisdiction by the Court:

Final Order and Judgment:

### JURISDICTION

21. Without affecting the finality of this Final Approval Order and Judgment in any way, this Court will retain exclusive continuing jurisdiction over all Parties, the Settlement Administrator and Settlement Class Members with regard to implementation of the Settlement Agreement, disposition of the Settlement Fund, and enforcement and administration of this Order and the Settlement Agreement, include the release provisions thereof. The Court may order any appropriate legal or equitable remedy necessary to enforce the terms of this Final Approval Order and Judgment and/or the Settlement.

(Dkt. 170 at 6).

Settlement Agreement:

53. <u>Retention of Jurisdiction.</u> The Parties acknowledge and agree that the Court will retain jurisdiction over the Parties, Action, and the Settlement for the purpose of enforcing the terms of this Agreement.

(Dkt. 148-1 at 29).

The Effective Date of Settlement was March 29, 2018. (Dkt. 175 at 2). The Final Settlement Class List included approximately 300 Participating Members. (Dkt. 174). Dahl Administration initiated the distribution of checks, per the schedule provided in the Plan of Allocation, on May 11, 2018. (Dkt. 175 at 2). On August 9, 2018, the 90-day deadline for issuing a stop-payment request on all uncashed or undeliverable checks, Dahl Administration informed

4

Class Counsel that 37 checks remained: 11 undeliverable checks (totaling approximately $45,000) and 26 deliverable but uncashed checks (totaling approximately $330,000). (*Id.* at 3). For five of the 26 deliverable but uncashed checks, the respective Participating Member contacted Dahl Administration after the August 9 deadline requesting that the check be reissued. (*Id.*).

The 120-day deadline for initiating the second-round distribution was September 8, 2018. Plaintiffs filed their Motion to Modify Administration of Settlement by Extending Distribution Deadline on September 14, 2018. (Dkt. 175). In the Motion, Plaintiffs seek a "modest adjustment" to the distribution schedule to allow Dahl Administration one further attempt to complete the distribution of the 26 deliverable but uncashed checks. (*Id.*) Specifically, Plaintiffs seek 45 days to complete this additional processing. (*Id.*) Defendants do not object to allowing checks to be re-issued to the Participating Members that have contacted Dahl Administration since the August 9 deadline[1] but object to the 45-day extension sought, arguing the Settlement Agreement expressly precludes such modification. (Dkt. 179).

## **ANALYSIS**

Plaintiffs argue that the 45-day extension sought is within the Court's continuing jurisdiction as reserved in the Final Order and Judgment and the Settlement Agreement and the Court's equitable power to make such adjustments to the Agreement. (Dkt. 175). Defendants disagree, arguing the 45-day extension constitutes a substantive change to the terms of the Agreement requiring formal modification to the Final Order and Judgment. (Dkt. 179).

---

[1] Only three of the five Class Members seeking reissuance of his or her check had contacted Dahl Administration at the time Plaintiffs' Motion was filed. Defendants stated in their Response to Plaintiffs' Motion that they do not object to Dahl Administration working with these three members for assistance in completing the deposits of their checks. (Dkt. 19 at 5, n.3). Defendants have taken no position with regard to the two additional Members that have contacted Dahl Administration since the parties submitted their briefs but, at a hearing before the Court, stated only that they trust the Court can make any necessary adjustments for these additional Members if necessary. Because the Court grants Plaintiffs' Motion, no adjustment is necessary.

5

In the Final Order and Judgment, the Court expressly reserved jurisdiction beyond final judgment and approval of the Settlement to "implementation of the Agreement, disposition of the Settlement Fund, and enforcement and administration of [the Final] Order and the Settlement Agreement." (Dkt. 170 at 6). "The district court's explicit retention of jurisdiction is consistent with its responsibility, pursuant to Fed. R. Civ. P. 23, to protect the interests of class members." *Alexander v. Chicago Park Dist.*, 927 F.2d 1014, 1023 (7th Cir. 1991). "[D]istrict courts who enter judgment pursuant to [a settlement agreement] necessarily have the power to mandate compliance with it" in order to ensure class members receive the relief to which they are entitled. *Id.* (quoting *Brady v. Sullivan*, 893 F.2d 872, 977 (7th Cir. 1989); *see also, e.g. In re Corrugated Container Antitrust* Litigation, 752 F.2d 137, 141 (5th Cir. 1985) ("In a class action, the district court has a duty to class members to see that any settlement it approves is completed, and not merely to approve a promise . . . to pay the relief to which it has decided class members are entitled.").

However, the jurisdiction reserved by the Court in the Final Order and Judgment and the Settlement Agreement is not unfettered; it is explicitly limited by the terms of the Order and the Settlement Agreement. (*See* Dkt. 148-1 ("The Court may order any appropriate legal or equitable remedy *necessary to enforce the terms of* this Final Approval Order and Judgment and/or the Settlement.") (emphasis added); Dkt. 148-6 ("[T]he Court will retain jurisdiction . . . *for the purposes of enforcing the terms of* this Agreement.") (emphasis added)). In enforcing the terms of the Agreement, the Court applies Illinois law. (Dkt. 148-1 at 30 ("All terms and conditions of this Agreement shall be governed by and interpreted according to the laws of the State of Illinois."); *see also Newkirk v. Vill. of Steger*, 536 F.3d 771, 774 (7th Cir.2008) ("A settlement agreement is a contract and its enforcement is governed by principles of contract law."); *Pohl v.*

*United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir.2000) (The Court applies state law when construing a settlement agreement.). "Under Illinois law, the court's 'primary objective in construing a contract is to give effect to the intent of the parties." *Peoples Gas Light & Coke Co. v. Beazer E., Inc.*, 802 F.3d 876, 881 (7th Cir. 2015) (quoting *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007)). The court must first "look to the language of [the] contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent," and construe the contract "as a whole, viewing each part in light of the others." *Id.* (quoting *Gallgher*, 874 N.E.2d at 58)).

The plain language of the Plan of Allocation, as incorporated into the Settlement Agreement, establishes a clear schedule for the distribution of checks to Participating Members and the deadline for distributing the first-round distribution has clearly passed. The Plan requires that all checks set aside because they were uncashed as of the 90-day deadline become a part of the second-round distribution. The 120-day deadline for initiating the second-round distribution has come. Therefore, enforcing the terms of the Agreement would require the Court to order that the second-round distribution proceed according to the Plan, thereby denying Plaintiff's requested extension. Furthermore, the Agreement explicitly states that it may not be modified or amended except by a writing signed by the parties. (Dkt. 148-1 at 28). Neither the Order nor the Plan of Allocation contemplate any other means of modification. The parties have not agreed, in a signed writing or otherwise, to the proposed modification. Therefore, the Court has no authority under the jurisdiction retained through the Order and the Agreement to grant the modification to the Plan of Allocation requested by the Plaintiffs.

That is not to say, however, that the Court has *no* power over the distribution of funds beyond that explicitly provided in the Agreement. Courts also have equitable and inherent powers

7

as well as a fiduciary duty to protect the unnamed but interested members of the class until the terms of the settlement as agreed upon have been completed. *See Curtiss-Wright Corp. v. Helfand*, 687 F.2d 171, 174 (7th Cir. 1982) ("[T]he class action procedure [is] equitable in origin.") (citing *Hansberry v. Lee*, 311 U.S. 32, 41 (1940)); *Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276 (7th Cir. 2017) ("[D]istrict courts should act as the 'fiduciary of the class,' subject 'to the high duty of care that the law requires of fiduciaries.'") (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002)). Like its explicit retention of jurisdiction, the Court's inherent powers and fiduciary duty to protect unnamed class members "continue until the [settlement fund] is actually distributed." *See, e.g., In re Sears, Roebuck & Co. Front-Loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2018 WL 1138541, at *2 (N.D. Ill. Mar. 2, 2018) (quotation omitted); *see also Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir. 1972) ("Until the fund created by the settlement is actually distributed, the court retains its traditional equity powers. It is not novel law to announce that a court supervising the distribution of a trust fund has the inherent power and duty to protect unnamed, but interested persons.").

Plaintiffs argue the Court has equitable jurisdiction to make the scheduling adjustment it seeks. Plaintiffs rely primarily on *In re Sears, Roebuck* to support this position. In *In re Sears, Roebuck*, Plaintiffs moved the Court to allow 579 late-filed claims after the parties' class settlement agreement had been approved. 2018 WL 1138541, at *1. Of the 579 late-filed claims, 180 were filed by current class members, most of whom were pre-approved, soon after the deadline passed. *Id.* at *2. It was unclear, however, whether the remaining 399 claims qualified for payment under the parties' agreement. *Id.* Defendants opposed the motion, arguing the Court should not consider any of the late-filed claims under its equitable power because the parties' Settlement Agreement and the 120-day filing deadline incorporated therein controlled. *Id.* at *3. The district

8

court disagreed, finding the facts in the case warranted a more lenient approach under the Court's equitable authority at least with regard to the 180 valid-but-late claims. *Id.*

Indeed, the Seventh Circuit has recognized that courts overseeing class settlement agreements have discretion within their equitable power to permit the filing of late claims but only where the equities, on balance, favor the new claimants. *Burns v. Elrod*, 757 F.2d 151, 155 (7th Cir. 1985). Such power is consistent with the court's "traditional equitable function" of "allocat[ing] an inadequate fund among competing complainants" and its duty to protect the members of the settlement class. *Curtiss-Wright Corp*, 687 F.2d at 174. Other appellate courts have held the same, *see, e.g., In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 321 (3d Cir. 2001) ("A primary use of [the court's] equitable powers is balancing the goals of expedient settlement distribution and the consideration due to late-arriving class members. . . . Integral to this balancing, however, is the court's responsibility and inherent power and duty to protect unnamed, but interested persons.") (quotation omitted), even where the relief sought was foreclosed by the terms of the parties' agreement. *See, e.g., Zients*, 459 F.2d at 630 (rejecting district court's strict adherence to settlement agreement terms as an "unwarranted," "narrow view of the court's function in overseeing class actions pursuant to Rule 23"); *see also, e.g., Beecher v. Able*, 575 F.2d 1010 (2d Cir. 1978) (permitting reversion of funds pursuant to court's equitable power, despite non-reversion clause in the settlement agreement, where result would be inequitable otherwise).

Plaintiffs' request does not involve late-filed claims but the deliverable but uncashed checks give rise to the same issue motivating courts in the above-cited cases: the allocation of the finite settlement fund among the qualifying class members. Additionally, the Class Members who received but have not cashed their first-round distribution check are in a similar position as a late-

filing claimant. Here, no Participating Class Member was ever required to submit a claim or any paperwork to receive his or her distribution under the Agreement. The first and only action required to participate in the settlement is to cash the check received in the mail. Therefore, like a late-filing claimant, they have missed their deadline for participating in the settlement. Without Court intervention, these Class Members will miss all opportunity to receive the funds to which they are entitled. *See, e.g., In re Orthopedic*, 246 F.3d at 329 ("While there is no question that in the distribution of a large class action settlement fund, a cutoff date is essential and at some point the matter must be terminated, application of this principle must not be so rigid as to preclude recovery by a deserving claimant.") (quotation omitted).

Also, as in *In re Sears, Roebuck*, the Court finds that the requested extension will not materially change the parties' Agreement. 2018 WL 1138541, at *3; *see also, e.g., In re Crazy Eddie Sec. Litig.*, 906 F. Supp. 840, 845 (E.D.N.Y. 1995) (permitting late-filed claims where the court could "not conclude, from a review of the record . . . and the terms of the Settlement… that the [] deadline [wa]s an integral part of the bargain"). Under Illinois law, a material term is an essential provision of a contract "of such a nature and of such importance that the contract would not have been made without it." *Elda Arnhold & Byzantio, L.L.C. v. Ocean Atl. Woodland Corp.*, 284 F.3d 693, 700 (7th Cir. 2002) (quoting *Haisma v. Edgar*, 578 N.E.2d 163, 168 (Ill. App. Ct. 1991)). Nothing in the record or the parties' briefs suggests the parties chose 90 days as the check-cashing deadline for any particular reason or that the Agreement would not have been reached had the deadline been 135 days. Additionally, it is highly unlikely any Class Member based his or her decision not to opt out of the Settlement Class on the 90-day deadline or even on the potential for a second-round distribution award. Indeed, although dozens of Class Members contacted Class Counsel and Dahl Administration during the Notice period, no Class Member raised any question

about the second-round distribution process, whether a second-round distribution would occur, how it would be determined, or the amount or timing of such distribution. (*See* Dkt. 183 at 4-6).

Therefore, the Court finds that it is within its equitable authority to consider the requested 45-day extension. In balancing the equities, the Court considers several factors, including the danger of prejudice to Defendants, the length of the delay and its potential impact on judicial proceedings, the reason for delay, and whether Plaintiffs acted in good faith. *In re Sears, Roebuck*, 2018 WL 1138541, at *4 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *see also, e.g. In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209 (D.C. Cir. 2003) (applying these factors to determine whether modification of class settlement agreement is appropriate).

The 45-day extension will not prejudice Defendants, who face no further exposure at this point in the case since the Settlement Fund is capped. Likewise, the 45-day extension will not cause any harmful delay to Participating Members that have already cashed their first-round distribution checks. The modification will delay only the second-round distribution. But no Class Member is guaranteed any award through a second-round distribution. The Plan of Allocation guarantees each Class Member only a first-round distribution, equal to a fraction of the Net Settlement Fund that accounts for *all* Participating Members receiving and cashing a first-round-distribution check. To date, all but the 21 remaining Class Members have received this guaranteed amount. The Agreement does not guarantee any Class Member any distribution beyond that amount. It promises only the *possibility* of an additional award through a second-round distribution, to be divided among the other Participating Members that cashed a check. Here, this amounts to an additional approximately $1,200 per Class Member—by no means a trivial amount but far less than the thousands or tens of thousands the remaining 21 Class Members who have not

yet cashed a check but who were also denied coverage for their mental health treatment stand to gain if the extension is permitted. Regardless, as already explained, the extension will not *reduce* any Class Member's guaranteed distribution. *See, e.g., Zients*, 459 F.2d at 630 (allowing five late-filed claims where doing so "would result in only a miniscule reduction in recovery by timely claimants").

Furthermore, the delay to any second-round distribution will be minimal. The deliverable but uncashed checks were explicitly accounted for in the Agreement and Plan of Allocation. There is no question the 21 Class Members with deliverable but uncashed checks qualify for a distribution. The award owed to each has already been calculated and none of these individuals needs to submit any claim or other paperwork to receive that award. The only step left to complete the distribution process is to reissue and cash the check. *In re Sears, Roebuck*, 2018 WL 1138541, at *2, 5 (equities did not favor permitting 399 late-filed claims where validity of the claims was unknown, claimants had provided no explanation for their tardiness, and processing the claims would require more than minimal disruption to the settlement administration); *Burns*, 757 F.2d at 155 (distinguishing between late-filing of unopposed claims by ascertained class members versus "vigorously contest[ed]" claims by "only prospective class members" that would substantially delay the finality of the settlement).

Additionally, the Court has reason to believe the 21 Class Members' failure to cash their checks is excusable and warrants this minor, 45-day delay. First, as members of this Class, these individuals are inherently part of a vulnerable population and may continue to struggle with serious mental health issues that could have contributed to their failure to receive or cash the check. Second according to Dahl Administration, the deliverable but uncashed checks were in fact delivered. (Dkt. 182 at ¶ 8). Because these checks are for thousands and in some cases tens of

thousands of dollars, the Court assumes no individual would notice and intentionally not cash the check. It is more likely, as one Class Member already reported occurred, the individual did not know a check was forthcoming and either lost or overlooked the check when it arrived in the mail. (*See id.* at ¶ 10). In fact, five of the 26 Class Members with uncashed checks have come forward with what Defendants concede are justifiable reasons for not having cashed the checks received, for example, late arrival of the check, a miscommunication between spouses, death of a family member, and lack of access to a bank account. (*Id.*).

Finally, the Court finds and Defendants do not dispute that Plaintiffs have acted in good faith in requesting the extension. On balance, the equities favor permitting the 45-day extension to complete distribution of the deliverable but uncashed checks.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion to Modify Administration of Settlement by Extending Distribution Deadline (Dkt. 175) is granted. The Settlement Administrator shall have 45 days from the date of this Order to further attempt to complete distributions to the Settlement Class Members who received but did not cash the checks made payable to them. On the conclusion of the 45-day period, the Settlement Administrator shall resume the schedule and procedures under the Plan of Allocation (Dkt. 148-6) to distribute the Residual Settlement Fund.

_____
Hon. Virginia M. Kendall
United States District Judge

Date: October 26, 2018